IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                                Criminal Action

        Plaintiff,           No. 1:21-cr-0044

       vs.                 Washington, DC
                                August 10, 2023

DANIEL D. PHIPPS,

                                11:11 a.m.

          Defendant.
_____/

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE CARL J. NICHOLS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    MICHAEL LIEBMAN
                         USAO-DC
                         555 Fourth Street, NW
                         Washington, DC 20530

For the Defendant:     WILLIAM SHIPLEY
                         Law Office of William L. Shipley
                         PO Box 745
                         Kailua, HI 96734

Court Reporter:        JEFF HOOK
                         Official Court Reporter
                         U.S. District & Bankruptcy Courts
                         333 Constitution Avenue, NW
                         Room 4700-C
                         Washington, DC 20001

1                    P R O C E E D I N G S

2          **DEPUTY CLERK:**  Good morning, Your Honor.  This is

3     criminal case 2021-044, United States of America v. Daniel

4     Dink Phipps.  The probation officer is Andre Wilson.

5          Counsel, please come forward and introduce

6     yourselves for the record, beginning with the government.

7          **MR. LIEBMAN:**  Good morning, Your Honor.  Michael

8     Liebman on behalf of the United States.

9          **THE COURT:**  Mr. Liebman, good morning.

10          **MR. SHIPLEY:**  Good morning, Your Honor.  William

11    Shipley on behalf of defendant Daniel Phipps who is present

12    in court.  Also in court this morning is his mother, Linda

13    Phipps.

14          **THE COURT:**  Good morning, everyone.  We're here to

15    sentence the defendant on six counts:  One charge of

16    assaulting, resisting or impeding certain officers in

17    violation of 18 U.S. Code section 111(a)(1); one charge of

18    civil disorder in violation of 18 U.S. Code section

19    231(a)(3); a charge of entering or remaining in a restricted

20    building or grounds in violation of 18 U.S. Code section

21    1752(a)(1); a charge of disorderly or disruptive conduct in

22    a restricted building or grounds in violation of 18 U.S.

23    Code section 1752(a)(2); a charge of disorderly conduct on

24    Capitol grounds or a Capitol building in violation of 40

25    U.S. Code section 5104(e)(2)(D); and a charge of parading,

1   demonstrating or picketing in a Capitol building in

2   violation of 40 U.S. Code section 5104(e)(2)(G), which is

3   count six.  Mr. Phipps, as everyone knows, pleaded guilty to

4   those six charges.

5            Are both parties prepared to proceed this morning

6   with sentencing, Mr. Liebman?

7            **MR. LIEBMAN:**  Yes, Your Honor.

8            **THE COURT:**  Mr. Shipley?

9            **MR. SHIPLEY:**  Yes, Your Honor.

10           **THE COURT:**  So I've reviewed all of the materials

11   to include the videos submitted by the government, and it

12   seems to me -- this is how I'd like to proceed.  There are

13   significant disagreements between and among the parties and

14   probation about the appropriate guidelines analysis here.

15   And then, of course, there are disagreements about the

16   ultimate appropriate sentence.

17           What I would like to do is to, in effect,

18   bifurcate the hearing.  I would like to first consider the

19   guidelines questions.  I might even take a recess after I

20   hear from the parties about the relevant guidelines

21   analysis, come back, announce my guidelines calculation, and

22   then hear from the parties on what an appropriate sentence

23   is.  At a minimum, I will decide the guidelines question

24   before we proceed to the rest of the hearing.

25           Relatedly, this is one of those cases in which

1    there is a fairly significant fact question relevant to the

2    guidelines analysis, and that is to say whether Mr. Phipps'

3    conduct constituted an aggravated assault sufficient to

4    trigger section 2A2.2 of the guidelines.  And so for that

5    reason, I would like, as we discuss the guidelines

6    questions, for both parties -- the government hopefully has

7    access to the videos here today, to walk me through why the

8    video of Mr. Phipps engaging with officers either does or

9    does not constitute an aggravated assault.

10           So with that, why don't we start with you,

11   Mr. Liebman.

12           **MR. LIEBMAN:**  Well, respectfully, Your Honor, the

13   government submits that the issue of whether 2A2.2 applies

14   is actually a legal question involving interpretation of the

15   guidelines.  So if the Court recalls, at the guilty plea

16   proceeding where there was no plea agreement, the defense

17   sentencing -- I'm sorry, the guilty plea basis document that

18   they filed acknowledged that the defendant committed the

19   conduct, the assaultive conduct, that supports the 111(a)

20   conviction with the intent to commit another felony.  So

21   that's not disputed.

22           So then we look at the guidelines themselves, and

23   what 2A2.2 --

24           **THE COURT:**  But you can violate that provision

25   without engaging in an assault.  I've held in multiple

**1**    cases, following Judge Moss' decision in Cua, that you can

**2**    engage in a felony violation of 111(a) by committing an act

**3**    that's not an assault but is an act that fits within one of

**4**    the other verbs in 111(a) without -- so long as you took

**5**    that act with the intent to commit another felony.

**6**         So is it the government's view, for example, that

**7**    if someone intimidated an officer with the intent to commit

**8**    another felony, that that would constitute aggravated

**9**    assault for purposes of 2A2.2?

**10**         **MR. LIEBMAN:**  Yes, Your Honor.

**11**         **THE COURT:**  Why is that?

**12**         **MR. LIEBMAN:**  Because I think the commentary --

**13**    the application notes for 2A2.4, where the cross-reference

**14**    appears -- and let me just get that in front of me.

**15**    Frankly, our view, Your Honor, is that aggravated assault is

**16**    really a summary term to cover any conduct that would

**17**    qualify as a violation of 18 U.S.C. 111(a)(1).

**18**         **THE COURT:**  How is that consistent with the

**19**    definition of aggravated assault in 2A2.2?  Aggravated

**20**    assault has to be a felonious assault involving one of four

**21**    factors.  I don't think there's any dispute that Mr. Phipps

**22**    violated 111 with the intent to commit another felony, he

**23**    acknowledged that.  But aggravated assault has to be a

**24**    felonious assault.

**25**         **MR. LIEBMAN:**  Correct.  And felonious -- the

1    felony -- it becomes a felony, of course, Your Honor, under

2    the statute without even any reference to with intent to

3    commit another felony if there's physical contact involved.

4    I think the videos are pretty undisputed that there was

5    physical contact between the defendant and the -- for

6    purpose of abbreviation, the --

7             THE COURT:  So your view is -- and I just want to

8    make sure I understand it, is that the aggravated assault

9    provision here applies even if there wasn't an assault?

10            MR. LIEBMAN:  Even if there wasn't a common law

11   assault frankly, I guess that's how you --

12            THE COURT:  Even if there wasn't a Model Penal

13   Code assault?

14            MR. LIEBMAN:  Yes, that would be my position, Your

15   Honor.  But I'm not sure we have to reach that in that case,

16   I think that's somewhat of an academic issue given the fact

17   that we have physical contact, pushing and shoving.

18            THE COURT:  But is that because, in the

19   government's view, there was an assault --

20            MR. LIEBMAN:  Yes.

21            THE COURT:  -- in the common law Model Penal Code?

22   So that's where I started.  I want the government to walk me

23   through why it believes that's the case with the video.

24            MR. LIEBMAN:  Very well, Your Honor.  And also at

25   some point, Your Honor, I think the Court might -- is going

1   to inquire whether there are any factual disputes about the

2   presentence report.

3       **THE COURT:**  Yes.

4       **MR. LIEBMAN:**  If this is as good as time as any, I

5   realized when I preparing for this hearing last night that

6   the actual -- and again, for purposes of abbreviation,

7   assaultive conduct, occurred on the north terrace.  My

8   sentencing memo -- and because of that, my letter to

9   probation talks about the west terrace.  Looking at the

10  video more carefully, it's all on the north terrace.

11      **THE COURT:**  And yes, I want to consider objections

12  to the PSR of course, but it seems to me that a significant

13  component of the defendant's objections to the PSR relate to

14  whether it's appropriate to describe the conduct as an

15  assault.  And so I get that these are all wrapped up

16  together.  So my plan is to both hear from you on the

17  question of why this was in the government's view an assault

18  in the common law or Model Penal Code sense.

19      **MR. LIEBMAN:**  Yes, Your Honor.

20      **THE COURT:**  Factually hear from you on the

21  guidelines questions, and then I think it would also be

22  helpful to walk through any of the objections to the PSR

23  that you think we should talk about that aren't those.

24      **MR. LIEBMAN:**  Sure.  So this is what I submitted

25  last night as Government's Exhibit 3.  And I think for

1    purposes of our discussion, we don't need the audio.  So

2    this is actually the body-worn camera of the -- one of the

3    identified victim officers, Kevin Romero.  And just for the

4    Court's recollection, that's actually not the named assault

5    victim in the indictment.  The assault, that's Anthony

6    Campanelli, abbreviated A.C. in the indictment.  After the

7    second superseding indictment, we realized there were

8    multiple assaults involving other officers.

9           Our position is there's three separate assault

10   victims.  One is Officer Campanelli, one is Officer Romero

11   and one is unidentified.  This body-worn camera is all from

12   Officer Romero, because I find that's the one that captures

13   most aspects of all three in one place.  So this is, of

14   course, January 6th, 2021.  The time stamp in the upper

15   right is 16:35 -- and that's already converted to local

16   time, so 4:35 p.m.  I'll play it here.

17          (Video playing)

18          **MR. LIEBMAN:**  The defendant is actually -- I

19   paused at 19 seconds.  The defendant is -- his face was in

20   view a moment before.  We can still see one of his legs and

21   one of his arms in the background through the crook of the

22   officer's elbow here.  He's now on the right of the frame --

23   and I'll pause here at 24 seconds.  A moment before -- I

24   don't know if the Court noticed, he actually leaned into the

25   officer with both arms.  He's still struggling with that

**1**   same officer.  Now he's separated.  So in the government's

**2**   view, that was the first assault.

**3**        The whole video is about three minutes, so just

**4**   for context I'm going to let it play.  There's the defendant

**5**   in the right of the frame here at 1 minute and 38 seconds.

**6**   There's contact with an officer there.  The government's not

**7**   suggesting that contact right there was an assault.  Now,

**8**   right there, Your Honor, at this point the officer -- one of

**9**   the -- the officer whose body-worn camera we're looking at,

**10**  Officer Romero, was trying to push the defendant away with

**11**  his baton, but the defendant is resisting leaning back into

**12**  it.  And I would distinguish that from -- let me just pause

**13**  it for a second.  I would distinguish that from what

**14**  happened a moment before that where clearly the officer

**15**  pushed him with a baton, and he reacted either consciously

**16**  or otherwise -- the defendant that is, by stepping back.  I

**17**  wouldn't call that an assault.

**18**       But then, when he's still maintaining his position

**19**  relatively close to where that contact just happened, and

**20**  the officer moves forward again and tries to do the same

**21**  thing, the defendant leans into it.  The government submits

**22**  that's physical contact that constitutes an assault under

**23**  the statute.  I'm going to resume playing here at 2:07.

**24**     (Video playing)

**25**       **MR. LIEBMAN:**  Now there's the defendant.  He's

1   kind of in the middle of the frame in the crowd there

2   holding the flag in his right hand.  And just to be clear,

3   I'm seeing now -- what I just described as a second assault,

4   I didn't even list that one in my sentencing memo, Your

5   Honor.  There's still two more to go.  I talked about a

6   total of three.  I do believe what I just described would

7   constitute an assault.

8          I've paused at 3:26 into the recording.  There's

9   the defendant on the right side of the frame holding the

10  flag in his left hand -- the U.S. flag.  Now I'm going to

11  pause there at 3:46.  I don't know if the Court noticed it,

12  it happens kind of fast.  The person in the gray and red

13  sweatshirt who is carrying a large flag with the word Trump

14  on it, the defendant is associated with him at various

15  points on this video as well as others.  What happened is

16  Officer Romero, whose body-worn camera we're looking at,

17  pushed him with his baton, that friend of the defendant.

18  The defendant then reacted by going towards the officer.  He

19  wasn't getting pushed away by the officer, he went towards

20  the officer to engage with him.  That's what happens over

21  the next several seconds.

22         So the second -- the first assault, in the

23  government's view, was at 16:35:23.  The second one -- which

24  I didn't even describe in my memo, but I do believe

25  constitutes an assault, happened in the same minute a little

1    bit later.  And then the two assaults remaining that I

2    described in the memo happen very close to one another, at

3    about 16:38:44 when the defendant engages with Officer

4    Romero.  And then when Officer Campanelli, who is the named

5    complainant, steps into to help, the defendant turns his

6    attention to him and is pushing and shoving with him.

7             **THE COURT:**  Can you play that for me, the second

8    portion, the part that happens after -- yeah, at 16:38.

9             **MR. LIEBMAN:**  I inadvertently went back to the

10   beginning here, but it was 16:38.  I think a good place to

11   start would be --

12            **THE COURT:**  Do you have audio?

13            **MR. LIEBMAN:**  I do.

14            **THE COURT:**  Could you play the audio?

15            **MR. LIEBMAN:**  Sure.  So I think, for context, I'll

16   start at 16:38:09 at 3:08 into the file.

17        (Video played)

18            **MR. LIEBMAN:**  The file ends there because that's

19   when the assaultive conduct ends, in the government's view.

20            **THE COURT:**  Understood.

21            **MR. LIEBMAN:**  So again, our position is that

22   because it constitutes an assault with the -- acknowledged

23   already by the defendant -- intent to commit another felony,

24   that's why the cross-reference occurs.  And I should point

25   out I wasn't familiar with Judge Moss' opinion, but I do

1    know Judge Kollar-Kotelly just a couple weeks ago in the

2    Sandoval case on August 3rd -- and that's 21-cr-195 --

3         **MR. SHIPLEY:**  Your Honor, Judge Kollar-Kotelly and

4    the Sandoval was three days ago, I was in that hearing.

5         **MR. LIEBMAN:**  Well, I'm talking about the

6    memorandum opinion and order of August 3rd.

7         **THE COURT:**  I mean, I've already decided in

8    multiple cases what I believe the three categories of a

9    violation of 111(a)(1) can be.  I've concluded there's the

10   misdemeanor, I'll call it simple assault; there's assault

11   with physical contact; and there's conduct that doesn't

12   constitute assault but is intimidating, interfering -- if

13   you take the other verbs, with intent to commit another

14   felony.  If there's an assault with intent to commit another

15   felony, that obviously counts.  I reached that conclusion in

16   connection with arguments that all prosecutions under 111(a)

17   require an assault.  I rejected that argument and held --

18   now, I haven't written an opinion on this, but I've held

19   orally multiple times that one can violate the felony

20   provision of 111(a) without committing an assault so long as

21   it was done with intent to commit another felony.

22        **MR. LIEBMAN:**  And I would agree with that, Your

23   Honor, frankly.

24        **THE COURT:**  And here, it seems to me the question

25   isn't whether the defendant has agreed that he acted with

1  intent to commit other felony, he did.  The question in my

2  mind is if it's theoretically possible to violate 111(a)

3  without committing an assault, then by pleading guilty to

4  the 111(a) felony component, the defendant left himself

5  free, as he has, to argue that his conduct with

6  intimidation, impeding or some other conduct and not

7  assault.

8         So we have to resolve the question of whether --

9  in my view, of whether this constitutes an assault for

10  purposes of 2A2.2.  The government's position is the videos

11  reflect an assault, multiple assaults?

12         **MR. LIEBMAN:**  Yes, Your Honor.

13         **THE COURT:**  Correct, okay.

14         **MR. LIEBMAN:**  And I agree with the Court's summary

15  analysis of all that.  And there may be -- in fact, there's

16  probably moments in this video we just watched where the

17  defendant himself is impeding, interfering because he's just

18  not -- he's refusing to move.

19         **THE COURT:**  Yes.  But that would not -- but do you

20  agree that that would not put you in 2A2.2 world?

21         **MR. LIEBMAN:**  I would agree, even if he does it

22  with the intent to commit another felony.

23         **THE COURT:**  Correct.

24         **MR. SHIPLEY:**  Like civil disorder or obstruction

25  of an official proceeding, I would agree with all of that.

**1**    But when we have the defendant engaging in physical

**2**    conduct -- contact, what I would argue is traditional

**3**    assaultive type conduct, he has crossed that threshold from

**4**    the other verbs in the statute -- impeding, interfering, et

**5**    cetera, he's now in assault; and given his concession at the

**6**    plea, with the intent to commit another felony.

**7**         THE COURT:  Okay.  Are there other -- so just on

**8**    this question about whether his conduct at some point

**9**    constituted an assault, are there other videos you'd want to

**10**   show me?  Obviously that's --

**11**        MR. LIEBMAN:  Not on that issue, Your Honor, no.

**12**   And just to finish my thought, I was going to point out that

**13**   Judge Kollar-Kotelly, in my view, addressed the very same

**14**   issue that the defense is addressing here about the

**15**   application of the cross-reference of 2A2.4.  And in her

**16**   memorandum opinion and order, she ruled against the defense.

**17**        THE COURT:  But what did she hold exactly?  Did

**18**   she conclude, for example, that she would apply the

**19**   commentary under 2A2.2 -- and in particular, the definition

**20**   of aggravated assault, in deciding whether 2A2.2 applies?

**21**        MR. LIEBMAN:  The Court -- the issue the Court is

**22**   raising of whether a felony violation of 111(a) that does

**23**   not involve an assault would trigger the cross-reference or

**24**   not, that is not -- I don't believe that's addressed in her

**25**   opinion.  I'm looking at --

1          **THE COURT:**  I'm raising another argument presented

2     by the defendant here, which is -- to paraphrase, I think,

3     the definition of aggravated assault in commentary note --

4     application note one definition, that that definition is

5     overbroad, wrong, should not be deferred to.

6          Did Judge Kollar-Kotelly reach that issue?

7          **MR. LIEBMAN:**  She did reach that issue, and she

8     rejected that specific one, Your Honor.

9          **THE COURT:**  She held, I take it, that she was

10    either bound to apply because of the D.C. Circuit's holding

11    in 1997 or just believes it's appropriate to apply that

12    definition in considering whether 2A2.2 is triggered by a

13    particular defendant's conduct?

14         **MR. LIEBMAN:**  I don't believe she said she felt

15    bound by it, Your Honor.  I think -- and I'm looking at the

16    opinion now.  Again, when I was reviewing this, I was not

17    focused on the issue the Court is raising this morning.

18    I'll just read from page three of her memorandum opinion.

19    It says:  "Defendant explains that the guidelines do not

20    provide a definition of aggravated assault, although it is

21    defined in the commentary to section 2A2.2.  The defendant

22    notes that the trial court's verdict made the special

23    finding that Mr. Sandoval's conduct wasn't done with the

24    intent to commit another felony which makes the four assault

25    charges" -- that's how she characterized it, "the four

1    assault charges felonies."

2            And then there's a discussion about whether the

3    intent to commit another felony -- whether that can be

4    itself a civil disorder statute.  I think I would have to

5    concede there's a little bit of semantic difficulty with

6    that one, but we're not -- I don't think that's an issue for

7    this case.  And then there's a discussion of the fact that

8    there's another felony involved in that case anyway, so she

9    doesn't even address that.

10           But I don't think there's a close analysis of

11   whether or not the conduct that that defendant Sandoval

12   committed violated what aspect of 111(a).

13           **THE COURT:**  But for present purposes -- that's

14   fine, I may read it.  But for present purposes, the

15   government's position is for purposes of the 111(a) count --

16   or analytically for purposes of the guidelines approach --

17   because I think this could flow through some of the other

18   questions, there was an assault, there was an aggravated

19   assault within the meaning of 2A2.2.  So 2A2.2 is satisfied

20   with respect, at a minimum, to count one, right?

21           **MR. LIEBMAN:**  Yes.

22           **THE COURT:**  Which then means the base offense

23   level in the government's view is 14, that he have an

24   official victim under the official victim provision which

25   gets you a 6-level enhancement.  Therefore, in the

1    government's view, the starting point here, for lack of a

2    better word, is a -- we're at 20 -- base offense level of

3    20 -- or offense level of 20.

4              **MR. LIEBMAN:**  Yes.

5              **THE COURT:**  Because 2A2.2 plus official victim,

6    okay.  It seems to me that there are a lot of other

7    technical issues going on with the guidelines.  Are there

8    any that you would like to particularly note that -- I mean,

9    for example, why is it appropriate to group counts one and

10   two and then three and four?

11             **MR. LIEBMAN:**  We actually -- I summarized that in

12   my memo.  I think that's what the probation office did.  We

13   have no dispute with that, Your Honor.  Frankly, because

14   there was no dispute, I just can't remember how that

15   analysis works.  The one thing I added in my sentencing memo

16   is that I think it's important -- frankly, in our view it's

17   kind of required through the guidelines -- for the Court to

18   assign an offense level for each and every count.

19             **THE COURT:**  Yes, I intend to do that today.

20             **MR. LIEBMAN:**  And the probation office didn't do

21   that.  I set out what I thought were the appropriate

22   adjusted offense levels -- again, before acceptance of

23   responsibility, for each and every count.  And it ends up

24   being the same as -- because we agree with the grouping

25   analysis, and because the high count in each group that the

1    government focuses on is the same that the Court -- the

2    probation office found, there's no dispute as to the

3    grouping analysis or otherwise with the -- involving

4    multi-counts that the probation office found.  And because

5    the guidelines technically require the government to move,

6    to make a motion for the additional one point for acceptance

7    of responsibility, I'll do that at this time.  We do believe

8    it applies here.

9         **THE COURT:**  It seems to me all parties agree that

10   both a two-level and then a one-level reduction are

11   appropriate here.  I don't think there's any objection to

12   granting the government's oral motion for that one-level

13   reduction, correct?

14       **MR. SHIPLEY:**  Your Honor, the way I calculated it,

15   my adjusted offense level came under 16.  So the third

16   level's not available if your adjusted offense level is

17   under 16.

18       **THE COURT:**  How about this, the motion is granted

19   if relevant.

20       **MR. SHIPLEY:**  Correct.

21       **MR. LIEBMAN:**  That's fine.

22       **THE COURT:**  Fair enough.  Thank you, Mr. Liebman.

23   Why don't I hear from Mr. Shipley about what I do think is

24   probably the most important issue on the guidelines

25   question, which is the assault issue.  And then perhaps,

1    Mr. Shipley, you can walk me through other remaining

2    objections, either to the calculation or frankly to the PSR

3    just to check that off.  And then I'll probably reflect on

4    the guidelines analysis, come back, pronounce the guidelines

5    calculation and then take up the rest of the hearing, okay?

6         **MR. SHIPLEY:**  Yes, Your Honor.  Thank you.  First,

7    Your Honor, let me apologize for not getting the videos

8    filed that the still images were taken from.  There's three

9    of them, and they're relatively short.  They're all other

10   body-worn cameras from different angles, that they give you

11   a different perspective.  They're officers that are not

12   involved, but you can see an episode play out.  So I have

13   the still images, and I'd like to play them.  We'll file

14   them after the hearing so that they're part of the record.

15        **THE COURT:**  That's fine, I'd like to see them.

16        **MR. SHIPLEY:**  And I mentioned that to Mr. Liebman

17   before we started, and he didn't have any problem with doing

18   that.  Let me also -- before we get to that, if the Court

19   will indulge me.  Salvador Sandoval was my client, and

20   sentencing was Monday before Judge Kollar-Kotelly.  Let me

21   give the Court a couple of details here.  That case was

22   tried by Judge Hogan back in December and then he retired,

23   so Judge Kollar-Kotelly worked from his verdict.  And in his

24   verdict -- he announced his verdicts from the bench -- read

25   that the defendant -- found the defendant guilty of

1    violation of 111(a) assault, resist -- he read all the

2    provisions of the statute.  So now Judge Kollar-Kotelly,

3    coming in on a cold record, not having made those judgments

4    herself, had to make an evaluation.  I made the same

5    argument there I've made here, that the conduct as reflected

6    in the video, we've all agreed, covers a broad spectrum of

7    illegal conduct between assaulting and intimidating.

8              **THE COURT:**  Right.

9              **MR. SHIPLEY:**  What Judge Kollar-Kotelly ruled

10   was -- well, there were four episodes there.  Two involved

11   wrestling a shield from two different officers, one of which

12   was successful.  So the officer was dispossessed of her

13   shield, left vulnerable to the crowd.  The two other

14   incidents involved the same officer.  One was a two-handed

15   shove while the officer was bending over trying to help

16   somebody.  Judge Kollar-Kotelly said that could have knocked

17   him off his feet, it could have made him vulnerable to

18   assault by others.  It was kind of like a mosh pit

19   situation.  This was in the foyer, a very condensed crowd.

20         So she actually ruled that it was an assault over

21   my argument, which was that it was something less than

22   assault, it was a two-handed shove.  She said it was an

23   assault.  So based on that, she went with 2A2.2, and off we

24   went.  In the written rulings -- which I hadn't had a judge

25   do that before, but I thought this kind of streamlines the

1    process, she dealt with my objections in my sentencing

2    statement in written opinions.  So when we went into court,

3    those were pretty much already resolved.  And I think she

4    did that because she was working from the trial record and

5    what Judge Hogan had set.

6         So the circumstances there I think are certainly

7    different than faced here, and obviously the evidence is

8    different.  And the Court doesn't have the benefit of

9    looking at that evidence.  But I can say that the first

10   officer was a young female officer named Officer Lazo who

11   had her shield wrestled away from her by the crowd, multiple

12   members of the crowd.  Mr. Sandoval was one.  He did not end

13   up with the shield, somebody else did.  So that sort of

14   explains the Sandoval outcome earlier this week, and the

15   88-month sentence left me scratching my head.

16        Let me play these three videos, I'll just play

17   them in sequence.  They're three sequences, the same

18   sequence of events.  Is it on your screen, Your Honor?

19            **THE COURT:**  Yes.

20        **MR. SHIPLEY:**  This is a different officer's

21   camera.  This actually -- no, this may be -- I referred to

22   him in my sentencing statement as officer two.  He's

23   carrying an orange -- you can see it in other -- he's

24   carrying an orange pepper spray or PepperBall gun.  What you

25   can see here is the -- is what I -- you know, the officer's

1    conduct against this individual, who is the gentleman in the

2    gray and red sweatshirt, that prompts Mr. Phipps' reaction.

3    So let me start that.

4        (Video played)

5        **MR. SHIPLEY:**  What I would note there, Your Honor,

6    is the entire time they're all backing up.  They may not be

7    backing up as fast as the police officers want them to, but

8    they're all backing up.  So they're following instructions,

9    just not with the dispatch.  And I don't blame the

10   Metropolitan police officers, you know, they have a job to

11   do in that moment, they have a task they're trying to

12   execute.  If the protesters will go faster, their job would

13   be easier.  So they're encouraging them along.

14       **MR. LIEBMAN:**  Your Honor, if I may, the portion

15   Mr. Shipley just played is actually after all the assaultive

16   conduct the government's alleging.

17       **THE COURT:**  I'll give you an opportunity to

18   respond to what Mr. Shipley does.

19       **MR. SHIPLEY:**  Your Honor, you know, I may not have

20   started that at the beginning because I was watching these

21   earlier.  That may have come up -- in fact, it was.  Now

22   that I look at the next one I've pulled up, it's in the

23   middle which is what I was watching earlier.  So let me make

24   sure I start this at the beginning, and then we'll replay

25   that first one.  I didn't realize that until Mr. Liebman

1    pointed it out.

2              So this is another body-worn camera of an officer.

3    I think this is an officer not involved, but you can see

4    what happens from his camera.

5              **THE COURT:**  Right.  And let the record reflect,

6    this appears to be beginning at 16:38:33.

7              **MR. SHIPLEY:**  Correct, so the episode involving my

8    client and the officer starts in about 10 seconds.

9         (Video played)

10             **MR. SHIPLEY:**  You can see here's the gentleman in

11   the red jacket, and my client is right next to him, just to

12   orient the Court.

13        (Video played)

14             **MR. SHIPLEY:**  Now, that went on about 30 seconds

15   after the episode, but I wanted the Court to see the crowd

16   is moving back.  The officers are just moving forward with

17   greater dispatch than the crowd is willing to move back, and

18   that includes my client.  I want to go forward just briefly

19   and we'll reply just the sequence of events involving -- and

20   this here, this is my client here, and these are the three

21   officers involved.  And then there's another one behind that

22   you can't see there.  I'm going to go back to the beginning

23   of this so the Court can see this angle again.  There's one

24   more angle of a different officer from essentially the same

25   location that gives you a little different perspective.

1     Let's go to -- again, it's going to start to the right side

2     of the screen.  I believe this is my client right here.

3          (Video played)

4          **MR. SHIPLEY:**  Now, in there I put the still images

5     of this sequence of events, because you can see from the

6     still images better than you can see from the 3- or 4-second

7     video he got hit in the head with a baton, he got hit in the

8     head with a baton the second time.  I believe it's

9     officer -- I don't have the three names.  I'll just say

10    Officer A.C., I think, has something around his neck at one

11    point and pulls him closer to him.  You can see that in one

12    of the still images.  It's difficult to make out just

13    watching the video.

14         But the real issue here, I think, is to the extent

15    Mr. Phipps came forward, he was being pulled forward in two

16    instances.  You see the one still image where the officer's

17    got him on the collar, got ahold of his collar and is

18    pulling him towards him.  Mr. Phipps is leaning forward,

19    being pulled forward.  And then he's got something around --

20    I don't know if it's part of a hoodie or what, but he pulls

21    him again.

22         So we're at 56, so that's at the end of the -- let

23    me find the -- this might be the clearest one.  Again, I

24    didn't reset these to the beginning, so let me make sure I

25    do that.  So this is at 38:49.  This one actually picks up

1    after the episode is sort of already in motion.  I believe

2    it's right here.  This is the gentleman in the red back

3    behind him.  What happened is my client stepped forward

4    toward the officer who had cross-checked the person in the

5    red and gray.  And then he begins to get moved to his

6    right -- my client, to his right, as the event plays out.

7         (Video played)

8         **MR. SHIPLEY:**  This is the same one the government

9    had played, the one that's almost four minutes long, so I'll

10   skip that one.  I think that's also one that the government

11   played.  You know, I think probably the one I'm missing is

12   the one where I started in the middle, so let's go back to

13   that one and we'll start at the beginning.  This is the

14   first one I played.  Mr. Liebman pointed out the episode had

15   already taken place.  So this is now starting back at the

16   beginning.  We're at 4:38:05, about 35 seconds before the

17   incident takes place.

18        (Video played)

19        **MR. SHIPLEY:**  So that's sort of -- that kicks it

20   off right there.  Again, I think that's Officer A.C.'s

21   camera.  You can hear him giving directions:  "Back up.

22   Back up.  Back up."  And they are backing up, but they're

23   taking slow, small steps going backwards.  And I don't know,

24   it's not obvious on the video, what prompted the officer to

25   step forward and cross-check the gentleman in the red and

1    gray.  He didn't seem to do anything.  But that kicked off

2    everything.  And then you'll now see how my client responds

3    to that.

4        (Video played)

5        **MR. SHIPLEY:**  So we're not hiding from these

6    videos, you know, it was a chaotic event.  What happened

7    there was the gentleman next to my client appeared to get

8    impacted, lawful use of nonlethal force, by the officer who

9    cross-checked him for no apparent reason.  My client stepped

10   forward, grabbed the baton -- which you see in the still

11   image which the government put in, grabbed the baton and

12   simply attempted to create space.  I think what the argument

13   comes down to, the government wants to say, well, that's an

14   assault.  The problem is the common law definition of

15   assault, as this Court pointed out, involves an intent to do

16   bodily harm.  I don't think you can divine an intent to do

17   bodily harm from my client's conduct there, he's simply

18   trying to create space.  And then once he's engaged, he's

19   trying to get away and the officers have ahold of him.

20   Eventually he does get away.  But at no time does he make

21   any volitional act that can be interpreted, I think, from

22   the evidence of seeking to harm the officers.  He's simply

23   trying to prevent the officers from harming the person he's

24   with.

25        So I hear Mr. Liebman's argument about, well, I

1  think this is -- you know, any physical conduct is assault,

2  but I don't think the law supports that view.  At one point

3  he said, well, aggravated assault is -- you know, it's like

4  a summary term.  I have a problem with that, because for you

5  to say that aggravated assault is like a summary of all of

6  the felony violations of that statute, that means that all

7  of those other adjectives are synonymous with assault.  And

8  I don't think any fair reading of that statute -- in fact,

9  Judge McFadden ruled in my favor on this same argument, is

10  they are not synonymous with assault, they are different

11  ways to violate the same statute that stretch across a

12  spectrum.

13        THE COURT:  I agree, I've held that.  I rejected

14  the argument that assault is necessary for a violation of

15  111.  That's why we're having this discussion, to some

16  extent.

17        MR. SHIPLEY:  And I have the same --

18        THE COURT:  Let me ask you this question:  If your

19  client's conduct constituted common law assault, would we

20  not be applying 2A2.2?

21        MR. SHIPLEY:  I think so, because then we have the

22  common law assault with the intent to commit another crime,

23  and then --

24        THE COURT:  And your answer I assume is the same

25  as if we're applying the Model Penal Code definition of

1   assault?

2       **MR. SHIPLEY:**  I think that's fair.  I know the

3   definition of assault this Court used --

4       **THE COURT:**  So there's a lot of things going on,

5   but the question for me is -- it seems to me pretty clear

6   the parties have the same view, is if Mr. Phipps committed

7   an assault -- common law, Model Penal Code, I don't think

8   the source of the definition matters.  If he committed an

9   assault, then 2A2.2 applies.

10      **MR. SHIPLEY:**  Yes.

11      **THE COURT:**  If he didn't commit an assault, 2A2.2

12  does not apply.  I think it's as simple as that.

13      **MR. SHIPLEY:**  In fact, I think I'm confident that

14  the Court knew exactly why we pleaded the way we did without

15  an agreement.  Because I knew that if I asked the government

16  for agreement, I would be facing a factual statement in the

17  agreement that I was trapped into that said assault and I

18  would be foreclosed from making this argument.  So we traded

19  the presumption of innocence and a jury trial and whether he

20  committed an assault for a sentencing argument that this is

21  a crime but it does not involve assault.  That's why we're

22  here.

23      **THE COURT:**  Right, I understand all that.  And

24  then there are obviously a number of somewhat more technical

25  issues under the guidelines.  Clearly that question drives a

1   substantial difference between the parties on the guidelines

2   calculation.  Because if you're in 2A2.2, it's a 14 --

3           MR. SHIPLEY:  Plus six.

4           THE COURT:  Plus six, that's 20.  If you're not

5   there, it's less clearly.

6           MR. SHIPLEY:  It's 10 plus three, it's 13.

7           THE COURT:  Right.  So let me ask you this

8   question -- and I understand your position on the videos.  I

9   have to make my judgment about whether that constitutes

10  assault.  Everybody agrees that's the question -- at least

11  the first question.  Just technically, with respect to your

12  objections to the PSR, it seems to me that most of them turn

13  on this question.  The last one relates to the reference in

14  the PSR to the legal defense fund of counsel.  I can tell

15  you right now I'm not going to rely on that in connection

16  with deciding on a sentencing -- an appropriate sentence

17  here.

18          But just to check the box of objections to the

19  PSR, are there any other issues that you would like to

20  discuss?  There's the question, of course, about whether

21  this is an assault.  There are questions about guidelines

22  analysis and applicability and the like which I, of course,

23  have to do my own.

24          Are there other either objections to fact finding

25  or factual statements in the PSR that you would like to

1    raise with me?

2          **MR. SHIPLEY:**  I mean, I'm just looking at my

3    sentencing statement real quick.  I've had three sentencings

4    this week, the statements are running together in my head.

5          **THE COURT:**  And to be clear, I understand the

6    parties and probation have -- there's this fundamental

7    question around assault, and there are issues around the

8    applicability of different guidelines provisions.  I'm sort

9    of putting all of that to the side, I understand those.

10   Those aren't really objections to the -- the assault

11   question of course is, but those aren't what I'm thinking

12   about here.  It's just like is there somewhere where the PSR

13   says something factual that you have an objection to?

14         **MR. SHIPLEY:**  I don't think so.  I thought the PSR

15   was overall very well done.

16         **THE COURT:**  I agree.

17         **MR. SHIPLEY:**  I thought that -- you know, I think

18   the probation officer did not engage in a legal analysis --

19   which I wouldn't have expected as to what is the legal

20   definition of assault, and does this conduct raise to that

21   level.  So using the generic word assault -- because it's in

22   111(a), I'm pointing out to the Court that that is sort of

23   the gravamen of our dispute here between the government and

24   the defendant.

25         **THE COURT:**  Yes, yes.

1          **MR. SHIPLEY:**  So the calculations -- obviously I

2   set forth my own calculations.  The grouping changes

3   slightly if my calculations are used because we have a

4   nine-level spread, so we don't get an extra for grouping, we

5   don't get the extra third point for acceptance either.  But

6   beyond that, from the day Mr. Phipps and I began to discuss

7   possible dispositions here, this was the path, and the path

8   runs through the question of whether it's an assault.

9          And I want to just say for the record, I heard the

10  Court mention it -- and this is the argument I made to Judge

11  McFadden that he just could not understand the government's

12  rationale.  Aggravated assault requires a felonious assault.

13  If you don't have an assault, you can't have a felonious

14  assault.  And if you don't have a felonious assault, you

15  can't have an aggravated assault.  And that's in the

16  guidelines.  If the commission wants to write that in a

17  different way to make it clearer, they can clearly do so,

18  but that's the way it reads now.

19          **THE COURT:**  So just to be really clear, I agree

20  with that position, but that doesn't mean there wasn't an

21  assault here.

22          **MR. SHIPLEY:**  Fair enough.

23          **THE COURT:**  That, seems to me, the main question.

24          **MR. SHIPLEY:**  Yes.

25          **THE COURT:**  So I'd like to hear from the

1    government very briefly on the question of why it believes

2    there was an assault, including the intent requirement.

3    Then I'm going to take a brief recess, I'll come back, walk

4    through my guidelines analysis, and then we can talk about

5    why the parties' respective positions about an appropriate

6    sentence is correct, okay?

7              **MR. SHIPLEY:**  Okay.

8              **THE COURT:**  Thank you.

9              **MR. LIEBMAN:**  So Your Honor, I was looking up the

10   definition -- the Model Penal Code definition of assault,

11   and it sounds like the Court has already decided that it's

12   going to rely on that.

13             **THE COURT:**  No, I haven't.  I don't mean to hide

14   the ball at all.  I have concluded in connection with 111

15   that because of the D.C. Circuit's opinion from 1996, and an

16   opinion I'm not going to remember the name of right now,

17   that I'm bound to apply the Model Penal Code definition of

18   assault for purposes of deciding whether an assault occurred

19   under 111.  That, to me, is not the same thing as deciding

20   what the commission meant when it used the word assault in

21   2A2.2.

22             But the reason I asked about common law and Model

23   Penal Code is because those are competing definitions out

24   there.  I've been forced to take a position about that in

25   the context of 111.  As I think through the conduct here,

**1**   it's an easier world if I conclude that the conduct either

**2**   is assault under whatever definition one uses or is not

**3**   assault under whatever definition one uses.  It becomes very

**4**   complicated in my mind if I'm in the world where I think the

**5**   conduct satisfies one but not the other.  I'm not suggesting

**6**   that's the case, but that's why I raised both definitions.

**7**          Again, I've said this already in the case where

**8**   I've applied this, I'm not sure the D.C. Circuit was right

**9**   to apply the Model Penal Code definition to 111, but it did.

**10**  I'm bound by that in the context it did so.  But it is not

**11**  at all clear to me that the Model Penal Code applies here in

**12**  connection with the guidelines.

**13**       **MR. LIEBMAN:**  So if I understand the Court

**14**  correctly, there can be a non assault felony under 111(a)

**15**  that could still constitute an assault for purposes of the

**16**  guidelines because of that definition -- the implied -- the

**17**  implicit --

**18**          **THE COURT:**  I mean, it would be weird, but yes, in

**19**  theory that could be true.

**20**       **MR. LIEBMAN:**  That is -- probably would be the

**21**  more difficult analysis frankly, because the guidelines

**22**  don't have a definition of the world assault.

**23**          **THE COURT:**  Correct.

**24**       **MR. LIEBMAN:**  So if we're stuck with that the word

**25**  assault as it appears in the guidelines should be defined

1    the same way that the word assault is in the statute, and if

2    the D.C. Circuit is saying the Model Penal Code provides

3    that definition, I would submit, Your Honor, that this

4    defendant in his -- at least in some of that conduct -- that

5    physical conduct during that three-minute period between

6    4:35 and 4:38 and change p.m. was attempting to cause bodily

7    injury to another.

8            He, himself, if you remember from the video, at

9    one point kind of falls down to a lower level and has to be

10   helped up by others.  Certainly he was at risk of suffering

11   bodily injury, which is a direct result of the contact he

12   started when he fell down to that lower level and almost got

13   hurt.  But that also could have happened to the officer that

14   he was grappling with who was also right next to the edge.

15   And I think all this defendant cared about frankly -- and we

16   know something about his intent at the time, because I

17   believe it's between the first assault at 4:35 and the

18   second set that starts at 4:38 he is saying this is just the

19   beginning, he's not done.

20           I would submit, Your Honor, that when he did

21   grapple and push and shove -- and even the moment that

22   Mr. Shipley focuses on, the defendant's reaction to the

23   officer pushing -- using his baton as the defendant -- as I

24   think I heard Mr. Shipley concede lawful, we certainly seem

25   to think it was lawful, to push against his companion, the

1    one in the red and gray sweatshirt.  When he -- it's the

2    defendant who moves towards that officer.

3         And there may have been -- I think looking at that

4    video, once that starts, once he moves towards them and

5    starts -- initiates the contact and grappling, it looks like

6    there is something, some sort of device or rope or cord,

7    that kind of keeps them together a little longer.  But

8    that's because the defendant initiated that.  And I do

9    think, Your Honor, at that point he's angry because of what

10   happened to -- and it's quite apparent to me, and I have

11   other videos I'll show in my full sentencing presentation,

12   that that is a friend of his.  He wanted -- he intended to

13   at least cause some physical bodily injury to that officer.

14   He didn't intend to seriously hurt him, I wouldn't go that

15   far, and that's not what the Model Penal Code requires

16   anyway.  But he wanted to push that officer down.  He wanted

17   that officer to feel some sort of frankly pain because of

18   what he, the defendant, views as offensive conduct that just

19   happened to his friend as well as how, in his view -- and I

20   think there's other --

21        **THE COURT:**  If that's right, if the government's

22   right about that, it doesn't actually matter whether it's

23   Model Penal Code or common law, that's assault under both.

24        **MR. LIEBMAN:**  Intent to cause some physical

25   injury, and I think it's there.  Is it overwhelming?  No.

1    But certainly for --

2           **THE COURT:**  Mr. Shipley's argument is given the

3    context, given what's happening, I can't infer that intent

4    from the record.  This is to paraphrase or perhaps put it

5    the way I might put it:  The conduct is as consistent with

6    attempting to prevent harm to self or someone else as it is

7    intent to cause harm to someone else.  And since we don't

8    know more, I can't find for purposes of the guidelines that

9    there was an assault.

10          **MR. LIEBMAN:**  Well, I would disagree strongly with

11   the premise that the conduct is consistent with -- or only

12   consistent with trying to prevent harm to someone else.  If

13   you look at that moment again that Mr. Shipley focused on,

14   the defendant's friend was pushed once with a baton, stepped

15   back, didn't fall down, nothing else happened.  There's no

16   other contact imminent between that officer and his friend.

17   Nonetheless, this defendant was incensed that even that

18   limited contact initiates what the government submits is an

19   assault -- at least physical contact, aggressive physical

20   contact, against the officer who did that.  And then when

21   Officer Campanelli tries to intervene, he turns -- he, the

22   defendant, turns his attention to that officer.

23          **THE COURT:**  Okay.  Thank you, Mr. Liebman.  As I

24   said, I'm going to take a recess, a very brief recess -- I

25   mean, we're talking 10 minutes max.  I want to just reflect

1    on what I've heard around the guidelines, but especially

2    this core question.  My plan is to come back, to walk

3    through my guidelines analysis, then to have the parties do

4    their -- basically their sentencing presentation,

5    recognizing that I will have viewed multiple times some of

6    the core videos.  And then depending on what I've heard, I

7    may take another recess at that point to pronounce the

8    sentence or I may go straight into the pronouncement.

9            So with that, let's go into recess very briefly.

10           (Recess taken at 12:07 p.m.)

11           (Proceedings resumed at 12:17 p.m.)

12           **DEPUTY CLERK:**  We are back on the record.

13           **THE COURT:**  Thank you, Ms. Moore.  As I indicated,

14   I'm going to walk through my guidelines analysis in just a

15   second.  But what I wanted to do is since obviously the

16   guidelines analysis is contained in the presentence report,

17   and we had a discussion about objections to the presentence

18   report, I want to have a short colloquy with Mr. Phipps

19   regarding it.

20           Mr. Phipps, we obviously have spent a fair amount

21   of time already this morning discussing the presentence

22   investigation report and the relevant sentencing guidelines

23   analysis.  You've obviously been here for that.

24           Have you had enough time to discuss and review the

25   presentence investigation report with Mr. Shipley?

1          **THE DEFENDANT:**  I believe so, sir.

2          **THE COURT:**  And did you have enough time to talk

3   to him about that report and the arguments that would be

4   made today?

5          **THE DEFENDANT:**  We did, yes.

6          **THE COURT:**  Are you satisfied with Mr. Shipley's

7   representation of you in this case?

8          **THE DEFENDANT:**  Yes, sir.

9          **THE COURT:**  So recognizing that there are issues

10  to resolve with respect to various guidelines questions, and

11  in particular whether there was an assault here at all,

12  subject to that, I accept the factual findings contained in

13  the PSR regarding the circumstances of the offense, and I

14  adopt those facts for the purposes of imposing a sentence.

15          As to the guidelines calculation, under the

16  Supreme Court's decision in United States vs. Booker, the

17  guidelines are not mandatory, they are advisory.  But I must

18  both calculate them correctly in my view, and then consider

19  them as a relevant factor at sentencing.  The guidelines, as

20  we've discussed this morning, point with respect to count

21  one to both section 2A2.2 and section 2A2.4 as potential

22  guidelines for that count, for the violation of 18 U.S. Code

23  section 111.

24          In my view, section 2A2.2 applies here because

25  Mr. Phipps' conduct, in my view, constitutes and constituted

1  aggravated assault under the guideline.  His conduct, in my

2  view, fits the commentary's definition of aggravated

3  assault, because I find by a preponderance of the evidence

4  that Mr. Phipps committed an assault under both the common

5  law and Model Penal Code definitions of assault; and as

6  Mr. Phipps admits, his conduct was done with an intent to

7  commit another felony.

8           In particular, as reflected on the videos that the

9  government provided to me, that I reviewed before today's

10  hearing, and then have reviewed today again, beginning at

11  16:38 and thereafter in particular, officers attempting to

12  push rioters back were confronted with rioters.  Another

13  rioter was pushed by officers.  At that time, in my view, by

14  a preponderance of the evidence, that rioter was not in

15  danger, and Mr. Phipps was also not in danger.  Mr. Phipps,

16  nonetheless, launched himself at the officers.  In my view,

17  that conduct satisfies by a preponderance of the evidence

18  both the common law definition of assault and the Model

19  Penal Code.  In particular, in my view, it establishes by a

20  preponderance of the evidence that Mr. Phipps acted with an

21  intent to cause some injury to the officers at the time.  As

22  a result, Mr. Phipps has, for count one purposes, a base

23  offense level of 14.  He does not dispute that the 6-level

24  enhancement for an official victim applies resulting in an

25  offense level of 20.

1    In my view -- and in light of the government's

2    concession, really, that he wasn't intending to commit

3    serious bodily injury, the relevant provision that I'm

4    relying there for the 6-level enhancement comes from section

5    3A1.2(b) which I believe applies here by a preponderance of

6    the evidence, again.

7    As to count two, the relevant guideline provision

8    is section 2X5.1.  That section provides that if the offense

9    is a felony for which no guideline expressly has been

10   promulgated, apply the most analogous offense guideline.  In

11   this case, the parties and probation all agree that the most

12   analogous offense guideline is section 2A2.4.  Probation and

13   the government, however, take the position that 2A2.4(c)'s

14   cross-reference provision for when the conduct constituted

15   aggravated assault means that section 2A2.2 applies.  I

16   agree, because as I explained regarding count one,

17   Mr. Phipps' conduct did constitute aggravated assault under

18   the guidelines defined in section 2A2.2.  As a result, count

19   two also has a base offense level of 14.  And the same

20   6-level enhancement for an official victim that I applied to

21   count one applies here, too, resulting in an offense level

22   of 20 for count two.

23   Turning to count three, all agree that section

24   2B2.3 applies.  Probation and the government, however, argue

25   that 2B2.3(c)'s cross-reference provision kicks in when the

1    offense was committed with the intent to commit a felony,

2    that that applies here, and ultimately results in an

3    application of 2A2.2 and its base offense level of 14.  This

4    is presumably because, in the government's and probation's

5    view, Mr. Phipps entered or remained in a restricted area --

6    which is the count three violation, with the intent to

7    commit aggravated assault.  Mr. Phipps says the

8    cross-reference provision does not apply making the base

9    offense level four.

10          In my view, Mr. Phipps did not enter or remain in

11   the restricted area with the intent to commit aggravated

12   assault.  He did, as I've found, commit an aggravated

13   assault, but I do not believe he entered or remained in the

14   restricted area with the intent or with the predominant

15   intent to commit that assault.  I do find that Mr. Phipps

16   remained in the restricted area with the intent to commit

17   civil disorder under 18 U.S. Code section 231.  As a result,

18   2B2.3(c)'s cross-reference provision applies directing us to

19   apply 2X1.1 in respect to that felony offense.

20          That provision directs me to apply the base

21   offense level from the guideline for the substantive offense

22   plus any adjustments from such guidelines.  As everyone

23   agreed regarding count two, the most analogous guideline to

24   that offense, and therefore the offense that in my view

25   Mr. Phipps' intended to commit in connection with count

1    three, is 2A2.4.  The base offense level is therefore 10.

2         In addition, in my view, section 2A2.4(b)'s

3    physical contact specific offense characteristic does not

4    apply, because I find that Mr. Phipps did not remain in the

5    restricted area with an intent to engage in physical contact

6    with an officer while committing civil disorder.  2A2.4(c)'s

7    cross-reference provision does not apply, because 2X1.1 does

8    not direct me to apply cross-reference provisions.  Section

9    3A1.2's victim-related adjustment does not apply as stated

10   in application note 2A2.4 and application note two to 3A1.2.

11   So the offense level for count three is 10.

12        The relevant guideline provision, turning to count

13   four, is section 2A2.4.  The guidelines point to both 2A2.4

14   and 2B2.3 as potential guidelines for count four.

15   Mr. Phipps seems to suggest that 2B2.3, which applies to

16   trespass, is the better fit.  But I would agree with

17   probation and the government that 2A2.4, which covers

18   obstructing or impeding officers, is a more apt provision

19   for count four which charges Mr. Phipps with knowingly and

20   intentionally impeding or disrupting government business or

21   functions in or near a restricted building or grounds.

22   Because 2A2.4 applies, I agree with probation and the

23   government that 2A2.4(c)'s cross-reference to 2A2.2 applies,

24   because the conduct relevant to count four included

25   aggravated assault under the guidelines.  Section 2A2.2

1  provides a base offense level of 14.  And as we've

2  discussed, 3A1.2 triggers a 6-level enhancement.  As a

3  result, for count three, the offense level is -- excuse me,

4  for count four, the offense level is 20.  The guidelines, of

5  course, do not apply to counts five or six.

6  And then we have to apply section 3D1.2 of the

7  guidelines to see how these four offenses group.  Under

8  3D1.2, all counts involving substantially the same harm

9  shall be grouped together into a single group.  3D1.2

10  provides four reasons why counts may involve substantially

11  the same harm:  When they involve the same victim, the same

12  act or transaction and the like.  In my view -- and again,

13  disagreeing to some extent with all of the parties, I

14  believe counts one, two and four should be grouped together.

15  Counts one, two and four, as I have thought about them, all

16  involve persons, the officers as victims, and involved the

17  same act, the assault.

18  To be sure, some of the counts -- particularly

19  count four, may involve another victim -- for example, the

20  government or Congress, and other acts.  But nonetheless,

21  all three of those counts involve a common victim and common

22  act.  Indeed, for guidelines purposes, the assault provides

23  the key act and victim for count four, because the

24  guidelines direct me to base Phipps' offense level for count

25  four on the assault as explained earlier.

1          We therefore turn to sections 3D1.3 and 3D1.4 to

2     calculate the combined offense level.  Again, grouping

3     counts one, two and four together, that group, group one,

4     has a highest offense level of 20.  The other group, group

5     two, which includes only count three, has a highest offense

6     level of 10.  Group one has the highest offense level and

7     receives the unit designation of one.  Group two is nine or

8     more levels less serious than group two, it is therefore

9     disregarded in the calculation.  The total unit number is

10    therefore one which results in no offense level increase,

11    and thus the total offense level here is 20.

12         We then turn to section 3E1.1, acceptance of

13    responsibility.  Probation applied a three-level decrease

14    for acceptance of responsibility.  No party objects.

15    Obviously, Mr. Phipps' lead position is that one of those

16    levels is irrelevant.  But I think everyone agrees that the

17    three-level decrease is appropriate assuming the guidelines

18    calculation as I've otherwise conducted it.  Therefore, the

19    Court will apply the three-level decrease for a total

20    offense level of 17.  Phipps is estimated to have zero

21    criminal history points, and therefore falls within criminal

22    history category one.

23         As a result -- and with my apologies to everyone

24    in the gallery for the very, very technical discussion, the

25    guidelines range is 24 to 30 months with an applicable fine

1    range of $10,000 to $95,000.  Because counts three and four

2    have a statutory maximum of one year, the guideline for

3    those counts is 12 months.  The guidelines range for

4    supervised release is one to three years for counts one and

5    two, and one year for counts three and four.  And there is

6    an applicable mandatory special assessment in this case of

7    $270.

8         I think it's fair to say that the parties'

9    positions on the guidelines and the appropriate guidelines

10   calculation are well preserved.  But does anyone want to

11   expressly state a continuing objection, just so the record

12   is clear?

13        **MR. LIEBMAN:**  Not quite that, Your Honor, but I

14   would just remind the Court that I advised earlier that the

15   assaults all occurred -- assaultive conduct occurred on the

16   north terrace, and the Court adopted a factual finding which

17   all say west terrace.  Again, that's because that's my

18   error.

19        **THE COURT:**  I should say that I -- I meant to say

20   that I accepted the PSR with the qualification that you

21   indicated earlier, I meant to say that.  So thank you for

22   that.

23        **MR. LIEBMAN:**  And the other somewhat minor thing

24   is paragraph 79 of the final presentence report, which was

25   written on July 26th, 2023, refers to a pending arrest

1    warrant of the defendant in Kennesaw, Georgia.  That

2    actually was removed on July 28th of 2023, just two days

3    after the report was issued.  I've confirmed that.  So that

4    probably should be updated.

5           I will also point out while I'm having this --

6    while we're addressing this, is the Kennesaw Municipal Court

7    is expecting the defendant to appear there on August 15th to

8    address that matter.

9           **THE COURT:**  Okay.  Any objection, Mr. Shipley, to

10   noting those amendments or qualifications to the PSR for the

11   record?

12          **MR. SHIPLEY:**  Nothing with regard to what the

13   government has just offered.  And just for the record, I'll

14   say I would maintain my guideline calculation argument, and

15   just make an objection for the record to the Court's

16   conclusion.  I understand the Court's factual finding on the

17   question of assault.

18          **THE COURT:**  Thank you.  I think the record

19   reflects both the defendant's position on all sentencing

20   questions, the government's position, probation's position.

21   Obviously I've done my calculation.  I think all of those

22   positions and objections are preserved, both by having noted

23   them beforehand today and preserving them.

24          So with that, I'd like to proceed now to hear from

25   the parties about why they believe that the sentence they

1  have recommended is the appropriate one.  Obviously,

2  Mr. Liebman, my guidelines calculation is slightly different

3  from the one advanced by the government and probation.  But

4  the government's proposed period of incarceration here would

5  still fit within the guidelines as I've -- the guidelines

6  range as I've calculated them, correct?

7       **MR. LIEBMAN:**  Only if you run one of the non

8  guidelines counts consecutive in some fashion, Your Honor.

9  Because I think the --

10       **THE COURT:**  Oh, I apologize, you are correct.  I'm

11  sorry, the government recommends a sentence of incarceration

12  of 33 months, and the top end of my calculation is 30

13  months.  I apologize, yes, that's correct.

14       **MR. LIEBMAN:**  And without waiving our disagreement

15  of the Court's guideline calculation, I'm going to just

16  argue why I believe -- for many of the reasons I set out in

17  my sentencing memo, why the Court should sentence at the top

18  of the guideline range of 24 to 30 months.

19       **THE COURT:**  Your argument that I should have

20  calculated it differently is preserved.  Nothing that you're

21  about to say is inconsistent with that, in my view.

22       **MR. LIEBMAN:**  Thank you, Your Honor.  I'll just

23  begin by pointing out that the probation office's

24  recommendation of the guideline calculation that they found,

25  which is the same as the government, is to sentence at the

1    low end of the guidelines.  I think, frankly, one of the

2    reasons probation probably recommended that is that the

3    probation office was not aware because I didn't alert them

4    to it -- it's in my sentencing memo and I'm going to talk

5    about it in a minute, of the very alarming Facebook posts of

6    this defendant.  I think that drives it up -- or justifies

7    sentencing at the top end of the applicable guideline range.

8            I'd also point out that the two what I call

9    comparator cases that I discuss in my sentencing memo, in

10   order to avoid sentencing disparities, one of the things

11   that section 3553 talks about, I had argued that the

12   33-month sentence was appropriate for the same reason, of

13   course it would follow, that a 30-month sentence is

14   appropriate to avoid those kind -- a disparity.

15           So I do have a little slide show here -- or a

16   little PowerPoint I should say.  I'll get that going here.

17   So here's the second slide.  This, again, is the Facebook

18   post that -- one of them, that is quite alarming in the

19   government's view.  Again, I don't dispute the Court's

20   finding that this defendant personally did not intend to

21   inflict serious bodily injury on anybody, but we all know

22   from the circumstances of the riot that day serious bodily

23   injury and indirectly deaths were the result of the riot.

24   Persons who were there who may not have wished either of

25   those things to happen bear some responsibility, in the

1    government's view, if they were egging on or encouraging

2    that kind of conduct.

3            Here's what the defendant posted on his Facebook

4    account on November 6th, 2020, two days after the general

5    election was over.  And you can see the picture there:  "By

6    bullet or ballot, restoration of the republic is coming."

7    And then in the accompanying text he wrote:  "We are

8    witnessing a deep state coup.  Our constitutional republic's

9    democratic process had been subverted and our votes

10   corrupted by a non-elected bureaucratic deep state."  That

11   text combined with that image, Your Honor, is, I would

12   submit, encouraging violence.

13           The next day we have a picture of a government

14   repair kit, basically a hangman's -- three hangman's nooses,

15   a whole set of gallows, that he posted on his Facebook

16   account on November 7th, 2020.  And he says -- he talks

17   about now going to a rally in D.C., and I have the Facebook

18   post itself quoted:  "I believe it's time for patriots to

19   rally up in D.C.  We've talked the talk, now is the time to

20   put action behind our words," it continues, "and our

21   republic is being stolen.  Meet me in D.C.," it says at the

22   end.  And of course, as I think all of us remember, a

23   gallows was literally erected by some of the rioters during

24   the riot on the Capitol grounds.

25           December 22nd, 2020, this is after the Electoral

1   College has met and the votes, at least at that point, were

2   indicating that Donald Trump has lost.  This defendant posts

3   a picture with text on it that says:  "Are my people ready?

4   Locked and loaded, sir," a clear reference to firearms, with

5   a picture of President Trump in the frame.

6            Finally, December 27th, 2020, a direct reference

7   to January 6th.  It's an image that I happen to know is from

8   a Hollywood movie about Wyatt Earp.  He writes:  "Hey

9   Marxists, Trump is coming on January 6th, and the

10  deplorables are coming with him," it says.  And, of course,

11  the character in the picture is very angry holding a

12  shotgun.  Now, there's no dispute, but just so the Court's

13  aware.  So this is the defendant's profile image that he

14  created or changed to on his Facebook account two days after

15  the riot.  This is how we were able to follow him over all

16  those various videos.  This one's taken in the -- it was

17  clearly obviously taken in the Crypt on January 6th, 2021.

18  He makes it his Facebook profile two days later.

19            As I set forth in the memo, the defendant actually

20  made two -- perhaps three, but most likely two attempts or

21  actually successful entries into the building.  One was just

22  kind of negligibly, he barely crossed the threshold.  And

23  that's his first one here.  There's the defendant in the

24  upper right of the frame, before I start playing.  The flag

25  is draped over his right shoulder, his back is to the

1    camera.

2         (Video played)

3         **MR. LIEBMAN:**  Heading into what's called the fire

4    door, it's on the west terrace, and it leads to a door --

5    there's the same doorway here in the next slide.  There's

6    the defendant with that flag draped over his shoulder.  Now

7    he's facing this particular camera.  That's the

8    Parliamentarian's door, the interior door on the left side

9    of the frame, a fairly sensitive area, frankly, of the

10   Capitol.  I don't have -- I'm not going to play the security

11   video, I didn't bother bringing it.  But the defendant only

12   made it in a couple more feet from that point where he is at

13   that still moment there, about 2:59 p.m., before officers

14   who are further back inside the hallway there push everyone

15   out.  And in case it matters, Your Honor, there's actually

16   no physical contact between the defendant and any of those

17   officers.

18        When the other rioters in front of him, who were

19   closer to the officers, when they turn around to leave, he

20   goes out and he leaves as well.  But he doesn't go far,

21   because about three minutes later he goes through the Senate

22   wing doorway, again, an entrance on the west terrace just

23   several feet away from the fire door that he first tried.

24   This time he makes it in, well into the interior.  He

25   actually goes into the Senate wing there, and he walks down

1    toward the Crypt, the area where he took the photograph that

2    became his profile image on Facebook.

3          I'm sure Mr. Shipley may talk about it, but just

4    in case, there's nothing really all that remarkable about

5    what the defendant does while he's inside the Capitol.

6    There is some video -- and I didn't bother to play it, where

7    he's in the Crypt, and at some point someone starts

8    chanting: "Who's house?  Our house," and he joins in that

9    chant.  But there was no physical contact with police

10   officers that I'm aware of, that we would find.  There's not

11   a camera on him for the whole 20 -- the whole 30 minutes

12   he's in the building, but we don't believe any physical

13   contact with officers or act of intimidation short of that

14   involving officers or anyone else occurred.  Frankly, Your

15   Honor, if we were not aware of what happened on the north

16   terrace later, this case probably would have just been a

17   misdemeanor matter.

18         Now, this is the north terrace.  I did not talk

19   about this in my sentencing memorandum.  This is -- I didn't

20   know about it until quite recently.  We're not sure of the

21   timeframe of this, Your Honor, that's why the text at the

22   top that I wrote says time uncertain.  It's most likely

23   after he exits and before the assaults occur.  It's kind of

24   hard to spot him, but he's generally going to be in this

25   area.  What happens -- I'm going to play the video in a

1    moment.

2         There was a tussle involving police officers that

3    occurs in the lower right of this frame.  This is social

4    media video, it does have audio.  It's not security video so

5    I don't know the time stamp.  And what the defendant does --

6    he's up a little further up in the background here near the

7    walls, he actually moves toward that area.  I can't say what

8    his intent was, but I would submit since he is there

9    unlawfully, along with all the other people who are around

10   the officers, it is an act of intimidation towards those

11   officers.  He never makes physical contact with them.

12        I will play it now and try to point out where he

13   is; it's a little difficult to see.

14        (Video playing)

15        **MR. LIEBMAN:**  I have circles on various time

16   points where he is, and of course -- there's my time stamps

17   in the lower left.  He is right there.  That's that shoulder

18   patch that is quite clear from the Facebook photo.  So he's

19   higher up, kind of back behind where this little scrum is

20   occurring involving some police officers and rioters, and

21   he's moving towards that area.  You see the officers there,

22   Your Honor.  And he is now -- I can't find him here, but

23   he's now moving away.  He's back up at a higher level, he's

24   in that group there.

25        So we don't know exactly what happened, but it is

1    somewhat alarming that he moves along with other rioters

2    towards an area where officers are already physically

3    grappling --

4         **COURT REPORTER:**  I'm sorry to interrupt,

5    Mr. Liebman, but I can't hear you very well when you're

6    speaking over the video.

7         **MR. LIEBMAN:**  Oh, I'm sorry.

8         **COURT REPORTER:**  If you could try to --

9         **MR. LIEBMAN:**  Sure.  So we don't have video

10   showing him in physical contact with the officers, Your

11   Honor, involved in that incident right there.  We don't know

12   what he might have been saying to them because the audio

13   isn't close up, obviously.  But it's alarming that he would

14   choose to move toward an area where officers are physically

15   struggling with other rioters and join them.  However,

16   whatever his intent might have been, it is not something

17   that's going to cause comfort to those officers.

18        (Video played)

19        **MR. LIEBMAN:**  Actually, this is somewhat helpful.

20   These are a few still images where I've indicated where he

21   is.  There he is in the circle there, that's three seconds

22   into the video.  Thirteen seconds in, there he's circled.

23   This is 30 seconds in, he's getting a little closer.  And

24   then at 52 seconds, he's turned around heading back.  That's

25   his flag over his shoulder there.

1          And then we also have some social media video that

2    I showed last night -- I submitted to the Court last night.

3    Because what we don't see from the body-worn camera video --

4    and believe me, I searched for it, is something where

5    someone -- an officer at the front of the line could record

6    what the defendant is doing in the 10, 15 minutes or so that

7    lead up to that assault.  But we do have the social media

8    video.  From context, it's quite clear this is occurring

9    sometime after he left the Senate wing doorway, he's now on

10   the north terrace, and before the assault happens.

11          And what you'll see is that he moves toward the

12   officers.  It's not like the body-worn camera video we

13   watched earlier, he just happens to be there when the

14   officers get there and then there is this aggressive conduct

15   by him there.  The reason he was that close to begin is

16   because he made an effort to get to that position.  He was

17   further away initially.

18          So this is -- and I'll point him out in a moment

19   here.

20      (Video playing)

21      **MR. LIEBMAN:**  He's off frame just a little bit to

22   the left at this moment where I've paused it.  That's the

23   flag on his shoulder.  The officers are in the background.

24   And for the benefit of the court reporter, I'll pause there.

25          So he is still relatively in the same position at

1    this moment.  He's on the north terrace.  The officers, who

2    are -- eventually he's going to encounter closeup a few

3    minutes later, are still probably 10, 15, maybe more, yards

4    away from him.  And you can tell from this recording that

5    the defendant, after he sees apparently -- or he sees and

6    hears apparently some tear gas being deployed, he moves

7    toward them -- the officers, that is.

8        (Video played)

9        **MR. LIEBMAN:**  I'll pause it right there.  So you

10   might have noticed, Your Honor, the person holding the

11   camera who's giving us the commentary, he hasn't really

12   changed his position.  But the defendant now is further away

13   from him than he was before.  He is -- okay, there's that --

14   that's the person I would submit is his friend in that red

15   and gray jacket, he's just to the right of him.

16       (Video played)

17       **MR. LIEBMAN:**  That's the flag -- there it is right

18   there, we can see it.  He's actually to the left of that

19   person now in the red and gray sweatshirt.  The flag is

20   draped over his shoulder.  Now, again, further away from the

21   commentator that was recording this towards the officers.

22       (Video played)

23       **MR. LIEBMAN:**  Here's another -- this actually is

24   around the time of the assaults.  Again, it's social media

25   footage so we don't know exactly what time it is, but it's

1    on the north terrace.  What you're going to see, Your Honor,

2    is at this point, it may be because of an earlier incident

3    or whatever, the defendant is actually down here in the

4    lower right in this lower area.  Most of the officers,

5    including the officers he eventually confronts, were up here

6    at this higher level to the left.  What you're going to see

7    is he moves along that lower level, climbs over that

8    abutment, for lack of a better word, in order to be in a

9    position to confront the officers.

10       (Video played)

11          MR. LIEBMAN:  He just climbed up, that's him right

12   there holding the flag in front of him.  I'll circle it here

13   for Your Honor.

14       (Video played)

15          MR. LIEBMAN:  Again, moving towards the line of

16   police.

17       (Video played)

18          MR. LIEBMAN:  He just actually -- at that moment,

19   he uses his right hand to pat that other person in the

20   two-colored sweatshirt on the back, clearly indicating an

21   association.

22       (Video played)

23          MR. LIEBMAN:  This is just the video I played

24   earlier, I'm going to skip over that.  And then he leaves at

25   some point, we don't know exactly when.  And I should remind

1    the Court, he doesn't leave until after he's told the

2    officers:  "This is the beginning" -- "This is just the

3    beginning."  And then he has some more posts on his Facebook

4    account after January 6th, including this one two days later

5    where he says -- he makes a statement that includes:  "I

6    helped take the Hill," Hill referring to Capitol Hill.  "I

7    helped other patriots prevent Antifa from damaging

8    anything."  I can't find any video evidence of that.  And

9    then he asks rhetorically at the bottom:  "Where were you on

10   06 Jan. '21?"

11           And then on January 18th -- which is, by the way,

12   one day before the arrest warrant was issued, he writes:

13   "For those who may be wondering, no, the FBI is not after me

14   because I'm on video fighting with Antifa and cooperating

15   with law enforcement.  I exercised my First Amendment

16   rights."  I haven't seen any video of him fighting with

17   Antifa.

18           So, Your Honor, for the reasons I said at the

19   outset, we believe the appropriate sentence is the high end

20   of the guidelines which Your Honor has calculated as 30

21   months.  We believe it fits nicely into those comparator

22   cases that I discuss in my sentencing memo.  I'd also point

23   out that the defendant, in the government's view -- and the

24   video evidence I think supports it substantially, committed

25   three separate assaults even though he's only charged with

1    one and pled to one.  And for that reason -- that's another

2    reason why the sentencing -- the sentence should be imposed

3    at the upper end of the applicable guideline range.  We also

4    believe that restitution is appropriate, it's allowed for,

5    because of two Title 18 offense convictions.  We would

6    recommend, as I said in my sentencing memo, the standard

7    $2,000 we've been asking in all felony cases involving

8    January 6th payable to the Architect of the Capitol.

9            We've set out the sentencing structure in my memo.

10   The only thing that would change would be that for each of

11   the two felony convictions, we would ask that the Court

12   impose 30 months for each, again, given the Court's

13   guideline calculation.  I think there is some symbolism to

14   imposing the maximum guideline and available statutory

15   sentence consistent with the guidelines, Your Honor, and

16   that's why I've asked for the maximum for all of these -- to

17   run concurrent granted, including the concurrent sentencing

18   also for the non-guidelines sentences, the Title 40

19   offenses.

20           That's all I have, Your Honor, unless the Court

21   has further questions.

22           **THE COURT:**  No, thank you, Mr. Liebman.

23   Mr. Shipley.

24           **MR. SHIPLEY:**  Thank you, Your Honor.  I guess I

25   would begin with a request that Mr. Phipps be sentenced for

1    the crime the Court's found him guilty of, based on the

2    facts the Court's found.  And I suspect that while certainly

3    111(a) criminalizes a spectrum of conduct, there's also

4    another spectrum of conduct for assault.  You have minor

5    assaults, you have more significant, major assaults.  A

6    major assault may not involve a weapon, it may not involve

7    physical injury, but there's still a broad spectrum of

8    conduct that is assaultive conduct.

9            I think there are examples of early sentences in

10   January 6th cases.  The one -- I can't remember the

11   defendant's name, but it was one of the first ones where he

12   had stepped out of the crowd, delivered a forceful blow with

13   his hand to the face and helmet of an officer who was not

14   injured because they had the helmet on.  But, I mean, that

15   was a full-blown, step forward, put everything behind it.

16   And I believe that person was a trained boxer and MMA

17   fighter who knocked that officer down.  No weapon, no

18   injury, but it's a 111(a) violation just like the Court has

19   found here.  But that doesn't even begin to come close to

20   what Mr. -- or what Mr. Phipps did doesn't even resemble in

21   any way what happened in that episode.

22           **THE COURT:**  So what was the sentence there, and by

23   whom?

24           **MR. SHIPLEY:**  I believe it was 42 or 48 months, I

25   can't remember, one or the other.

1          **THE COURT:**  By which of my colleagues?

2          **MR. SHIPLEY:**  I'm sorry?

3          **THE COURT:**  By which of my colleagues?

4          **MR. SHIPLEY:**  I know it wasn't Judge Mehta.  I

5    believe it might have been Judge Friedrich.

6          **THE COURT:**  So we have a possible sentence by a

7    possible colleague of mine.

8          **MR. SHIPLEY:**  No, I understand.

9          **THE COURT:**  That's not super helpful.

10          **MR. SHIPLEY:**  But I believe it was Judge

11   Friedrich.

12          **THE COURT:**  Okay.

13          **MR. SHIPLEY:**  It's one of the very early cases.

14   And I had a client before Judge Moss who swung a plastic PVC

15   pipe, did not hit the officer, but it was a 111(a), and he

16   got 54 months.  The officer actually grabbed the pipe with

17   his hand, and that prevented it from hitting him.

18          So where I'm coming to honestly -- and I think we

19   can probably cut to the chase here, is based on the actual

20   conduct, I think 24 to 30 months is relatively severe.  I

21   mean, because -- and I think I heard Mr. Liebman say --

22   maybe I misheard it, but I thought he said if not for his

23   conduct on the north terrace, this case maybe never gets

24   charged.  Because his time inside the Capitol didn't involve

25   any --

1      **THE COURT:**  No, I think he said it gets charged as

2    a misdemeanor.

3      **MR. SHIPLEY:**  As a misdemeanor.  So what we have

4    is that brief pushing incident takes him from a misdemeanor,

5    likely no time, to two years.

6      **THE COURT:**  Right.  The flip side of that is that

7    given my guidelines calculation and the way I've grouped the

8    offenses, it means that Mr. Phipps would -- the guideline at

9    least is the same for Mr. Phipps as it would be for someone

10   who did the same conduct but without any of the other

11   offenses, the trespass, the civil disorder and the like.

12   And in a way, that's to his benefit, because it ends up

13   treating him as if this didn't happen at the Capitol, as if

14   he didn't enter and remain, as if he didn't trespass.  I

15   mean, there is a world where a different grouping results in

16   a higher guidelines analysis.

17      So he benefits in a sense from my determination

18   around grouping, which basically means that some of the --

19   frankly, the other offenses don't really matter here.

20      **MR. SHIPLEY:**  I understand, and I made a note to

21   myself:  "Good for us," as soon as you came up with your

22   grouping analysis.  Because I recognized it was going to be

23   less -- or more than nine levels, and with one and two

24   together, the others were going to be more than nine levels

25   apart and there would be no added point.  So I knew

1    immediately it was going to go from 18 to 17, and the first

2    thing I did was pulled up the table to see, okay, where does

3    that take us.  That takes us to 24 to 30 months.

4              Again, I think just as a qualitative view, you saw

5    clearly what he did.  To say that's two years in a federal

6    prison -- you know, honestly, Your Honor, if that is worth

7    two years in a federal prison, there have been tens of

8    thousands of similar offenses in this city over five decades

9    that have never been charged.  It's scuffling with a police

10   officer sort of at the point where the police and the crowd

11   come together; it's nothing more than that.  If that's a

12   two-year offense, then thousands and thousands have escaped

13   two years in prison.

14             So I'm going to go right to where I was in my

15   sentencing memorandum, and I'm just going to simply ask the

16   Court to vary downward from 17 to 11; to put Mr. Phipps in

17   zone B to make him eligible for a sentence of probation; and

18   to sentence him to home detention which allows him to take

19   care of his mother.  I know where the guidelines come out

20   based on your calculation.  I hear, Mr. Liebman, you know,

21   the aggravating factors.

22             I guess the one point I would make -- because I

23   feel compelled to make it, is this is not a case where the

24   First Amendment activity is an element of the offense.  In

25   1512, you end up with arguing at sentencing because First

1    Amendment activity -- the Facebook, the social media, is

2    reflective of state of mind which goes to the corruptly

3    obstructing Congress.  The only state of mind that matters

4    for the crimes that Mr. Phipps pled guilty to is what he was

5    doing at the moment he engaged those officers.  Beyond that,

6    I think the First Amendment activity should be discounted

7    because it's First Amendment activity.

8         The sentiments that Mr. Phipps posted online,

9    objectionable as they might be, were shared by millions in

10   that timeframe.  I don't think we can take ourselves away

11   from that timeframe when they were posted.  The sentiments

12   are different today.  I think everybody -- or the large

13   majority of the population in retrospect, and with the

14   calming influence of the passage of time, recognizes that

15   overheated rhetoric was destructive and out of control.  But

16   we can't take it away from the moment in time when he did

17   it, and the fact that millions shared some of those

18   thoughts.  You know, he is who he is.  He's a single

19   gentleman living in Texas, unemployed and on the internet.

20   That's where this stuff comes from, I don't think that's any

21   mystery to anybody.  He's not Thomas Jefferson coming up

22   with this stuff off the top of his head and posting it for

23   all to see and rallying around him.

24        So I know it's a big ask, I know it's a big step,

25   but in this case, I feel compelled to ask for it.  And

1    that's just for the Court to exercise its discretion to go

2    from where it came up -- where it came out on the total

3    offense level, to vary downward, put him in zone B, a

4    lengthy term of probation, lengthy term of home detention as

5    would be authorized under the guidelines.  And for the facts

6    of this case and this man, I think it accomplishes all the

7    purposes of 3553(a) that the Court is obligated to take into

8    consideration.

9              With the Court's indulgence -- and I know this is

10   not typically done in a sentencing, but Mr. Phipps' mother

11   has traveled here from Texas.  I think she would just like

12   to be heard briefly, if the Court will allow her.

13             **THE COURT:**  I'm happy to hear from.

14             **MR. LIEBMAN:**  Your Honor, if I may briefly be

15   heard on that issue?

16             **THE COURT:**  Mr. Liebman.

17             **MR. LIEBMAN:**  This is just my -- this is my

18   position on all these cases, Your Honor.  The victims'

19   rights statutes give victims of crimes the opportunity to

20   personally address the Court.  There's no countervailing

21   provision for a defendant's relative to personally address

22   the Court.  He could have -- Mr. Shipley could have had the

23   defendant's mother write some letter or affidavit or

24   something that he could attach to a memo.  But I do object

25   to the Court hearing verbally from the defendant's mother.

1    **THE COURT:**  I understand the position, but I'm

2    still happy to hear from the defendant's mother.  At a

3    minimum, if I were inclined to give some non-custodial

4    sentencing, I would have to be thinking about an appropriate

5    living situation and the like.  So I'd like to hear from the

6    defendant's mother.

7    Ma'am, you may come forward.

8    **MR. SHIPLEY:**  I understand Mr. Liebman's

9    objection, but --

10   **THE COURT:**  I understand it, it just is overruled

11   in this context for what I hope is -- you know, I

12   wouldn't -- I'd be happy to hear from you, ma'am, so

13   whatever you'd like to say.

14   **DEFENDANT'S MOTHER:**  I don't know how much value

15   this is going to put on any decision.  I am under doctor's

16   care.  I am having to monitor my blood pressure at the

17   moment I first awake.  And because it runs between 195 and

18   194 over 95 or over 94, we are scheduling -- in fact, it was

19   supposed to take place today, for an evaluation of my

20   ability -- it's hard to admit that you're at this age where

21   some things have to be taken care of.

22   Cognitive positions is hard to face, if that's

23   what the test leads to.  To give you some things that we

24   have -- my doctor and I have discussed:  The fact that the

25   blood pressure is so high, if he puts me back on

1    medication -- which I was about 15 years ago, we're afraid

2    of what might happen.  At that time, I was driving nine

3    years the same way, the same way to go to work and go home.

4    On that medication, I became -- I don't know what the right

5    word is.  And that's one of my issues right now is losing

6    the ability to distinguish words.  I mean, I see them in my

7    head, but I can't pronounce them anymore.

8             I ended up -- instead of being on 635, I ended up

9    at Dallas Love Field going:  "Where did I miss my turn?"

10   And it's getting worse.  I don't like to use the word fear,

11   but there would be no way I would live in Washington, D.C.

12   It's too chaotic for me.  I have to have someone that I can

13   rely on to guide me where I'm going.  There's issues with

14   walking.  I'll be walking along, and all of a sudden I'll

15   lose my balance or -- and I'm sorry to be so blunt, but

16   there's -- just like now, there's so much that the doctor

17   and I have discussed that I can't remember to put it in

18   certain things or certain steps that we want to talk about

19   doing a test to evaluate my abilities to do things.

20            I can't do my gardening unless I have someone

21   there watching me, because I can't get back up.  Or if I do

22   fall down the stairs -- which I have come close to, there's

23   no one there.  I don't want to sound -- there comes a time

24   in your life when you -- I'm not there yet, but I might be,

25   according to my doctor, realizing the fact that people have

1   to wear diapers.  I am -- sorry, you know, this is not

2   something -- it's -- I won't say I'm completely senile, but

3   you don't know when that's going to happen.  I have been

4   examined, and I think my son's very much aware of how much I

5   could have lost versus what I did lose.  That's why he's

6   become more active in my participation of what I do and what

7   I don't do.  I can't drive at night anymore.  That's obvious

8   because of what happened years ago.

9          I don't know what else I need to tell you

10  except -- I don't know, I forgot my list, I'm sorry.

11          THE COURT:  Ma'am, I think for my purposes, I

12  understand your situation.  I'm very empathetic to it.  I

13  have family members and extended families who are going

14  through not exactly the same thing, but very similar things.

15  So I understand both what you're going through -- I mean, I

16  understand in the sense that I know of other people --

17          DEFENDANT'S MOTHER:  You've seen it.

18          THE COURT:  I've seen it, and I understand -- and

19  Mr. Shipley included it in his sentencing memorandum, how

20  your son, Mr. Phipps, is an important part from your

21  perspective of dealing with these issues.  So I understand

22  it, and I don't think I need you to go in more detail,

23  because I certainly -- both because of my own personal

24  experience, and what you've already said here today, I

25  understand very well what you're going through.  I'm very

1    sorry for you, that you are going through it, just as I'm
2    sorry for anyone who's going through it.  I know the people
3    I'm personally -- personal family members or friends who are
4    going through it, it's very, very difficult.  I empathize
5    very much with them and with you.
6          Mr. Shipley, I don't know if there's anything in
7    particular that you believe she would like to say that you
8    had talked about that she's omitted, but --
9          **DEFENDANT'S MOTHER:**  It's really because the blood
10   pressure is so high.  My doctor's concern is also is someone
11   going to be around to help me if I have a stroke or if I --
12   we do know through some testing I might have had a minor
13   stroke years ago or who knows when.  But it's concern that
14   there's not anyone who would be there to help me.
15         **THE COURT:**  Thank you for saying that.  I can
16   assure you that that's both well understood by me, and it
17   was in Mr. Shipley's sentencing memorandum so I knew that
18   coming in.  Thank you very much.
19         **DEFENDANT'S MOTHER:**  Thank you.
20         **THE COURT:**  Mr. Shipley, anything you'd like to
21   add?
22         **MR. SHIPLEY:**  No, Your Honor.  Thank you for
23   indulging us.  I believe Mr. Phipps has a few words he'd
24   like to say.
25         **THE COURT:**  Okay.  I was going to say, Mr. Phipps,

1    why don't you come forward to the podium if you'd like to

2    say something.

3               **THE DEFENDANT:**  Your Honor, thank you.  The first

4    thing that I wanted to address before I forget about it,

5    with respect for Mr. Shipley -- for Mr. Liebman, he doesn't

6    know my mind.  I don't think that he accurately reflects

7    what was going through my mind on January 6th, because at no

8    point did I ever intend to harm anyone.  My intent, believe

9    it or not, was de-escalation.  There was a point in one of

10   the videos Mr. Liebman was showing, I was trying to -- an

11   officer had gone down in the crowd, he lost his footing and

12   he went down.  I went to help him get up, not to do anything

13   else.

14              I kind of wish the whole thing didn't happen, to

15   be honest.  I had no intention of doing -- I realize I wrote

16   a lot of sensational things on Facebook.  It's Facebook,

17   it's not Wall Street Journal.  I talk tough I guess you

18   could say online, but I never had any intention of doing

19   anything that wound up happening.  I apologize for my

20   actions.  If I could go back and do it, I'd have done it

21   differently, I wouldn't have been there.

22              **THE COURT:**  Thank you, Mr. Phipps.

23              **THE DEFENDANT:**  As far as my mom, I mean, who's

24   going to take care of her.  I hate that excuse, I've seen

25   guys in TV and on movies:  Oh, I can't go because I've got

1    to take care of my mom.  I hate that, but that's where I am.

2             THE COURT:  Understood.  Thank you, sir.  Anything

3    you'd like to add, Mr. Shipley?

4             MR. SHIPLEY:  Nothing, Your Honor.  I think the

5    Court has a very complete picture.

6             THE COURT:  Yes.  Mr. Liebman?

7             MR. LIEBMAN:  A couple of minor things, Your

8    Honor.  First, I just want to put on the record that the

9    victims of this particular offense, this defendant's

10   conduct, were notified about the opportunity to address the

11   Court or submit something in writing, they just declined not

12   to.

13            And just briefly with regard to Mr. Shipley's

14   argument that the defendant's conduct does not justify even

15   a two-year sentence based on 50 years of what might have

16   happened in D.C. on previous occasions.  I'll just say what

17   I've said to many of the defense attorneys who have made the

18   argument to me:  The same conduct any other day, any other

19   place, committed alone, it probably wouldn't have resulted

20   in the charge, maybe not even a misdemeanor.  But on January

21   6th, 2021, when we were trying to do a peaceful transfer of

22   presidential power, and there's thousands of people doing

23   the same kind of thing at the U.S. Capitol, that's

24   different.  Thank you.

25            THE COURT:  Thank you.  I'm going to take a brief

1   recess, think through the arguments and statements I've

2   heard, and I'll come back and pronounce the sentence;

3   probably a five- to ten-minute recess.

4         (Recess taken at 1:16 p.m.)

5         (Back on the record at 1:28 p.m.)

6         **DEPUTY CLERK:**  We're back on the record.

7         **THE COURT:**  Thank you, Ms. Moore.  Before I

8   pronounce the sentence, I'll just summarize, as I often do,

9   the respective positions of the parties.  The government had

10  argued in its brief a total of 33 months of incarceration,

11  $2,000 of restitution, three years of supervised release and

12  no fine.  That was based on, in part at least, the probation

13  calculation and the government's concurrence in it that the

14  relevant guidelines range here was 27 to 33 months.  Today,

15  obviously we discussed, and I held, that the guidelines

16  range is 24 to 30 months.

17         And so the government argued here that I should

18  impose a top end of the guidelines -- of that guidelines

19  range sentence of incarceration of 30 months.  As to

20  Mr. Phipps, he argues for a probationary sentence which

21  would include a condition that he be subject to 11 months of

22  home confinement.  And probation recommends a total of 27

23  months of incarceration followed by 36 months of supervised

24  release, an unspecified amount of restitution as well as no

25  fine.

1              As everyone knows, in imposing a sentence here, I

2    must consider all of the factors under section 3553(a).

3    We've already discussed at length the guidelines, and I

4    won't go through those again.  The first factor I'll discuss

5    is the nature and the seriousness of the offense.  I've said

6    this now many, many, many times:  The events of January 6th

7    were unquestionably very serious.  Mr. Phipps and others

8    entered the U.S. Capitol and its grounds while a joint

9    session of Congress was meeting to certify the results of

10   the presidential election.

11             Many of the rioters planned to come to the Capitol

12   for the express purpose of interrupting those proceedings.

13   Many used violence against law enforcement officers or

14   engaged in vandalism.  Many engaged in planning efforts

15   before January 6th, suggesting that they intended to engage

16   in violence.  As I've said in every single sentencing I've

17   conducted in January 6th cases, every single participant in

18   the riots made an impact.  One of the primary strengths of

19   the rioters on January 6th was their number, which helped

20   overwhelm law enforcement on several occasions.

21             As for Mr. Phipps' personal conduct on January

22   6th, it was very serious as well.  Mr. Phipps made more than

23   one attempt to enter the building.  He ultimately spent over

24   30 minutes in the building, and over an hour on the grounds.

25   And he aggressively and physically and, in my view,

1    violently resisted law enforcement's attempts to get him and

2    others to leave the grounds.  In my view, the seriousness

3    and intentional nature of his actions weigh in favor of a

4    significant sentence.

5         The next factor I have to consider is the history

6    and characteristics of the defendant.  Mr. Phipps is in his

7    50s.  He lives in Texas with his mother who he noted suffers

8    from lupus and other health problems.  I heard from his

9    mother today who explained the various complicated health

10   problems that she is facing, which I recognize and very much

11   empathize with.  Mr. Phipps and his mother have explained

12   that he and his brother both take care of their mother.  But

13   because Mr. Phipps' brother may return to prison because of

14   a potential revocation of probation, it's at least possible

15   that Mr. Phipps may be the only caregiver available to his

16   mother.  Mr. Phipps has also noted he has a service animal

17   he cares for.

18        At the time of his arrest, Mr. Phipps was

19   unemployed.  He has recently worked as a private security

20   guard.  As reflected in the PSR, Mr. Phipps has stated that

21   he is presently unemployable, and receives financial support

22   from his mother.  He was previously in the Navy, and

23   received a general discharge under honorable conditions in

24   1996.

25        Mr. Phipps has a long criminal history, including

1  arrests and convictions for driving without a license and

2  driving under the influence.  As a result, however -- and as

3  calculated earlier and as reflected in the PSR, none of

4  those offenses results in Mr. Phipps having a criminal

5  history category that is relevant to the guidelines

6  analysis.  In my view, Mr. Phipps' history and

7  characteristics -- and particularly his criminal history, do

8  not weigh in his favor.  But his personal circumstances

9  relating to his mother certainly do.

10        The next factor I have to consider is protecting

11  the public, respect for law and deterrence.  I have to

12  ensure the sentence I impose promotes respect for the law,

13  and that's particularly important here.  I conclude that

14  Mr. Phipps poses some risk of recidivism.  I believe it's

15  unlikely the precise circumstances that led to Mr. Phipps

16  protesting inside the Capitol will occur, but there are

17  reasons to think recidivism generally could be a problem.

18  As I mentioned previously, he has a long criminal history.

19  And on January 6th, he repeatedly ignored the instructions

20  of police officers, made more than one attempt to enter the

21  Capitol.  And as I said before, he engaged directly,

22  physically and violently with law enforcement.

23        So taking these factors -- or these facts

24  together, I think it's very unlikely Mr. Phipps will protest

25  inside the Capitol again or engage in a similar event.

1    There is and remains a risk that he will have future

2    incidents with police or commit other crimes.  His actions

3    on January 6th and his record reflect at least some lack of

4    respect for police and the rule of law.

5         But beyond Mr. Phipps, I have to consider

6    deterring others from engaging in similar actions.  I've

7    said this many times also, being around and within a violent

8    riot, even if you're not yourself violent, prevents police

9    from dealing with those who weren't.  January 6th wasn't an

10   ordinary violent riot, but one that interfered with the

11   counting of electoral votes and the peaceful transition of

12   power.  That's not to say that people are not allowed to

13   question election integrity or fairness, one certainly can.

14   But being part of a violent riot is always unacceptable, and

15   it was especially so on January 6th.  As a result, an

16   exceedingly light sentence might not sufficiently deter

17   other would-be rioters.  Overall, the need for deterrence

18   does weigh in favor of a longer custodial sentence.

19        I must also consider how to avoid unwarranted

20   sentence disparities.  I care about this a lot, as I have in

21   all my January 6th cases, and as I've discussed in prior

22   sentencings.  As relevant comparators, the government's

23   pointed to two other January 6th cases involving felony

24   charges under 18 U.S. Code section 111(a)(1) and 231(a)(3)

25   where the defendants received sentences of 30 months and 36

1    months incarceration.  Phipps' sentencing memorandum did not

2    really provide an analysis of other January 6th cases,

3    although of course we discussed one today on the record.

4        Based on my review of the evidence in this case as

5    well as the reasons others judges on this Court have given

6    for the sentences imposed in their cases, as well as the

7    reasons I have given in the many sentencings that I have

8    conducted already, it appears that Phipps' actions were

9    about average in severity and culpability with respect to

10   his conduct that day when compared to others who have been

11   sentenced to the similar charges that we are here sentencing

12   Mr. Phipps on.

13       As described above, again, his conduct was serious

14   and intentional.  Unlike many offenders that day, he acted

15   violently toward police.  But he did not directly use a

16   weapon against a police officer, that's for sure.  And

17   unlike other defendants who I've sentenced, he did not make

18   threats against government officials in the days following

19   the riot, and appears not to have engaged in the same level

20   of planning as others did by bringing, for example, riot

21   gear, ropes, grappling hooks and the like.  So again, in my

22   view, Mr. Phipps' culpability for his actions at the Capitol

23   is about average in terms of people who have been sentenced

24   for the charges to which Mr. Phipps' pleaded guilty here.

25       Finally, I have to consider the need to provide

1   restitution to any victims of the offense.  Restitution may

2   be imposed in criminal proceedings only when authorized by

3   statute.  As I've mentioned in other Capitol riot cases, the

4   statutory basis here for a restitution order is not obvious.

5   Here, unlike in many cases where we have a plea agreement,

6   the restitution has not been agreed to.  And because I am

7   not yet convinced that I have a legal basis to order

8   restitution, I will not do so.

9        So having considered all of the facts in the

10  record of this matter, including all of the findings that I

11  have just gone through and my consideration of the relevant

12  factors under section 3553(a), I sentence you, Daniel

13  Phipps, to the custody of the Bureau of Prisons for a term

14  of imprisonment for concurrent terms of 27 months on each of

15  counts one and two, 12 months on counts three and four, and

16  six months on counts five and six.  You're further sentenced

17  to serve concurrent terms of 36 months of supervised release

18  on counts one and three, and 12 months on counts three and

19  four.  You're also ordered to pay a special assessment of

20  $270.

21       I will not impose a fine.  I've determined you

22  would not have the ability to pay interest while

23  incarcerated, and therefore waive any interest or penalties

24  that may accrue on the balance of the special assessment,

25  but only until two months after your term of incarceration

1      ends.

2            While on supervision, following your term of

3      incarceration, you're required to abide by several mandatory

4      conditions which are imposed to establish the basic

5      expectations for your conduct.  My apologies that I have to

6      go through these on the record.  I'm required to do this,

7      even though this will sound very rote.  You must not commit

8      another federal, state or local crime.  You must not

9      unlawfully possess a controlled substance.  You must refrain

10     from any unlawful use of a controlled substance.  You must

11     submit to one drug test within 15 days of placement on

12     supervision, and at least two periodic drug tests thereafter

13     as determined by the Court.  You must cooperate in the

14     collection of DNA as directed by the probation officer.

15           You shall comply with the discretionary conditions

16     outlined in pages 33 to 34 of the final PSR, including you

17     must report to the probation office in the federal judicial

18     district where you're authorized to reside within 72 hours

19     of the time you are sentenced.  You must not knowingly leave

20     the federal judicial district where you're authorized to

21     reside without first getting permission from the Court or

22     the probation officer.  You must allow the probation officer

23     to visit you at any time at your home or elsewhere.  And you

24     must permit the probation officer to take any items

25     prohibited by the conditions of your supervision that he or

1    she observes in plain view.  You must not communicate or

2    interact with someone you know is engaged in criminal

3    activity.  If you know someone has been convicted of a

4    felony, you must not knowingly communicate or interact with

5    that person without that -- without that person -- excuse

6    me, you must not knowingly communicate or interact with that

7    person without first getting the permission of the probation

8    officer.  If you're arrested or questioned by a law

9    enforcement officer, you must notify your probation officer

10   within 72 hours.

11          I find that all of these conditions are reasonably

12   related to the relevant sentencing factors set forth in 18

13   U.S. Code section 3553(a), and involve no greater

14   deprivation of liberty than reasonably necessary to achieve

15   the purposes of sentencing.  Under 18 U.S. Code section

16   3742, you have a right to appeal the sentence I've imposed

17   for various potential reasons.  If you were to choose to

18   appeal, as Mr. Shipley knows, you must file any appeal

19   within 14 days after the entry of judgment.  If, Mr. Phipps,

20   you're unable to afford the cost of an appeal, you may

21   request permission from the Court to file an appeal without

22   cost to you.

23          Also, under 28 U.S. Code section 2255, you have a

24   right to challenge the conviction or sentence if new and

25   currently unavailable information becomes available to you

1   or on a claim that you've received ineffective assistance of

2   counsel.  Again, if you're unable to afford the cost of

3   those proceedings, you might request permission from the

4   Court to file an appeal without cost to you.

5           So with that, let me turn to probation first and

6   ask, sir, if there are any topics you believe I failed to

7   cover that I should?

8           **MR. WILSON:**  Andre Wilson from probation.  Did the

9   Court address mandatory drug testing?

10          **THE COURT:**  I said that he must submit to one drug

11  test within 15 days of placement on supervision, and at

12  least two periodic drug tests thereafter as determined by

13  the Court.  Is that sufficient from your perspective?

14          **MR. WILSON:**  Yes, thank you.

15          **THE COURT:**  Mr. Liebman, anything from the

16  government?

17          **MR. LIEBMAN:**  No, Your Honor.  Thank you.

18          **THE COURT:**  Mr. Shipley, anything from the

19  defendant?

20          **MR. SHIPLEY:**  Your Honor, two requests.

21          **THE COURT:**  Yes.

22          **MR. SHIPLEY:**  I'd ask the Court to recommend the

23  RDAP program.  The PSR doesn't reflect the history of drug

24  and alcohol abuse.  Secondly, we would ask the Court to make

25  a recommendation to FCI Seagoville in Texas, not too far

1   where he lives.

2            **THE COURT:**  Yes, very well, I will make both of

3   those recommendations.

4            Does the government have any objection to

5   permitting the defendant to surrender voluntarily?

6            **MR. LIEBMAN:**  No, Your Honor, we don't.

7            **THE COURT:**  Mr. Shipley, I assume you have no

8   problem with that?

9            **MR. SHIPLEY:**  I appreciate that.

10           **THE COURT:**  So I'll make those recommendations,

11   and we'll require the defendant to surrender voluntarily.

12   And then let me just make sure of something.

13       (Brief interruption)

14           **THE COURT:**  Okay.  Thank you, all.

15       (Proceedings adjourned at 1:43 p.m.)

1                     **C E R T I F I C A T E**

2

3              I, **Jeff M. Hook, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8

9        **January 18, 2024**          _____

10            **DATE**                      **Jeff M. Hook**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COURT REPORTER: [2]
54/3 54/7
DEFENDANT'S
MOTHER: [4]
66/13 68/16
69/8 69/18
DEPUTY CLERK:
[3]   2/1 37/11
72/5
MR. LIEBMAN:
[64]   2/6 3/6
4/11 5/9 5/11
5/24 6/9 6/13
6/19 6/23 7/3
7/18 7/23 8/17
9/24 11/8
11/12 11/14
11/17 11/20
12/4 12/21
13/11 13/13
13/20 14/10
14/20 15/6
15/13 16/20
17/3 17/10
17/19 18/20
22/13 32/8
33/12 33/19
33/23 35/23
36/9 45/12
45/22 47/6
47/13 47/21
51/2 53/14
54/6 54/8
54/18 55/20
56/8 56/16
56/22 57/10
57/14 57/17
57/22 65/13
65/16 71/6
81/16 82/5
MR. SHIPLEY:
[49]   2/9 3/8
12/2 13/23
18/13 18/19
19/5 19/15
20/8 21/19
22/4 22/18
23/6 23/9
23/13 24/3
25/7 25/18
26/4 27/16
27/20 28/1
28/9 28/12
29/2 29/5 30/1
30/13 30/16
30/25 31/21

31/23 32/6
46/11 59/23
60/23 61/1
61/3 61/7 61/9
61/12 62/2
62/19 66/7
69/21 71/3
81/19 81/21
82/8
MR. WILSON:
[2]   81/7
81/13
THE COURT:
[100]
THE DEFENDANT:
[5]   37/25
38/4 38/7 70/2
70/22

$

$10,000 [1]
45/1
$2,000 [2]
59/7 72/11
$270 [2]   45/7
78/20
$95,000 [1]
45/1

'

'21 [1]   58/10
's [6]   40/13
40/25 41/18
42/2 42/6
42/23

0

0044 [1]   1/4
044 [1]   2/3
06 [1]   58/10

1

10 [9]   1/5
23/8 29/6
36/25 42/1
42/11 44/6
55/6 56/3
11 [2]   63/16
72/21
111 [27]   2/17
4/19 5/2 5/4
5/17 5/22 12/9
12/16 12/20
13/2 13/4
14/22 16/12
16/15 20/1
27/15 30/22
32/14 32/19
32/25 33/9

33/14 38/23
60/3 60/18
61/15 76/24
11:11 [1]   1/6
12 [3]   45/3
78/15 78/18
12:07 [1]
37/10
12:17 [1]
37/11
13 [1]   29/6
14 [7]   16/23
29/2 39/23
40/19 41/3
43/1 80/19
15 [5]   55/6
56/3 67/1
79/11 81/11
1512 [1]   63/25
15th [1]   46/7
16 [2]   18/15
18/17
16:35 [1]   8/15
16:35:23 [1]
10/23
16:38 [2]   11/8
11/10
16:38 and [1]
39/11
16:38:09 [1]
11/16
16:38:33 [1]
23/6
16:38:44 when
[1]   11/3
17 [3]   44/20
63/1 63/16
1752 [2]   2/21
2/23
18 [12]   2/17
2/18 2/20 2/22
5/17 38/22
41/17 59/5
63/1 76/24
80/12 80/15
18th [1]   58/11
19 [1]   8/19
194 [1]   66/18
195 [2]   12/2
66/17
1996 [2]   32/15
74/24
1997 [1]   15/11
1:16 [1]   72/4
1:21-cr-0044
[1]   1/4
1:28 [1]   72/5
1:43 p.m [1]

82/15

2

20 [10]   17/2
17/3 17/3 29/4
39/25 40/22
43/4 44/4
44/11 52/11
20001 [1]   1/25
2020 [4]   49/4
49/16 49/25
50/6
2021 [3]   8/14
50/17 71/21
2021-044 [1]
2/3
2023 [3]   1/5
45/25 46/2
20530 [1]   1/15
21-cr-195 [1]
12/2
2255 [1]   80/23
22nd [1]   49/25
231 [3]   2/19
41/17 76/24
24 [6]   8/23
44/25 47/18
61/20 63/3
72/16
26th [1]   45/25
27 [3]   72/14
72/22 78/14
27th [1]   50/6
28 [1]   80/23
28th [1]   46/2
2:07 [1]   9/23
2:59 p.m [1]
51/13
2A2.2 [27]   4/4
4/13 4/23 5/9
5/19 13/10
13/20 14/19
14/20 15/12
15/21 16/19
16/19 17/5
20/23 27/20
28/9 28/11
29/2 32/21
38/21 38/24
40/15 40/18
41/3 42/23
42/25
2A2.4 [14]
5/13 14/15
38/21 40/12
40/13 42/1
42/2 42/6
42/10 42/13
42/13 42/17

42/22 42/23
2B2.3 [5]
40/24 40/25
41/18 42/14
42/15
2X1.1 [2]
41/19 42/7
2X5.1 [1]   40/8

3

30 [14]   23/14
44/25 47/12
47/18 52/11
54/23 58/20
59/12 61/20
63/3 72/16
72/19 73/24
76/25
30-month [1]
48/13
33 [4]   47/12
72/10 72/14
79/16
33-month [1]
48/12
333 [1]   1/24
34 [1]   79/16
35 [1]   25/16
3553 [5]   48/11
65/7 73/2
78/12 80/13
36 [3]   72/23
76/25 78/17
3742 [1]   80/16
38 [1]   9/5
38:49 [1]
24/25
3:08 into [1]
11/16
3:26 into [1]
10/8
3:46 [1]   10/11
3A1.2 [3]   40/5
42/10 43/2
3A1.2's [1]
42/9
3D1.2 [3]   43/6
43/8 43/9
3D1.3 [1]   44/1
3D1.4 [1]   44/1
3E1.1 [1]
44/12
3rd [2]   12/2
12/6

4

4-second [1]
24/6
40 [3]   2/24

**4**

**40... [2]**   3/2
59/18
**42 [1]**   60/24
**4700-C [1]**
1/24
**48 [1]**   60/24
**4:35 and [2]**
34/6 34/17
**4:35 p.m [1]**
8/16
**4:38 and [1]**
34/6
**4:38 he [1]**
34/18
**4:38:05 [1]**
25/16

**5**

**50 [1]**   71/15
**50s [1]**   74/7
**5104 [2]**   2/25
3/2
**52 [1]**   54/24
**54 [1]**   61/16
**555 [1]**   1/14
**56 [1]**   24/22

**6**

**6-level [5]**
16/25 39/23
40/4 40/20
43/2
**635 [1]**   67/8
**6th [22]**   8/14
49/4 50/7 50/9
50/17 58/4
59/8 60/10
70/7 71/21
73/6 73/15
73/17 73/19
73/22 75/19
76/3 76/9
76/15 76/21
76/23 77/2

**7**

**72 [2]**   79/18
80/10
**745 [1]**   1/17
**79 [1]**   45/24
**7th [1]**   49/16

**8**

**88-month [1]**
21/15

**9**

**94 [1]**   66/18

**95 [1]**   66/18
**96734 [1]**   1/18

**A**

**A.C [2]**   8/6
24/10
**A.C.'s [1]**
25/20
**a.m [1]**   1/6
**abbreviated [1]**
8/6
**abbreviation
[2]**   6/6 7/6
**abide [1]**   79/3
**abilities [1]**
67/19
**ability [3]**
66/20 67/6
78/22
**able [1]**   50/15
**above [2]**
77/13 83/5
**above-entitled
[1]**   83/5
**abuse [1]**
81/24
**abutment [1]**
57/8
**academic [1]**
6/16
**accept [1]**
38/12
**acceptance [5]**
17/22 18/6
31/5 44/12
44/14
**accepted [1]**
45/20
**access [1]**   4/7
**accompanying
[1]**   49/7
**accomplishes
[1]**   65/6
**according [1]**
67/25
**account [4]**
49/4 49/16
50/14 58/4
**accrue [1]**
78/24
**accurately [1]**
70/6
**achieve [1]**
80/14
**acknowledged
[3]**   4/18 5/23
11/22
**across [1]**
27/11

**act [10]**   5/2
5/3 5/5 26/21
43/12 43/17
43/22 43/23
52/13 53/10
**acted [3]**
12/25 39/20
77/14
**action [2]**   1/3
49/20
**actions [6]**
70/20 74/3
76/2 76/6 77/8
77/22
**active [1]**
68/6
**activity [5]**
63/24 64/1
64/6 64/7 80/3
**acts [1]**   43/20
**actual [2]**   7/6
61/19
**actually [23]**
4/14 8/2 8/4
8/18 8/24
17/11 20/20
21/21 22/15
24/25 35/22
46/2 50/19
50/21 51/15
51/25 53/7
54/19 56/18
56/23 57/3
57/18 61/16
**add [2]**   69/21
71/3
**added [2]**
17/15 62/25
**addition [1]**
42/2
**additional [1]**
18/6
**address [7]**
16/9 46/8
65/20 65/21
70/4 71/10
81/9
**addressed [2]**
14/13 14/24
**addressing [2]**
14/14 46/6
**adjectives [1]**
27/7
**adjourned [1]**
82/15
**adjusted [3]**
17/22 18/15
18/16

**adjustment [1]**
42/9
**adjustments [1]**
41/22
**admit [1]**
66/20
**admits [1]**
39/6
**adopt [1]**
38/14
**adopted [1]**
45/16
**advanced [1]**
47/3
**advised [1]**
45/14
**advisory [1]**
38/17
**affidavit [1]**
65/23
**afford [2]**
80/20 81/2
**afraid [1]**
67/1
**again [30]**   7/6
9/20 11/21
15/16 17/22
23/23 24/1
24/21 24/23
25/20 33/7
36/13 39/10
40/6 43/12
44/2 45/17
48/17 48/19
51/22 56/20
56/24 57/15
59/12 63/4
73/4 75/25
77/13 77/21
81/2
**against [7]**
14/16 22/1
34/25 36/20
73/13 77/16
77/18
**age [1]**   66/20
**aggravated [24]**
4/3 4/9 5/8
5/15 5/19 5/19
5/23 6/8 14/20
15/3 15/20
16/18 27/3
27/5 31/12
31/15 39/1
39/2 40/15
40/17 41/7
41/11 41/12
42/25

**aggravating [1]**
63/21
**aggressive [2]**
36/19 55/14
**aggressively
[1]**   73/25
**ago [5]**   12/1
12/4 67/1 68/8
69/13
**agree [15]**
12/22 13/14
13/20 13/21
13/25 17/24
18/9 27/13
30/16 31/19
40/11 40/16
40/23 42/16
42/22
**agreed [4]**
12/25 20/6
41/23 78/6
**agreement [5]**
4/16 28/15
28/16 28/17
78/5
**agrees [2]**
29/10 44/16
**ahold [2]**
24/17 26/19
**alarming [4]**
48/5 48/18
54/1 54/13
**alcohol [1]**
81/24
**alert [1]**   48/3
**all occurred
[1]**   45/15
**alleging [1]**
22/16
**allow [2]**
65/12 79/22
**allowed [2]**
59/4 76/12
**allows [1]**
63/18
**almost [2]**
25/9 34/12
**alone [1]**
71/19
**along [5]**
22/13 53/9
54/1 57/7
67/14
**although [2]**
15/20 77/3
**always [1]**
76/14
**Amendment [5]**

**A**

Amendment...
**[5]**  58/15
63/24 64/1
64/6 64/7
amendments [1]
46/10
AMERICA [2]
1/3 2/3
among [1]   3/13
amount [2]
37/20 72/24
analogous [3]
40/10 40/12
41/23
analysis [21]
3/14 3/21 4/2
13/15 16/10
17/15 17/25
18/3 19/4
29/22 30/18
32/4 33/21
37/3 37/14
37/16 37/23
62/16 62/22
75/6 77/2
analytically
**[1]**  16/16
Andre [2]   2/4
81/8
angle [2]
23/23 23/24
angles [1]
19/10
angry [2]   35/9
50/11
animal [1]
74/16
announce [1]
3/21
announced [1]
19/24
Anthony [1]
8/5
Antifa [3]
58/7 58/14
58/17
anymore [2]
67/7 68/7
apart [1]
62/25
apologies [2]
44/23 79/5
apologize [4]
19/7 47/10
47/13 70/19
apparent [2]
26/9 35/10

apparently [2]
56/5 56/6
appeal [6]
80/16 80/18
80/18 80/20
80/21 81/4
appear [1]
46/7
APPEARANCES [1]
1/12
appeared [1]
26/7
appears [5]
5/14 23/6
33/25 77/8
77/19
applicability
**[2]**   29/22
30/8
applicable [4]
44/25 45/6
48/7 59/3
application [6]
5/13 14/15
15/4 41/3
42/10 42/10
applied [3]
33/8 40/20
44/13
applies [17]
4/13 6/9 14/20
18/8 28/9
33/11 38/24
39/24 40/5
40/15 40/21
40/24 41/2
41/18 42/15
42/22 42/23
apply [17]
14/18 15/10
15/11 28/12
32/17 33/9
40/10 41/8
41/19 41/20
42/4 42/7 42/8
42/9 43/5 43/6
44/19
applying [2]
27/20 27/25
appreciate [1]
82/9
approach [1]
16/16
appropriate
**[18]**   3/14
3/16 3/22 7/14
15/11 17/9
17/21 18/11

29/16 32/5
44/17 45/9
47/1 48/12
48/14 58/19
59/4 66/4
apt [1]   42/18
Architect [1]
59/8
area [13]   41/5
41/11 41/14
41/16 42/5
51/9 52/1
52/25 53/7
53/21 54/2
54/14 57/4
argue [4]   13/5
14/2 40/24
47/16
argued [3]
48/11 72/10
72/17
argues [1]
72/20
arguing [1]
63/25
argument [16]
12/17 15/1
20/5 20/21
26/12 26/25
27/9 27/14
28/18 28/20
31/10 36/2
46/14 47/19
71/14 71/18
arguments [3]
12/16 38/3
72/1
arms [2]   8/21
8/25
around [13]
24/10 24/19
30/7 30/7 37/1
51/19 53/9
54/24 56/24
62/18 64/23
69/11 76/7
arrest [3]
45/25 58/12
74/18
arrested [1]
80/8
arrests [1]
75/1
aspect [1]
16/12
aspects [1]
8/13
assault [125]

assaulting [2]
2/16 20/7
assaultive [7]
4/19 7/7 11/19
14/3 22/15
45/15 60/8
assaults [9]
8/8 11/1 13/11
45/15 52/23
56/24 58/25
60/5 60/5
assessment [3]
45/6 78/19
78/24
assign [1]
17/18
assistance [1]
81/1
associated [1]
10/14
association [1]
57/21
assume [2]
27/24 82/7
assuming [1]
44/17
assure [1]
69/16
attach [1]
65/24
attempt [2]
73/23 75/20
attempted [1]
26/12
attempting [3]
34/6 36/6
39/11
attempts [2]
50/20 74/1
attention [2]
11/6 36/22
attorneys [1]
71/17
audio [5]   8/1
11/12 11/14
53/4 54/12
August [4]   1/5
12/2 12/6 46/7
August 15th [1]
46/7
August 3rd [2]
12/2 12/6
authorized [1]
65/5 78/2
79/18 79/20
available [4]
18/16 59/14
74/15 80/25

Avenue [1]
1/24
average [2]
77/9 77/23
avoid [3]
48/10 48/14
76/19
awake [1]
66/17
aware [5]   48/3
50/13 52/10
52/15 68/4
away [13]   9/10
10/19 21/11
26/19 26/20
51/23 53/23
55/17 56/4
56/12 56/20
64/10 64/16

**B**

back [32]   3/21
9/11 9/16 11/9
19/4 19/22
23/16 23/17
23/22 25/2
25/12 25/15
25/21 25/22
25/22 32/3
36/15 37/2
37/12 39/12
50/25 51/14
53/19 53/23
54/24 57/20
66/25 67/21
70/20 72/2
72/5 72/6
background [3]
8/21 53/6
55/23
backing [4]
22/6 22/7 22/8
25/22
backwards [1]
25/23
balance [2]
67/15 78/24
ball [1]   32/14
ballot [1]
49/6
Bankruptcy [1]
1/23
barely [1]
50/22
base [10]
16/22 17/2
39/22 40/19
41/3 41/8
41/20 42/1

**B**

**base... [2]**
43/1 43/24
**based [7]**
20/23 60/1
61/19 63/20
71/15 72/12
77/4
**basic [1]**   79/4
**basically [3]**
37/4 49/14
62/18
**basis [3]**   4/17
78/4 78/7
**baton [9]**   9/11
9/15 10/17
24/7 24/8
26/10 26/11
34/23 36/14
**bear [1]**   48/25
**became [2]**
52/2 67/4
**become [1]**
68/6
**becomes [3]**
6/1 33/3 80/25
**beforehand [1]**
46/23
**began [1]**   31/6
**begin [4]**
47/23 55/15
59/25 60/19
**beginning [13]**
2/6 11/10
22/20 22/24
23/6 23/22
24/24 25/13
25/16 34/19
39/10 58/2
58/3
**begins [1]**
25/5
**behalf [2]**   2/8
2/11
**behind [5]**
23/21 25/11
49/20 53/19
60/15
**believes [3]**
6/23 15/11
32/1
**bench [1]**
19/24
**bending [1]**
20/15
**benefit [3]**
21/8 55/24
62/12

**benefits [1]**
62/17
**better [4]**
17/2 24/6
42/16 57/8
**beyond [3]**
31/6 64/5 76/5
**bifurcate [1]**
3/18
**big [2]**   64/24
64/24
**bit [3]**   11/1
16/5 55/21
**blame [1]**   22/9
**blood [3]**
66/16 66/25
69/9
**blow [1]**   60/12
**blown [1]**
60/15
**blunt [1]**
67/15
**bodily [8]**
26/16 26/17
34/6 34/11
35/13 40/3
48/21 48/22
**body [8]**   8/2
8/11 9/9 10/16
19/10 23/2
55/3 55/12
**body-worn [8]**
8/2 8/11 9/9
10/16 19/10
23/2 55/3
55/12
**Booker [1]**
38/16
**both [19]**   3/5
4/6 7/16 8/25
18/10 33/6
35/23 38/18
38/21 39/4
39/18 42/13
46/19 46/22
68/15 68/23
69/16 74/12
82/2
**bother [2]**
51/11 52/6
**bottom [1]**
58/9
**bound [4]**
15/10 15/15
32/17 33/10
**box [2]**   1/17
29/18
**boxer [1]**

60/16
**brief [6]**   32/3
36/24 62/4
71/25 72/10
82/13
**briefly [6]**
23/18 32/1
37/9 65/12
65/14 71/13
**bringing [2]**
51/11 77/20
**broad [2]**   20/6
60/7
**brother [2]**
74/12 74/13
**building [9]**
2/20 2/22 2/24
3/1 42/21
50/21 52/12
73/23 73/24
**bullet [1]**
49/6
**Bureau [1]**
78/13
**bureaucratic
[1]**   49/10
**business [1]**
42/20

**C**

**calculate [2]**
38/18 44/2
**calculated [5]**
18/14 47/6
47/20 58/20
75/3
**calculation
[18]**   3/21
19/2 19/5 29/2
38/15 44/9
44/18 45/10
46/14 46/21
47/2 47/12
47/15 47/24
59/13 62/7
63/20 72/13
**calculations
[3]**   31/1 31/2
31/3
**call [3]**   9/17
12/10 48/8
**called [1]**
51/3
**calming [1]**
64/14
**came [5]**   18/15
24/15 62/21
65/2 65/2
**camera [14]**

8/2 8/11 9/9
10/16 21/21
23/2 23/4
25/21 51/1
51/7 52/11
55/3 55/12
56/11
**cameras [1]**
19/10
**Campanelli [4]**
8/6 8/10 11/4
36/21
**can [33]**   4/24
5/1 8/20 11/7
12/9 12/19
16/3 19/1
19/12 21/9
21/23 21/25
23/3 23/10
23/23 24/5
24/6 24/11
25/21 26/16
26/21 29/14
31/17 32/4
33/14 49/5
56/4 56/18
61/19 64/10
67/12 69/15
76/13
**Capitol [18]**
2/24 2/24 3/1
49/24 51/10
52/5 58/6 59/8
61/24 62/13
71/23 73/8
73/11 75/16
75/21 75/25
77/22 78/3
**captures [1]**
8/12
**care [7]**   63/19
66/16 66/21
70/24 71/1
74/12 76/20
**cared [1]**
34/15
**carefully [1]**
7/10
**caregiver [1]**
74/15
**cares [1]**
74/17
**CARL [1]**   1/10
**carrying [3]**
10/13 21/23
21/24
**case [20]**   2/3
6/15 6/23 12/2

16/7 16/8
19/21 33/6
33/7 38/7
40/11 45/6
51/15 52/4
52/16 61/23
63/23 64/25
65/6 77/4
**cases [16]**
3/25 5/1 12/8
48/9 58/22
59/7 60/10
61/13 65/18
73/17 76/21
76/23 77/2
77/6 78/3 78/5
**categories [1]**
12/8
**category [2]**
44/22 75/5
**cause [6]**   34/6
35/13 35/24
36/7 39/21
54/17
**certain [3]**
2/16 67/18
67/18
**certainly [8]**
21/6 34/10
34/24 36/1
60/2 68/23
75/9 76/13
**certify [2]**
73/9 83/4
**cetera [1]**
14/5
**challenge [1]**
80/24
**change [2]**
34/6 59/10
**changed [2]**
50/14 56/12
**changes [1]**
31/2
**chant [1]**   52/9
**chanting [1]**
52/8
**chaotic [2]**
26/6 67/12
**character [1]**
50/11
**characteristic
[1]**   42/3
**characteristics
[2]**   74/6 75/7
**characterized
[1]**   15/25
**charge [7]**

**C**

**charge... [7]**
2/15 2/17 2/19
2/21 2/23 2/25
71/20

**charged [4]**
58/25 61/24
62/1 63/9

**charges [7]**
3/4 15/25 16/1
42/19 76/24
77/11 77/24

**chase [1]**
61/19

**check [3]**   19/3
25/25 29/18

**checked [2]**
25/4 26/9

**choose [2]**
54/14 80/17

**circle [2]**
54/21 57/12

**circled [1]**
54/22

**circles [1]**
53/15

**Circuit [2]**
33/8 34/2

**Circuit's [2]**
15/10 32/15

**circumstances
[5]**   21/6
38/13 48/22
75/8 75/15

**city [1]**   63/8

**civil [6]**   2/18
13/24 16/4
41/17 42/6
62/11

**claim [1]**   81/1

**clear [9]**   10/2
28/5 30/5
31/19 33/11
45/12 50/4
53/18 55/8

**clearer [1]**
31/17

**clearest [1]**
24/23

**clearly [7]**
9/14 28/25
29/5 31/17
50/17 57/20
63/5

**client [12]**
19/19 23/8
23/11 23/18
23/20 24/2

25/3 25/6 26/2
26/7 26/9
61/14

**client's [2]**
26/17 27/19

**climbed [1]**
57/11

**climbs [1]**
57/7

**close [7]**   9/19
11/2 16/10
54/13 55/15
60/19 67/22

**closer [3]**
24/11 51/19
54/23

**closeup [1]**
56/2

**Code [27]**   2/17
2/18 2/20 2/23
2/25 3/2 6/13
6/21 7/18
32/10 32/17
32/23 33/9
33/11 34/2
35/15 35/23
38/22 39/5
39/19 41/17
76/24 80/13
80/15 80/23

**Cognitive [1]**
66/22

**cold [1]**   20/3

**collar [2]**
24/17 24/17

**colleague [1]**
61/7

**colleagues [2]**
61/1 61/3

**collection [1]**
79/14

**College [1]**
50/1

**colloquy [1]**
37/18

**colored [1]**
57/20

**COLUMBIA [1]**
1/1

**combined [2]**
44/2 49/11

**comfort [1]**
54/17

**coming [7]**
20/3 49/6 50/9
50/10 61/18
64/21 69/18

**commentary [5]**
5/12 14/19
15/3 15/21
56/11

**commentary's
[1]**   39/2

**commentator [1]**
56/21

**commission [2]**
31/16 32/20

**commit [27]**
4/20 5/5 5/7
5/22 6/3 11/23
12/13 12/14
12/21 13/1
13/22 14/6
15/24 16/3
27/22 28/11
39/7 40/2 41/1
41/7 41/11
41/12 41/15
41/16 41/25
76/2 79/7

**committed [9]**
4/18 16/12
28/6 28/8
28/20 39/4
41/1 58/24
71/19

**committing [4]**
5/2 12/20 13/3
42/6

**common [13]**
6/10 6/21 7/18
26/14 27/19
27/22 28/7
32/22 35/23
39/4 39/18
43/21 43/21

**communicate [3]**
80/1 80/4
80/6

**companion [1]**
34/25

**comparator [2]**
48/9 58/21

**comparators [1]**
76/22

**compared [1]**
77/10

**compelled [2]**
63/23 64/25

**competing [1]**
32/23

**complainant [1]**
11/5

**complete [1]**
71/5

**completely [1]**
68/2

**complicated [2]**
33/4 74/9

**comply [1]**
79/15

**component [2]**
7/13 13/4

**concede [2]**
16/5 34/24

**concern [2]**
69/10 69/13

**concession [2]**
14/5 40/2

**conclude [3]**
14/18 33/1
75/13

**concluded [2]**
12/9 32/14

**conclusion [2]**
12/15 46/16

**concurrence [1]**
72/13

**concurrent [4]**
59/17 59/17
78/14 78/17

**condensed [1]**
20/19

**condition [1]**
72/21

**conditions [5]**
74/23 79/4
79/15 79/25
80/11

**conduct [58]**
2/21 2/23 4/3
4/19 4/19 5/16
7/7 7/14 11/19
12/11 13/5
13/6 14/2 14/3
14/8 15/13
15/23 16/11
20/5 20/7 22/1
22/16 26/17
27/1 27/19
30/20 32/25
33/1 33/5 34/4
34/5 35/18
36/5 36/11
38/25 39/1
39/6 39/17
40/14 40/17
42/24 45/15
49/2 55/14
60/3 60/4 60/8
60/8 61/20
61/23 62/10
71/10 71/14

71/18 73/21
77/10 77/13
79/5

**conducted [3]**
44/18 73/17
77/8

**confident [1]**
28/13

**confinement [1]**
72/22

**confirmed [1]**
46/3

**confront [1]**
57/9

**confronted [1]**
39/12

**confronts [1]**
57/5

**Congress [3]**
43/20 64/3
73/9

**connection [5]**
12/16 29/15
32/14 33/12
41/25

**consciously [1]**
9/15

**consecutive [1]**
47/8

**consider [9]**
3/18 7/11
38/18 73/2
74/5 75/10
76/5 76/19
77/25

**consideration
[2]**   65/8
78/11

**considered [1]**
78/9

**considering [1]**
15/12

**consistent [5]**
5/18 36/5
36/11 36/12
59/15

**constitute [6]**
4/9 5/8 10/7
12/12 33/15
40/17

**constituted [5]**
4/3 14/9
27/19 38/25
40/14

**constitutes [6]**
9/22 10/25
11/22 13/9
29/9 38/25

**C**

**Constitution
[1]**  1/24
**constitutional
[1]**  49/8
**contact [22]**
6/3 6/5 6/17
9/6 9/7 9/19
9/22 12/11
14/2 34/11
35/5 36/16
36/18 36/19
36/20 42/3
42/5 51/16
52/9 52/13
53/11 54/10
**contained [2]**
37/16 38/12
**context [7]**
9/4 11/15
32/25 33/10
36/3 55/8
66/11
**continues [1]**
49/20
**continuing [1]**
45/11
**control [1]**
64/15
**controlled [2]**
79/9 79/10
**converted [1]**
8/15
**convicted [1]**
80/3
**conviction [2]**
4/20 80/24
**convictions [3]**
59/5 59/11
75/1
**convinced [1]**
78/7
**cooperate [1]**
79/13
**cooperating [1]**
58/14
**cord [1]**  35/6
**core [2]**  37/2
37/6
**correctly [2]**
33/14 38/18
**corrupted [1]**
49/10
**corruptly [1]**
64/2
**cost [4]**  80/20
80/22 81/2
81/4

**counsel [3]**
2/5 29/14 81/2
**count [29]**  3/3
16/15 16/20
17/18 17/23
17/25 38/20
38/22 39/22
40/7 40/16
40/18 40/21
40/22 40/23
41/6 41/23
41/25 42/11
42/12 42/14
42/19 42/24
43/3 43/4
43/19 43/23
43/24 44/5
**countervailing
[1]**  65/20
**counting [1]**
76/11
**counts [22]**
2/15 12/15
17/9 18/4 43/5
43/8 43/10
43/14 43/15
43/18 43/21
44/3 45/1 45/3
45/4 45/5 47/8
78/15 78/15
78/16 78/18
78/18
**coup [1]**  49/8
**couple [4]**
12/1 19/21
51/12 71/7
**course [13]**
3/15 6/1 7/12
8/14 29/20
29/22 30/11
43/5 48/13
49/22 50/10
53/16 77/3
**court [58]**  1/1
1/22 1/23 2/12
2/12 4/15 6/25
8/24 10/11
14/21 14/21
15/17 17/17
18/1 19/18
19/21 21/2
21/8 23/12
23/15 23/23
26/15 28/3
28/14 30/22
31/10 32/11
33/13 44/19
45/14 45/16

46/6 47/17
55/2 55/24
58/1 59/11
59/20 60/18
63/16 65/11
65/7 65/12
65/20 65/22
65/25 71/5
71/11 77/5
79/13 79/21
80/21 81/4
81/9 81/13
81/22 81/24
83/3
**Court used [1]**
28/3
**court's [13]**
8/4 13/14
15/22 38/16
46/15 46/16
47/15 48/19
50/12 59/12
60/1 60/2 65/9
**Courts [1]**
1/23
**cover [2]**  5/16
81/7
**covers [2]**
20/6 42/17
**cr [2]**  1/4
12/2
**create [2]**
26/12 26/18
**created [1]**
50/14
**crime [4]**
27/22 28/21
60/1 79/8
**crimes [3]**
64/4 65/19
76/2
**criminal [10]**
1/3 2/3 44/21
44/21 74/25
75/4 75/7
75/18 78/2
80/2
**criminalizes
[1]**  60/3
**crook [1]**  8/21
**cross [14]**
5/13 11/24
14/15 14/23
25/4 25/25
26/9 40/14
40/25 41/8
41/18 42/7
42/8 42/23

**cross-check [1]**
25/25
**cross-checked
[2]**  25/4 26/9
**cross-reference
[11]**  5/13
11/24 14/15
14/23 40/14
40/25 41/8
41/18 42/7
42/8 42/23
**crossed [2]**
14/3 50/22
**crowd [10]**
10/1 20/13
20/19 21/11
21/12 23/15
23/17 60/12
63/10 70/11
**Crypt [3]**
50/17 52/1
52/7
**Cua [1]**  5/1
**culpability [2]**
77/9 77/22
**currently [1]**
80/25
**custodial [2]**
66/3 76/18
**custody [1]**
78/13
**cut [1]**  61/19

**D**

**D.C [9]**  15/10
32/15 33/8
34/2 49/17
49/19 49/21
67/11 71/16
**Dallas [1]**
67/9
**damaging [1]**
58/7
**danger [2]**
39/15 39/15
**DANIEL [4]**  1/6
2/3 2/11 78/12
**DATE [1]**  83/10
**day [7]**  31/6
48/22 49/13
58/12 71/18
77/10 77/14
**days [10]**  12/4
46/2 49/4
50/14 50/18
58/4 77/18
79/11 80/19
81/11
**DC [4]**  1/5

1/14 1/15 1/25
**de [1]**  70/9
**de-escalation
[1]**  70/9
**dealing [2]**
68/21 76/9
**dealt [1]**  21/1
**deaths [1]**
48/23
**decades [1]**
63/8
**December [3]**
19/22 49/25
50/6
**December 22nd
[1]**  49/25
**December 27th
[1]**  50/6
**decide [1]**
3/23
**decided [2]**
12/7 32/11
**deciding [4]**
14/20 29/16
32/18 32/19
**decision [3]**
5/1 38/16
66/15
**declined [1]**
71/11
**decrease [3]**
44/13 44/17
44/19
**deep [2]**  49/8
49/10
**defendant [62]**
1/7 1/16 2/11
2/15 4/18 6/5
8/18 8/19 9/4
9/10 9/11 9/16
9/21 9/25 10/9
10/14 10/17
10/18 11/3
11/5 11/23
12/25 13/4
13/17 14/1
15/2 15/19
15/21 16/11
19/25 19/25
30/24 34/4
34/15 34/23
35/2 35/8
35/18 36/17
36/22 46/1
46/7 48/6
48/20 49/3
50/2 50/19
50/23 51/6

**D**

**defendant...**
**[13]**   51/11
51/16 52/5
53/5 55/6 56/5
56/12 57/3
58/23 74/6
81/19 82/5
82/11

**defendant's**
**[14]**   7/13
15/13 34/22
36/14 46/19
50/13 60/11
65/21 65/23
65/25 66/2
66/6 71/9
71/14

**defendants [2]**
76/25 77/17

**defense [5]**
4/16 14/14
14/16 29/14
71/17

**deferred [1]**
15/5

**defined [3]**
15/21 33/25
40/18

**definition [23]**
5/19 14/19
15/3 15/4 15/4
15/12 15/20
26/14 27/25
28/3 28/8
30/20 32/10
32/10 32/17
33/2 33/3 33/9
33/16 33/22
34/3 39/2
39/18

**definitions [3]**
32/23 33/6
39/5

**delivered [1]**
60/12

**democratic [1]**
49/9

**demonstrating**
**[1]**   3/1

**depending [1]**
37/6

**deplorables [1]**
50/10

**deployed [1]**
56/6

**deprivation [1]**
80/14

**describe [2]**
7/14 10/24

**described [4]**
10/3 10/6 11/2
77/13

**designation [1]**
44/7

**destructive [1]**
64/15

**detail [1]**
68/22

**details [1]**
19/21

**detention [2]**
63/18 65/4

**deter [1]**
76/16

**determination**
**[1]**   62/17

**determined [3]**
78/21 79/13
81/12

**deterrence [2]**
75/11 76/17

**deterring [1]**
76/6

**device [1]**
35/6

**diapers [1]**
68/1

**difference [1]**
29/1

**different [15]**
19/10 19/11
20/11 21/7
21/8 21/20
23/24 23/25
27/10 30/8
31/17 47/2
62/15 64/12
71/24

**differently [2]**
47/20 70/21

**difficult [4]**
24/12 33/21
53/13 69/4

**difficulty [1]**
16/5

**Dink [1]**   2/4

**direct [4]**
34/11 42/8
43/24 50/6

**directed [1]**
79/14

**directing [1]**
41/18

**directions [1]**
25/21

**directly [2]**
75/21 77/15

**directs [1]**
41/20

**disagree [1]**
36/10

**disagreeing [1]**
43/13

**disagreement**
**[1]**   47/14

**disagreements**
**[2]**   3/13 3/15

**discharge [1]**
74/23

**discounted [1]**
64/6

**discretion [1]**
65/1

**discretionary**
**[1]**   79/15

**discuss [7]**
4/5 29/20 31/6
37/24 48/9
58/22 73/4

**discussed [8]**
38/20 43/2
66/24 67/17
72/15 73/3
76/21 77/3

**discussing [1]**
37/21

**discussion [6]**
8/1 16/2 16/7
27/15 37/17
44/24

**disorder [6]**
2/18 13/24
16/4 41/17
42/6 62/11

**disorderly [2]**
2/21 2/23

**disparities [2]**
48/10 76/20

**disparity [1]**
48/14

**dispatch [2]**
22/9 23/17

**dispositions**
**[1]**   31/7

**dispossessed**
**[1]**   20/12

**dispute [8]**
5/21 17/13
17/14 18/2
30/23 39/23
48/19 50/12

**disputed [1]**
4/21

**disputes [1]**
7/1

**disregarded [1]**
44/9

**disrupting [1]**
42/20

**disruptive [1]**
2/21

**distinguish [3]**
9/12 9/13
67/6

**district [6]**
1/1 1/1 1/10
1/23 79/18
79/20

**divine [1]**
26/16

**DNA [1]**   79/14

**doctor [3]**
66/24 67/16
67/25

**doctor's [2]**
66/15 69/10

**document [1]**
4/17

**Donald [1]**
50/2

**done [8]**   12/21
15/23 30/15
34/19 39/6
46/21 65/10
70/20

**door [5]**   51/4
51/4 51/8 51/8
51/23

**doorway [3]**
51/5 51/22
55/9

**down [11]**
26/13 34/9
34/12 35/16
36/15 51/25
57/3 60/17
67/22 70/11
70/12

**downward [2]**
63/16 65/3

**draped [3]**
50/25 51/6
56/20

**drive [1]**   68/7

**drives [2]**
28/25 48/6

**driving [3]**
67/2 75/1 75/2

**drug [6]**   79/11
79/12 81/9
81/10 81/12

**81/23**

**during [2]**
34/5 49/23

**E**

**earlier [10]**
21/14 22/21
22/23 43/25
45/14 45/21
55/13 57/2
57/24 75/3

**early [2]**   60/9
61/13

**Earp [1]**   50/8

**easier [2]**
22/13 33/1

**edge [1]**   34/14

**effect [1]**
3/17

**effort [1]**
55/16

**efforts [1]**
73/14

**egging [1]**
49/1

**either [8]**   4/8
9/15 15/10
19/2 29/24
31/5 33/1
48/24

**elbow [1]**   8/22

**elected [1]**
49/10

**election [3]**
49/5 73/10
76/13

**electoral [2]**
49/25 76/11

**element [1]**
63/24

**eligible [1]**
63/17

**else [8]**   21/13
36/6 36/7
36/12 36/15
52/14 68/9
70/13

**elsewhere [1]**
79/23

**empathetic [1]**
68/12

**empathize [2]**
69/4 74/11

**encounter [1]**
56/2

**encouraging [3]**
22/13 49/1
49/12

**end [10]**   21/12

**E**

**end... [9]**
24/22 47/12
48/1 48/7
49/22 58/19
59/3 63/25
72/18
**ended [2]** 67/8
67/8
**ends [5]** 11/18
11/19 17/23
62/12 79/1
**enforcement [5]**
58/15 73/13
73/20 75/22
80/9
**enforcement's**
**[1]** 74/1
**engage [6]** 5/2
10/20 30/18
42/5 73/15
75/25
**engaged [7]**
26/18 64/5
73/14 73/14
75/21 77/19
80/2
**engages [1]**
11/3
**engaging [4]**
4/8 4/25 14/1
76/6
**enhancement [5]**
16/25 39/24
40/4 40/20
43/2
**enough [4]**
18/22 31/22
37/24 38/2
**ensure [1]**
75/12
**enter [4]**
41/10 62/14
73/23 75/20
**entered [3]**
41/5 41/13
73/8
**entering [1]**
2/19
**entire [1]**
22/6
**entitled [1]**
83/5
**entrance [1]**
51/22
**entries [1]**
50/21
**entry [1]**

80/19
**episode [6]**
19/12 23/7
23/15 25/1
25/14 60/21
**episodes [1]**
20/10
**erected [1]**
49/23
**error [1]**
45/18
**escalation [1]**
70/9
**escaped [1]**
63/12
**especially [2]**
37/1 76/15
**essentially [1]**
23/24
**establish [1]**
79/4
**establishes [1]**
39/19
**estimated [1]**
44/20
**et [1]** 14/4
**evaluate [1]**
67/19
**evaluation [2]**
20/4 66/19
**even [18]** 3/19
6/2 6/9 6/10
6/12 10/4
10/24 13/21
16/9 34/21
36/17 58/25
60/19 60/20
71/14 71/20
76/8 79/7
**event [3]** 25/6
26/6 75/25
**events [4]**
21/18 23/19
24/5 73/6
**eventually [3]**
26/20 56/2
57/5
**everybody [2]**
29/10 64/12
**everyone [7]**
2/14 3/3 41/22
44/16 44/23
51/14 73/1
**evidence [11]**
21/7 21/9
26/22 39/3
39/14 39/17
39/20 40/6

58/8 58/24
77/4
**exactly [6]**
14/17 28/14
53/25 56/25
57/25 68/14
**examined [1]**
68/4
**example [5]**
5/6 14/18 17/9
43/19 77/20
**examples [1]**
60/9
**exceedingly [1]**
76/16
**except [1]**
68/10
**excuse [3]**
43/3 70/24
80/5
**execute [1]**
22/12
**exercise [1]**
65/1
**exercised [1]**
58/15
**Exhibit [1]**
7/25
**Exhibit 3 [1]**
7/25
**exits [1]**
52/23
**expectations**
**[1]** 79/5
**expected [1]**
30/19
**expecting [1]**
46/7
**experience [1]**
68/24
**explained [4]**
40/16 43/25
74/9 74/11
**explains [2]**
15/19 21/14
**express [1]**
73/12
**expressly [2]**
40/9 45/11
**extended [1]**
68/13
**extent [3]**
24/14 27/16
43/13
**extra [2]** 31/4
31/5

**F**

**face [3]** 8/19

60/13 66/22
**Facebook [13]**
48/5 48/17
49/3 49/15
49/17 50/14
50/18 52/2
53/18 58/3
64/1 70/16
70/16
**faced [1]** 21/7
**facing [3]**
28/16 51/7
74/10
**fact [12]** 4/1
6/16 13/15
16/7 22/21
27/8 28/13
29/24 64/17
66/18 66/24
67/25
**factor [4]**
38/19 73/4
74/5 75/10
**factors [6]**
5/21 63/21
73/2 75/23
78/12 80/12
**facts [5]**
38/14 60/2
65/5 75/23
78/9
**factual [7]**
7/1 28/16
29/25 30/13
38/12 45/16
46/16
**Factually [1]**
7/20
**failed [1]**
81/6
**fair [6]** 18/22
27/8 28/2
31/22 37/20
45/8
**fairly [2]** 4/1
51/9
**fairness [1]**
76/13
**fall [2]** 36/15
67/22
**falls [2]** 34/9
44/21
**familiar [1]**
11/25
**families [1]**
68/13
**family [2]**
68/13 69/3

**far [4]** 35/15
51/20 70/23
81/25
**fashion [1]**
47/8
**fast [2]** 10/12
22/7
**faster [1]**
22/12
**favor [4]** 27/9
74/3 75/8
76/18
**FBI [1]** 58/13
**FCI [1]** 81/25
**fear [1]** 67/10
**federal [5]**
63/5 63/7 79/8
79/17 79/20
**feel [3]** 35/17
63/23 64/25
**feet [3]** 20/17
51/12 51/23
**fell [1]** 34/12
**felonies [1]**
16/1
**felonious [6]**
5/20 5/24 5/25
31/12 31/13
31/14
**felony [31]**
4/20 5/2 5/5
5/8 5/22 6/1
6/1 6/3 11/23
12/14 12/15
12/19 12/21
13/1 13/4
13/22 14/6
14/22 15/24
16/3 16/8 27/6
33/14 39/7
40/9 41/1
41/19 59/7
59/11 76/23
80/4
**felt [1]** 15/14
**female [1]**
21/10
**few [3]** 54/20
56/2 69/23
**Field [1]** 67/9
**fighter [1]**
60/17
**fighting [2]**
58/14 58/16
**file [6]** 11/16
11/18 19/13
80/18 80/21
81/4

**F**

**filed [2]**   4/18
19/8
**final [2]**
45/24 79/16
**Finally [2]**
50/6 77/25
**financial [1]**
74/21
**find [10]**   8/12
24/23 36/8
39/3 41/15
42/4 52/10
53/22 58/8
80/11
**finding [5]**
15/23 29/24
45/16 46/16
48/20
**findings [2]**
38/12 78/10
**fine [7]**   16/14
18/21 19/15
44/25 72/12
72/25 78/21
**finish [1]**
14/12
**fire [2]**   51/3
51/23
**firearms [1]**
50/4
**first [25]**
3/18 9/2 10/22
19/6 21/9
22/25 25/14
29/11 34/17
50/23 51/23
58/15 60/11
63/1 63/24
63/25 64/6
64/7 66/17
70/3 71/8 73/4
79/21 80/7
81/5
**fit [2]**   42/16
47/5
**fits [3]**   5/3
39/2 58/21
**five [4]**   43/5
63/8 72/3
78/16
**flag [11]**   10/2
10/10 10/10
10/13 50/24
51/6 54/25
55/23 56/17
56/19 57/12
**flip [1]**   62/6

**flow [1]**   16/17
**focused [2]**
15/17 36/13
**focuses [2]**
18/1 34/22
**follow [2]**
48/13 50/15
**followed [1]**
72/23
**following [4]**
5/1 22/8 77/18
79/2
**footage [1]**
56/25
**footing [1]**
70/11
**For the**
**Defendant [1]**
1/16
**force [1]**   26/8
**forced [1]**
32/24
**forceful [1]**
60/12
**foreclosed [1]**
28/18
**foregoing [1]**
83/4
**forget [1]**
70/4
**forgot [1]**
68/10
**forth [3]**   31/2
50/19 80/12
**forward [14]**
2/5 9/20 23/16
23/18 24/15
24/15 24/18
24/19 25/3
25/25 26/10
60/15 66/7
70/1
**found [8]**   18/2
18/4 19/25
41/12 47/24
60/1 60/2
60/19
**four [24]**   5/20
15/24 15/25
17/10 20/10
42/13 42/14
42/19 42/24
43/4 43/7
43/10 43/14
43/15 43/19
43/23 43/25
44/3 45/1 45/5

78/15 78/19
**Fourth [1]**
1/14
**foyer [1]**
20/19
**frame [9]**   8/22
9/5 10/1 10/9
50/5 50/24
51/9 53/3
55/21
**frankly [13]**
5/15 6/11
12/23 17/13
17/16 19/2
33/21 34/15
35/17 48/1
51/9 52/14
62/19
**free [1]**   13/5
**Friedrich [2]**
61/5 61/11
**friend [6]**
10/17 35/12
35/19 36/14
36/16 56/14
**friends [1]**
69/3
**front [4]**   5/14
51/18 55/5
57/12
**full [2]**   35/11
60/15
**full-blown [1]**
60/15
**functions [1]**
42/21
**fund [1]**   29/14
**fundamental [1]**
30/6
**further [7]**
51/14 53/6
55/17 56/12
56/20 59/21
78/16
**future [1]**
76/1

**G**

**gallery [1]**
44/24
**gallows [2]**
49/15 49/23
**gardening [1]**
67/20
**gas [1]**   56/6
**gear [1]**   77/21
**general [2]**
49/4 74/23
**generally [2]**

52/24 75/17
**generic [1]**
30/21
**gentleman [6]**
22/1 23/10
25/2 25/25
26/7 64/19
**Georgia [1]**
46/1
**gets [3]**   16/25
61/23 62/1
**given [8]**   6/16
14/5 36/2 36/3
59/12 62/7
77/5 77/7
**gives [1]**
23/25
**giving [2]**
25/21 56/11
**goes [4]**   51/20
51/21 51/25
64/2
**good [8]**   2/2
2/7 2/9 2/10
2/14 7/4 11/10
62/21
**government [34]**
1/13 2/6 3/11
4/6 4/13 6/22
9/21 18/1 18/5
25/8 25/10
26/11 26/13
28/15 30/23
32/1 36/18
39/9 40/13
40/24 42/17
42/20 42/23
43/20 46/13
47/3 47/11
47/25 49/13
72/9 72/17
77/18 81/16
82/4
**government's**
**[25]**   5/6 6/19
7/17 7/25 9/1
9/6 10/23
11/19 13/10
16/15 16/23
17/1 18/12
22/16 31/11
35/21 40/1
41/4 46/20
47/4 48/19
49/1 58/23
72/13 76/22
**grabbed [3]**
26/10 26/11

61/16
**granted [2]**
18/18 59/17
**granting [1]**
18/12
**grapple [1]**
34/21
**grappling [4]**
34/14 35/5
54/3 77/21
**gravamen [1]**
30/23
**gray [7]**   10/12
22/2 25/5 26/1
35/1 56/15
56/19
**greater [2]**
23/17 80/13
**grounds [8]**
2/20 2/22 2/24
42/21 49/24
73/8 73/24
74/2
**group [12]**
17/9 17/25
43/7 43/9 44/3
44/3 44/4 44/4
44/6 44/7 44/8
53/24
**grouped [2]**
43/9 43/14
62/7
**grouping [8]**
17/24 18/3
31/2 31/4 44/2
62/15 62/18
62/22
**guard [1]**
74/20
**guess [4]**   6/11
59/24 63/22
70/17
**guide [1]**
67/13
**guideline [18]**
39/1 40/7 40/9
40/10 40/12
41/21 41/23
42/12 45/2
46/14 47/15
47/18 47/24
48/7 59/3
59/13 59/14
62/8
**guidelines [72]**
3/14 3/19
3/20 3/21 3/23
4/2 4/4 4/5

**G**

**guidelines...**
**[64]** 4/15
4/22 7/21
15/19 16/16
17/7 17/17
18/5 18/24
19/4 19/4
28/25 29/1
29/21 30/8
31/16 32/4
33/12 33/16
33/21 33/25
36/8 37/1 37/3
37/14 37/16
37/22 38/10
38/15 38/17
38/19 38/22
40/18 41/22
42/13 42/14
42/25 43/4
43/7 43/22
43/24 44/17
44/25 45/3
45/9 45/9 47/2
47/5 47/5 47/8
48/1 58/20
59/15 59/18
62/7 62/16
63/19 65/5
72/14 72/15
72/18 72/18
73/3 75/5
**guilty [8]** 3/3
4/15 4/17 13/3
19/25 60/1
64/4 77/24
**gun [1]** 21/24
**guys [1]** 70/25

**H**

**hallway [1]**
51/14
**hand [5]** 10/2
10/10 57/19
60/13 61/17
**handed [2]**
20/14 20/22
**hangman's [2]**
49/14 49/14
**happen [7]**
11/2 48/25
50/7 62/13
67/2 68/3
70/14
**happened [15]**
9/14 9/19
10/15 10/25

25/3 26/6
34/13 35/10
35/19 36/15
52/15 53/25
60/21 68/8
71/16
**happened to [1]**
35/10
**happening [2]**
36/3 70/19
**happens [7]**
10/12 10/20
11/8 23/4
52/25 55/10
55/13
**happy [3]**
65/13 66/2
66/12
**hard [3]** 52/24
66/20 66/22
**harm [9]** 26/16
26/17 26/22
36/6 36/7
36/12 43/8
43/11 70/8
**harming [1]**
26/23
**hate [2]** 70/24
71/1
**head [6]** 21/15
24/7 24/8 30/4
64/22 67/7
**heading [2]**
51/3 54/24
**health [2]**
74/8 74/9
**hear [15]** 3/20
3/22 7/16 7/20
18/23 25/21
26/25 31/25
46/24 54/5
63/20 65/13
66/2 66/5
66/12
**heard [9]** 31/9
34/24 37/1
37/6 61/21
65/12 65/15
72/2 74/8
**hearing [8]**
3/18 3/24 7/5
12/4 19/5
19/14 39/10
65/25
**hears [1]** 56/6
**held [6]** 4/25
12/17 12/18
15/9 27/13

72/15
**helmet [2]**
60/13 60/14
**help [5]** 11/5
20/15 69/11
69/14 70/12
**helped [4]**
34/10 58/6
58/7 73/19
**helpful [3]**
7/22 54/19
61/9
**here's [4]**
23/10 48/17
49/3 56/23
**herself [1]**
20/4
**Hey [1]** 50/8
**HI [1]** 1/18
**hide [1]** 32/13
**hiding [1]**
26/5
**high [4]** 17/25
58/19 66/25
69/10
**higher [4]**
53/19 53/23
57/6 62/16
**highest [3]**
44/4 44/5 44/6
**Hill [3]** 58/6
58/6 58/6
**himself [4]**
13/4 13/17
34/8 39/16
**history [9]**
44/21 44/22
74/5 74/25
75/5 75/6 75/7
75/18 81/23
**hit [3]** 24/7
24/7 61/15
**hitting [1]**
61/17
**Hogan [2]**
19/22 21/5
**hold [1]** 14/17
**holding [6]**
10/2 10/9
15/10 50/11
56/10 57/12
**Hollywood [1]**
50/8
**home [5]** 63/18
65/4 67/3
72/22 79/23
**honest [1]**
70/15

**honestly [2]**
61/18 63/6
**Honor [60]** 2/2
2/7 2/10 3/7
3/9 4/12 5/10
5/15 6/1 6/15
6/24 6/25 7/19
9/8 10/5 12/3
12/23 13/12
14/11 15/8
15/15 17/13
18/14 19/6
19/7 21/18
22/5 22/14
22/19 32/9
34/3 34/20
35/9 45/13
47/8 47/22
49/11 51/15
52/15 52/21
53/22 54/11
56/10 57/1
57/13 58/18
58/20 59/15
59/20 59/24
63/6 65/14
65/18 69/22
70/3 71/4 71/8
81/17 81/20
82/6
**honorable [2]**
1/10 74/23
**hoodie [1]**
24/20
**HOOK [3]** 1/22
83/3 83/10
**hooks [1]**
77/21
**hope [1]** 66/11
**hopefully [1]**
4/6
**hour [1]** 73/24
**hours [2]**
79/18 80/10
**house [2]** 52/8
52/8
**hurt [2]** 34/13
35/14

**I**

**identified [1]**
8/3
**ignored [1]**
75/19
**illegal [1]**
20/7
**image [6]**
24/16 26/11
49/11 50/7

50/13 52/2
**images [6]**
19/8 19/13
24/4 24/6
24/12 54/20
**immediately [1]**
63/1
**imminent [1]**
36/16
**impact [1]**
73/18
**impacted [1]**
26/8
**impeding [6]**
2/16 13/6
13/17 14/4
42/18 42/20
**implicit [1]**
33/17
**implied [1]**
33/16
**important [4]**
17/16 18/24
68/20 75/13
**impose [4]**
59/12 72/18
75/12 78/21
**imposed [5]**
59/2 77/6 78/2
79/4 80/16
**imposing [3]**
38/14 59/14
73/1
**imprisonment**
**[1]** 78/14
**inadvertently**
**[1]** 11/9
**incarcerated**
**[1]** 78/23
**incarceration**
**[8]** 47/4
47/11 72/10
72/19 72/23
77/1 78/25
79/3
**incensed [1]**
36/17
**incident [4]**
25/17 54/11
57/2 62/4
**incidents [2]**
20/14 76/2
**inclined [1]**
66/3
**include [2]**
3/11 72/21
**included [2]**
42/24 68/19

**I**

**includes [3]**
23/18 44/5
58/5
**including [7]**
32/2 57/5 58/4
59/17 74/25
78/10 79/16
**inconsistent**
**[1]** 47/21
**increase [1]**
44/10
**Indeed [1]**
43/22
**indicated [3]**
37/13 45/21
54/20
**indicating [2]**
50/2 57/20
**indictment [3]**
8/5 8/6 8/7
**indirectly [1]**
48/23
**individual [1]**
22/1
**indulge [1]**
19/19
**indulgence [1]**
65/9
**indulging [1]**
69/23
**ineffective [1]**
81/1
**infer [1]** 36/3
**inflict [1]**
48/21
**influence [2]**
64/14 75/2
**information [1]**
80/25
**initially [1]**
55/17
**initiated [1]**
35/8
**initiates [2]**
35/5 36/18
**injured [1]**
60/14
**injury [10]**
34/7 34/11
35/13 35/25
39/21 40/3
48/21 48/23
60/7 60/18
**innocence [1]**
28/19
**inquire [1]**
7/1

**inside [5]**
51/14 52/5
61/24 75/16
75/25
**instances [1]**
24/16
**instead [1]**
67/8
**instructions**
**[2]** 22/8
75/19
**integrity [1]**
76/13
**intend [4]**
17/19 35/14
48/20 70/8
**intended [3]**
35/12 41/25
73/15
**intending [1]**
40/2
**intent [34]**
4/20 5/5 5/7
5/22 6/2 11/23
12/13 12/14
12/21 13/1
13/22 14/6
15/24 16/3
26/15 26/16
27/22 32/2
34/16 35/24
36/3 36/7 39/6
39/21 41/1
41/6 41/11
41/14 41/15
41/16 42/5
53/8 54/16
70/8
**intention [2]**
70/15 70/18
**intentional [2]**
74/3 77/14
**intentionally**
**[1]** 42/20
**interact [3]**
80/2 80/4 80/6
**interest [2]**
78/22 78/23
**interfered [1]**
76/10
**interfering [3]**
12/12 13/17
14/4
**interior [2]**
51/8 51/24
**internet [1]**
64/19
**interpretation**
**[1]** 4/14

**interpreted [1]**
26/21
**interrupt [1]**
54/4
**interrupting**
**[1]** 73/12
**interruption**
**[1]** 82/13
**intervene [1]**
36/21
**intimidated [1]**
5/7
**intimidating**
**[2]** 12/12
20/7
**intimidation**
**[3]** 13/6
52/13 53/10
**into [18]** 8/24
9/11 9/21 10/8
11/5 11/16
21/2 28/17
37/8 37/9 43/9
50/21 51/3
51/24 51/25
54/22 58/21
65/7
**introduce [1]**
2/5
**investigation**
**[2]** 37/22
37/25
**involve [11]**
14/23 28/21
43/10 43/11
43/16 43/19
43/21 60/6
60/6 61/24
80/13
**involved [9]**
6/3 16/8 19/12
20/10 20/14
23/3 23/21
43/16 54/11
**involves [1]**
26/15
**involving [12]**
4/14 5/20 8/8
18/3 23/7
23/19 43/8
52/14 53/2
53/20 59/7
76/23
**irrelevant [1]**
44/16
**is a [1]** 17/2
**issue [13]**
4/13 6/16

14/11 14/14
14/21 15/6
15/7 15/17
16/6 18/24
18/25 24/14
65/15
**issued [2]**
46/3 58/12
**issues [8]**
17/7 28/25
29/19 30/7
38/9 67/5
67/13 68/21
**items [1]**
79/24

**J**

**jacket [2]**
23/11 56/15
**Jan [1]** 58/10
**January [22]**
8/14 50/7 50/9
50/17 58/4
58/11 59/8
60/10 70/7
71/20 73/6
73/15 73/17
73/19 73/21
75/19 76/3
76/9 76/15
76/21 76/23
77/2
**January 18th**
**[1]** 58/11
**JEFF [3]** 1/22
83/3 83/19
**Jefferson [1]**
64/21
**job [2]** 22/10
22/12
**join [1]** 54/15
**joins [1]** 52/8
**joint [1]** 73/8
**Journal [1]**
70/17
**judge [21]**
1/10 5/1 11/25
12/1 12/3
14/13 15/6
19/20 19/22
19/23 20/2
20/9 20/16
20/24 21/5
27/9 31/10
61/4 61/5
61/10 61/14
**judges [1]**
77/5
**judgment [2]**

29/9 80/19
**judgments [1]**
20/3
**judicial [2]**
79/17 79/20
**July [2]** 45/25
46/2
**July 26th [1]**
45/25
**July 28th [1]**
46/2
**jury [1]** 28/19
**just my [1]**
65/17
**justifies [1]**
48/6
**justify [1]**
71/14

**K**

**Kailua [1]**
1/18
**keeps [1]** 35/7
**Kennesaw [2]**
46/1 46/6
**Kevin [1]** 8/3
**key [1]** 43/23
**kicked [1]**
26/1
**kicks [2]**
25/19 40/25
**kind [14]** 10/1
10/12 17/17
20/18 20/25
34/9 35/7
48/14 49/2
50/22 52/23
53/19 70/14
71/23
**kit [1]** 49/14
**knew [4]** 28/14
28/15 62/25
69/17
**knocked [2]**
20/16 60/17
**knowingly [4]**
42/19 79/19
80/4 80/6
**knows [4]** 3/3
69/13 73/1
80/18
**Kollar [9]**
12/1 12/3
14/13 15/6
19/20 19/23
20/2 20/9
20/16
**Kollar-Kotelly**
**[9]** 12/1 12/3

**K**

Kollar-Kotelly.
.. [7]   14/13
15/6 19/20
19/23 20/2
20/9 20/16
Kotelly [9]
12/1 12/3
14/13 15/6
19/20 19/23
20/2 20/9
20/16

**L**

lack [3]   17/1
57/8 76/3
large [2]
10/13 64/12
last [5]   7/5
7/25 29/13
55/2 55/2
later [6]   11/1
50/18 51/21
52/16 56/3
58/4
launched [1]
39/16
law [22]   1/17
6/10 6/21 7/18
26/14 27/2
27/19 27/22
28/7 32/22
35/23 39/5
39/18 58/15
73/13 73/20
74/1 75/11
75/12 75/22
76/4 80/8
law Model [1]
6/21
lawful [3]
26/8 34/24
34/25
Lazo [1]   21/10
lead [2]   44/15
55/7
leads [2]   51/4
66/23
leaned [1]
8/24
leaning [2]
9/11 24/18
leans [1]   9/21
least [11]
29/10 34/4
35/13 36/19
50/1 62/9
72/12 74/14

76/3 79/12
81/12
leave [4]
51/19 58/1
74/2 79/19
leaves [2]
51/20 57/24
led [1]   75/15
left [10]
10/10 13/4
20/13 21/15
51/8 53/17
55/9 55/22
56/18 57/6
legal [5]   4/14
29/14 30/18
30/19 78/7
legs [1]   8/20
length [1]
73/3
lengthy [2]
65/4 65/4
less [4]   20/21
29/5 44/8
62/23
letter [2]   7/8
65/23
level [46]
16/23 16/25
17/2 17/3
17/18 18/10
18/10 18/12
18/15 18/16
30/21 31/4
34/9 34/12
39/23 39/23
39/25 40/4
40/19 40/20
40/21 41/3
41/9 41/21
42/1 42/11
43/1 43/2 43/3
43/4 43/24
44/2 44/4 44/6
44/6 44/10
44/11 44/13
44/17 44/19
44/20 53/23
57/6 57/7 65/3
77/19
level's [1]
18/16
levels [5]
17/22 44/8
44/16 62/23
62/24
liberty [1]
80/14

license [1]
75/1
LIEBMAN [20]
1/13 2/8 2/9
3/6 4/11 18/22
19/16 22/25
25/14 36/23
47/2 54/5
59/22 61/21
63/20 65/16
70/5 70/10
71/6 81/15
Liebman's [2]
26/25 66/8
life [1]   67/24
light [2]   40/1
76/16
likely [3]
50/20 52/22
62/5
limited [1]
36/18
Linda [1]   2/12
line [2]   55/5
57/15
list [2]   10/4
68/10
literally [1]
49/23
little [11]
10/25 16/5
23/25 35/7
48/15 48/16
53/6 53/13
53/19 54/23
55/21
live [1]   67/11
lives [2]   74/7
82/1
living [2]
64/19 66/5
loaded [1]
50/4
local [2]   8/15
79/8
location [1]
23/25
Locked [1]
50/4
long [5]   5/4
12/20 25/9
74/25 75/18
longer [2]
35/7 76/18
look [3]   4/22
22/22 36/13
looking [9]
7/9 9/9 10/16

14/25 15/15
21/9 30/2 32/9
35/3
looks [1]   35/5
lose [2]   67/15
68/5
losing [1]
67/5
lost [3]   50/2
68/5 70/11
lot [4]   17/6
28/4 70/16
76/20
Love [1]   67/9
low [1]   48/1
lower [7]   34/9
34/12 53/3
53/17 57/4
57/4 57/7
lupus [1]   74/8

**M**

ma'am [3]   66/7
66/12 68/11
main [1]   31/23
maintain [1]
46/14
maintaining [1]
9/18
major [2]   60/5
60/6
majority [1]
64/13
makes [5]
15/24 50/18
51/24 53/11
58/5
making [2]
28/18 41/8
man [1]   65/6
mandatory [4]
38/17 45/6
79/3 81/9
many [12]
47/16 71/17
73/6 73/6 73/6
73/11 73/13
73/14 76/7
77/7 77/14
78/5
Marxists [1]
50/9
materials [1]
3/10
matter [6]
35/22 46/8
52/17 62/19
78/10 83/5
matters [3]

28/8 51/15
64/3
max [1]   36/25
maximum [3]
45/2 59/14
59/16
may [25]   13/15
16/14 21/21
22/6 22/14
22/19 22/21
35/3 37/7 37/8
43/10 43/19
48/24 52/3
57/2 58/13
60/6 60/6
65/14 66/7
74/13 74/15
78/1 78/24
80/20
maybe [4]   56/3
61/22 61/23
71/20
McFadden [2]
27/9 31/11
mean [13]   12/7
17/8 30/2
31/20 32/13
33/18 36/25
60/14 61/21
62/15 67/6
68/15 70/23
meaning [1]
16/19
means [5]
16/22 27/6
40/15 62/8
62/18
meant [3]
32/20 45/19
45/21
media [5]   53/4
55/1 55/7
56/24 64/1
medication [2]
67/1 67/4
Meet [1]   49/21
meeting [1]
73/9
Mehta [1]   61/4
members [3]
21/12 68/13
69/3
memo [14]   7/8
10/4 10/24
11/2 17/12
17/15 47/17
48/4 48/9
50/19 58/22

**M**

**memo... [3]**
59/6 59/9
65/24
**memorandum [8]**
12/6 14/16
15/18 52/19
63/15 68/19
69/17 77/1
**mention [1]**
31/10
**mentioned [3]**
19/16 75/18
78/3
**met [1]** 50/1
**Metropolitan
[1]** 22/10
**MICHAEL [2]**
1/13 2/7
**middle [3]**
10/1 22/23
25/12
**might [15]**
3/19 6/25
24/23 36/5
54/12 54/16
56/10 61/5
64/9 67/2
67/24 69/12
71/15 76/16
81/3
**millions [2]**
64/9 64/17
**mind [6]** 13/2
33/4 64/2 64/3
70/6 70/7
**mine [1]** 61/7
**minimum [3]**
3/23 16/20
66/3
**minor [4]**
45/23 60/4
69/12 71/7
**minute [5]** 9/5
10/25 34/5
48/5 72/3
**minutes [8]**
9/3 25/9 36/25
51/21 52/11
55/6 56/3
73/24
**misdemeanor [6]**
12/10 52/17
62/2 62/3 62/4
71/20
**misheard [1]**
61/22
**miss [1]** 67/9

**missing [1]**
25/11
**MMA [1]** 60/16
**Model [15]**
6/12 6/21 7/18
27/25 28/7
32/10 32/17
32/22 33/9
33/11 34/2
35/15 35/23
39/5 39/18
**mom [2]** 70/23
71/1
**moment [15]**
8/20 8/23 9/14
22/11 34/21
36/13 51/13
53/1 55/18
55/22 56/1
57/18 64/5
64/16 66/17
**moments [1]**
13/16
**Monday [1]**
19/20
**monitor [1]**
66/16
**month [3]**
21/15 48/12
48/13
**months [26]**
44/25 45/3
47/12 47/13
47/18 58/21
59/12 60/24
61/16 61/20
63/3 72/10
72/14 72/16
72/19 72/21
72/23 72/23
76/25 77/1
78/14 78/15
78/16 78/17
78/18 78/25
**Moore [2]**
37/13 72/7
**more [19]** 7/10
10/5 23/24
28/24 33/21
36/8 42/18
44/8 51/12
56/3 58/3 60/5
62/23 62/24
63/11 68/6
68/22 73/22
75/20
**morning [10]**
2/2 2/7 2/9

2/10 2/12 2/14
3/5 15/17
37/21 38/20
**mosh [1]** 20/18
**Moss [1]** 61/14
**Moss' [2]** 5/1
11/25
**most [9]** 8/13
18/24 29/12
40/10 40/11
41/23 50/20
52/22 57/4
**mother [14]**
2/12 63/19
65/10 65/23
65/25 66/2
66/6 74/7 74/9
74/11 74/12
74/16 74/22
75/9
**motion [4]**
18/6 18/12
18/18 25/1
**move [4]** 13/18
18/5 23/17
54/14
**moved [1]** 25/5
**moves [8]** 9/20
35/2 35/4 53/7
54/1 55/11
56/6 57/7
**movie [1]** 50/8
**movies [1]**
70/25
**moving [5]**
23/16 23/16
53/21 53/23
57/15
**Mr. [109]**
**Mr. Liebman
[18]** 2/9 3/6
4/11 18/22
19/16 22/25
25/14 36/23
47/2 54/5
59/22 61/21
63/20 65/16
70/5 70/10
71/6 81/15
**Mr. Liebman's
[2]** 26/25
66/8
**Mr. Phipps [50]**
3/3 4/8 5/21
24/15 24/18
28/6 31/6
37/18 37/20
39/4 39/6

39/15 39/15
39/20 39/22
41/5 41/7
41/10 41/15
42/4 42/15
42/19 59/25
60/20 62/8
62/9 63/16
64/4 64/8
68/20 69/23
69/25 70/22
72/20 73/7
73/22 74/6
74/11 74/15
74/16 74/18
74/20 74/25
75/4 75/14
75/15 75/24
76/5 77/12
80/19
**Mr. Phipps'
[12]** 4/2 22/2
38/25 40/17
41/25 44/15
65/10 73/21
74/13 75/6
77/22 77/24
**Mr. Sandoval
[1]** 21/12
**Mr. Sandoval's
[1]** 15/23
**Mr. Shipley
[21]** 3/8
18/23 19/1
22/15 22/18
34/22 34/24
36/13 37/25
46/9 52/3
59/23 65/22
68/19 69/6
69/20 70/5
71/3 80/18
81/18 82/7
**Mr. Shipley's
[4]** 36/2 38/6
69/17 71/13
**Ms. [2]** 37/13
72/7
**Ms. Moore [2]**
37/13 72/7
**much [8]** 21/3
66/14 67/16
68/4 68/4 69/5
69/18 74/10
**multi [1]** 18/4
**multi-counts
[1]** 18/4
**multiple [7]**

4/25 8/8 12/8
12/19 13/11
21/11 37/5
**Municipal [1]**
46/6
**must [18]**
38/17 73/2
76/19 79/7
79/8 79/9
79/10 79/13
79/17 79/19
79/22 79/24
80/1 80/4 80/6
80/9 80/18
81/10
**myself [1]**
62/21
**mystery [1]**
64/21

**N**

**name [2]** 32/16
60/11
**named [3]** 8/4
11/4 21/10
**names [1]** 24/9
**nature [2]**
73/5 74/3
**Navy [1]** 74/22
**near [2]** 42/21
53/6
**necessary [2]**
27/14 80/14
**neck [1]** 24/10
**need [5]** 8/1
68/9 68/22
76/17 77/25
**negligibly [1]**
50/22
**new [1]** 80/24
**next [9]** 10/21
22/22 23/11
26/7 34/14
49/13 51/5
74/5 75/10
**nicely [1]**
58/21
**NICHOLS [1]**
1/10
**night [5]** 7/5
7/25 55/2 55/2
68/7
**nine [5]** 31/4
44/7 62/23
62/24 67/2
**nine-level [1]**
31/4
**non [5]** 33/14
47/7 49/10

**N**

**non... [2]**
59/18 66/3
**non-custodial [1]**   66/3
**non-elected [1]**
49/10
**non-guidelines [1]**   59/18
**none [1]**   75/3
**nonetheless [3]**
36/17 39/16
43/20
**nonlethal [1]**
26/8
**nooses [1]**
49/14
**north [9]**   7/7
7/10 45/16
52/15 52/18
55/10 56/1
57/1 61/23
**note [7]**   15/3
15/4 17/8 22/5
42/10 42/10
62/20
**noted [3]**
46/22 74/7
74/16
**notes [2]**   5/13
15/22
**noticed [3]**
8/24 10/11
56/10
**notified [1]**
71/10
**notify [1]**
80/9
**noting [1]**
46/10
**November [2]**
49/4 49/16
**November 6th [1]**   49/4
**November 7th [1]**   49/16
**number [3]**
28/24 44/9
73/19
**NW [2]**   1/14
1/24

**O**

**object [1]**
65/24
**objection [7]**
18/11 30/13
45/11 46/9

46/15 66/9
82/4
**objectionable [1]**   64/9
**objections [11]**
7/11 7/13
7/22 19/2 21/1
29/12 29/18
29/24 30/10
37/17 46/22
**objects [1]**
44/14
**obligated [1]**
65/7
**observes [1]**
80/1
**obstructing [2]**
42/18 64/3
**obstruction [1]**
13/24
**obvious [3]**
25/24 68/7
78/4
**obviously [14]**
12/15 14/10
21/7 28/24
31/1 37/15
37/20 37/23
44/15 46/21
47/1 50/17
54/13 72/15
**occasions [2]**
71/16 73/20
**occur [2]**
52/23 75/16
**occurred [5]**
7/7 32/18
45/15 45/15
52/14
**occurring [2]**
53/20 55/8
**occurs [2]**
11/24 53/3
**off [7]**   19/3
20/17 20/23
25/20 26/1
55/21 64/22
**offenders [1]**
77/14
**offense [44]**
16/22 17/2
17/3 17/18
17/22 18/15
18/16 38/13
39/23 39/25
40/8 40/10
40/12 40/19
40/21 41/1

41/3 41/9
41/19 41/21
41/21 41/24
41/24 42/1
42/3 42/11
43/1 43/3 43/4
43/24 44/2
44/4 44/5 44/6
44/10 44/11
44/20 59/5
63/12 63/24
65/3 71/9 73/5
78/1
**offenses [7]**
43/7 59/19
62/8 62/11
62/19 63/8
75/4
**offensive [1]**
35/18
**offered [1]**
46/13
**office [7]**
1/17 17/12
17/20 18/2
18/4 48/3
79/17
**office's [1]**
47/23
**officer [63]**
2/4 5/7 8/10
8/10 8/12 8/25
9/1 9/6 9/8
9/9 9/10 9/14
9/20 10/16
10/18 10/19
10/20 11/3
11/4 20/12
20/14 20/15
21/10 21/10
21/10 21/22
23/2 23/3 23/8
23/24 24/9
24/10 25/4
25/20 25/24
26/8 30/18
34/13 34/23
35/2 35/13
35/16 35/17
36/16 36/20
36/21 36/22
42/6 55/5
60/13 60/17
61/15 61/16
63/10 70/11
77/16 79/14
79/22 79/22
79/24 80/8

80/9 80/9
**officer's [4]**
8/22 21/20
21/25 24/16
**officers [47]**
2/16 4/8 8/3
8/8 19/11
20/11 22/7
22/10 23/16
23/21 26/19
26/22 26/23
39/11 39/13
39/16 39/21
42/18 43/16
51/13 51/17
51/19 52/10
52/13 52/14
53/2 53/10
53/11 53/20
53/21 54/2
54/10 54/14
54/17 55/12
55/14 55/23
56/1 56/7
56/21 57/4
57/5 57/9 58/2
64/5 73/13
75/20
**official [8]**
1/23 13/25
16/24 16/24
17/5 39/24
40/20 83/3
**officials [1]**
77/18
**often [1]**   72/8
**omitted [1]**
69/8
**once [4]**   26/18
35/4 35/4
36/14
**one [102]**
**one's [1]**
50/16
**one-level [2]**
18/10 18/12
**ones [1]**   60/11
**online [2]**
64/8 70/18
**only [10]**
36/11 44/5
47/7 51/11
58/25 59/10
64/3 74/15
78/2 78/25
**opinion [9]**
11/25 12/6
12/18 14/16

14/25 15/16
15/18 32/15
32/16
**opinions [1]**
21/2
**opportunity [3]**
22/17 65/19
71/10
**oral [1]**   18/12
**orally [1]**
12/19
**orange [2]**
21/23 21/24
**order [6]**   12/6
14/16 48/10
57/8 78/4 78/7
**ordered [1]**
78/19
**ordinary [1]**
76/10
**orient [1]**
23/12
**others [10]**
10/15 20/18
34/10 62/24
73/7 74/2 76/6
77/5 77/10
77/20
**otherwise [3]**
9/16 18/3
44/18
**ourselves [1]**
64/10
**out [25]**   11/25
14/12 17/21
19/12 23/1
24/12 25/6
25/14 26/15
30/22 32/23
46/5 47/16
47/23 48/8
51/15 51/20
53/12 55/18
58/23 59/9
60/12 63/19
64/15 65/2
**outcome [1]**
21/14
**outlined [1]**
79/16
**outset [1]**
58/19
**over [17]**
10/20 20/15
20/20 49/5
50/15 50/25
51/6 54/6
54/25 56/20

**O**

over... [7]
57/7 57/24
63/8 66/18
66/18 73/23
73/24
overall [2]
30/15 76/17
overbroad [1]
15/5
overheated [1]
64/15
overruled [1]
66/18
overwhelm [1]
73/20
overwhelming
[1]  35/25
own [3]  29/23
31/2 68/23

**P**

p.m [8]  8/16
34/6 37/10
37/11 51/13
72/4 72/5
82/15
page [1]  15/18
pages [1]
79/16
pain [1]  35/17
parading [1]
2/25
paragraph [1]
45/24
paraphrase [2]
15/2 36/4
Parliamentarian
's [1]  51/8
part [6]  11/8
19/14 24/20
68/20 72/12
76/14
participant [1]
73/17
participation
[1]  68/6
particular [9]
14/19 15/13
38/11 39/8
39/11 39/19
51/7 69/7 71/9
particularly
[4]  17/8
43/18 75/7
75/13
parties [14]
3/5 3/13 3/20

3/22 4/6 18/9
28/6 29/1 30/6
37/3 40/11
43/13 46/25
72/9
parties' [2]
32/5 45/8
party [1]
44/14
passage [1]
64/14
pat [1]  57/19
patch [1]
53/18
path [2]  31/7
31/7
patriots [2]
49/18 58/7
pause [5]  8/23
9/12 10/11
55/24 56/9
paused [3]
8/19 10/8
55/22
pay [2]  78/19
78/22
payable [1]
59/8
peaceful [2]
71/21 76/11
Penal [15]
6/12 6/21 7/18
27/25 28/7
32/10 32/17
32/23 33/9
33/11 34/2
35/15 35/23
39/5 39/19
penalties [1]
78/23
pending [1]
45/25
people [8]
50/3 53/9
67/25 68/16
69/2 71/22
76/12 77/23
pepper [1]
21/24
PepperBall [1]
21/24
perhaps [3]
18/25 36/4
50/20
period [2]
34/5 47/4
periodic [2]
79/12 81/12

permission [4]
79/21 80/7
80/21 81/3
permit [1]
79/24
permitting [1]
82/5
person [11]
10/12 25/4
26/23 56/10
56/14 56/19
57/19 60/16
80/5 80/5 80/7
personal [4]
68/23 69/3
73/21 75/8
personally [4]
48/20 65/20
65/21 69/3
persons [2]
43/16 48/24
perspective [4]
19/11 23/25
68/21 81/13
PHIPPS [56]
1/6 2/4 2/11
2/13 3/3 4/8
5/21 24/15
24/18 28/6
31/6 37/18
37/20 39/4
39/6 39/15
39/15 39/20
39/22 41/5
41/7 41/10
41/15 42/4
42/15 42/19
44/20 59/25
60/20 62/8
62/9 63/16
64/4 64/8
68/20 69/23
69/25 70/22
72/20 73/7
73/22 74/6
74/11 74/15
74/16 74/18
74/20 74/25
75/4 75/14
75/15 75/24
76/5 77/12
78/13 80/19
Phipps' [15]
4/2 22/2 38/25
40/17 41/25
43/24 44/15
65/10 73/21
74/13 75/6

77/1 77/8
77/22 77/24
photo [1]
53/18
photograph [1]
52/1
physical [20]
6/3 6/5 6/17
9/22 12/11
14/1 27/1 34/5
35/13 35/24
36/19 36/19
42/3 42/5
51/16 52/9
52/12 53/11
54/10 60/7
physically [4]
54/2 54/14
73/25 75/22
picketing [1]
3/1
picks [1]
24/25
picture [6]
49/5 49/13
50/3 50/5
50/11 71/5
pipe [2]  61/15
61/16
pit [1]  20/18
place [6]  8/13
11/10 25/15
25/17 66/19
71/19
placement [2]
79/11 81/11
plain [1]  80/1
Plaintiff [1]
1/4
plan [2]  7/16
37/2
planned [1]
73/11
planning [2]
73/14 77/20
plastic [1]
61/14
play [12]  8/16
9/4 11/7 11/14
19/12 19/13
21/16 21/16
51/10 52/6
52/25 53/12
played [22]
11/17 22/4
22/15 23/9
23/13 24/3
25/7 25/9

25/11 25/14
25/18 26/4
51/2 54/18
56/8 56/16
56/22 57/10
57/14 57/17
57/22 57/23
playing [6]
8/17 9/23 9/24
50/24 53/14
55/20
plays [1]  25/6
plea [5]  4/15
4/16 4/17 14/6
78/5
pleaded [3]
3/3 28/14
77/24
pleading [1]
13/3
please [1]  2/5
pled [2]  59/1
64/4
plus [5]  17/5
29/3 29/4 29/6
41/22
PO [1]  1/17
podium [1]
70/1
point [30]
6/25 9/8 11/24
14/8 14/12
17/1 18/6
24/11 27/2
31/5 34/9 35/9
37/7 38/20
42/13 46/5
48/8 50/1
51/12 52/7
53/12 55/18
57/2 57/25
58/22 62/25
63/10 63/22
70/8 70/9
pointed [4]
23/1 25/14
26/15 76/23
pointing [2]
30/22 47/23
points [3]
10/15 44/21
53/16
police [14]
22/7 22/10
52/9 53/2
53/20 57/16
63/9 63/10
75/20 76/2

**P**

**police... [4]**
76/4 76/8
77/15 77/16
**population [1]**
64/13
**portion [2]**
11/8 22/14
**poses [1]**
75/14
**position [20]**
6/14 8/9 9/18
11/21 13/10
16/15 29/8
31/20 32/24
40/13 44/15
46/19 46/20
46/20 55/16
55/5 56/12
57/9 65/18
66/1
**positions [5]**
32/5 45/9
46/22 66/22
72/9
**possess [1]**
79/9
**possible [5]**
13/2 31/7 61/6
61/7 74/14
**post [2]    48/18**
49/18
**posted [4]**
49/3 49/15
64/8 64/11
**posting [1]**
64/22
**posts [3]    48/5**
50/2 58/3
**potential [4]**
38/21 42/14
74/14 80/17
**power [2]**
71/22 76/12
**PowerPoint [1]**
48/16
**precise [1]**
75/15
**predominant [1]**
41/14
**premise [1]**
36/11
**prepared [1]**
3/5
**preparing [1]**
7/5
**preponderance**
**[5]**  39/3

39/14 39/17
39/20 40/5
**present [3]**
2/11 16/13
16/14
**presentation**
**[2]**  35/11
37/4
**presented [1]**
15/1
**presentence [6]**
7/2 37/16
37/17 37/21
37/25 45/24
**presently [1]**
74/21
**preserved [3]**
45/10 46/22
47/20
**preserving [1]**
46/23
**President [1]**
50/5
**presidential**
**[2]**  71/22
73/10
**pressure [3]**
66/16 66/25
69/10
**presumably [1]**
41/4
**presumption [1]**
28/19
**pretty [3]    6/4**
21/3 28/5
**prevent [4]**
26/23 36/6
36/12 58/7
**prevented [1]**
61/17
**prevents [1]**
76/8
**previous [1]**
71/16
**previously [2]**
74/22 75/18
**primary [1]**
73/18
**prior [1]**
76/21
**prison [4]**
63/6 63/7
63/13 74/13
**Prisons [1]**
78/13
**private [1]**
74/19
**probably [12]**

13/16 18/24
19/3 25/11
33/20 46/4
48/2 52/16
56/3 61/19
71/19 72/3
**probation [33]**
2/4 3/14 7/9
17/12 17/20
18/2 18/4 30/6
30/18 40/11
40/12 40/24
42/17 42/22
44/13 47/3
47/23 48/2
48/3 63/17
65/4 72/12
72/22 74/14
79/14 79/17
79/22 79/22
79/24 80/7
80/9 81/5 81/8
**probation's [2]**
41/4 46/20
**probationary**
**[1]**  72/20
**problem [5]**
19/17 26/14
27/4 75/17
82/8
**problems [2]**
74/8 74/10
**proceed [4]**
3/5 3/12 3/24
46/24
**proceeding [2]**
4/16 13/25
**proceedings [6]**
37/11 73/12
78/2 81/3
82/15 83/5
**process [2]**
21/1 49/9
**profile [3]**
50/13 50/18
52/2
**program [1]**
81/23
**prohibited [1]**
79/25
**promotes [1]**
75/12
**prompted [1]**
25/24
**prompts [1]**
22/2
**promulgated [1]**
40/10

**pronounce [5]**
19/4 37/7 67/7
72/2 72/8
**pronouncement**
**[1]**  37/8
**proposed [1]**
47/4
**prosecutions**
**[1]**  12/16
**protecting [1]**
75/10
**protest [1]**
75/24
**protesters [1]**
22/12
**protesting [1]**
75/16
**provide [3]**
15/20 77/2
77/25
**provided [1]**
39/9
**provides [5]**
34/2 40/8 43/1
43/10 43/22
**provision [15]**
4/24 6/9 12/20
16/24 40/3
40/7 40/14
40/25 41/8
41/18 41/20
42/7 42/12
42/18 65/21
**provisions [3]**
20/2 30/8 42/8
**PSR [17]    7/12**
7/13 7/22 19/2
29/12 29/14
29/19 29/25
30/12 30/14
38/13 45/20
46/10 74/20
75/3 79/16
81/23
**public [1]**
75/11
**pulled [4]**
22/22 24/15
24/19 63/2
**pulling [1]**
24/18
**pulls [2]**
24/11 24/20
**purpose [2]**
6/6 73/12
**purposes [17]**
5/9 7/6 8/1
13/10 16/13

16/14 16/15
16/16 32/18
33/15 36/8
38/14 39/22
43/22 65/7
68/11 80/15
**push [6]    9/10**
34/21 34/25
35/16 39/12
51/14
**pushed [5]**
9/15 10/17
10/19 36/14
39/13
**pushing [4]**
6/17 11/6
34/23 62/4
**put [12]    13/20**
24/4 26/11
36/4 36/5
49/20 60/15
63/16 65/3
66/15 67/17
71/8
**puts [1]    66/25**
**putting [1]**
30/9
**PVC [1]    61/14**

**Q**

**qualification**
**[1]**  45/20
**qualifications**
**[1]**  46/10
**qualify [1]**
5/17
**qualitative [1]**
63/4
**quick [1]    30/3**
**quite [6]**
35/10 45/13
48/18 52/20
53/18 55/8
**quoted [1]**
49/18

**R**

**raise [2]    30/1**
30/20
**raised [1]**
33/6
**raising [3]**
14/22 15/1
15/17
**rally [2]**
49/17 49/19
**rallying [1]**
64/23
**range [10]**

# R

**range... [10]**
44/25 45/1
45/3 47/18
47/18 48/7
59/3 72/14
72/16 72/19
**rationale [1]**
31/12
**RDAP [1]**   81/23
**reach [3]**   6/15
15/6 15/7
**reached [1]**
12/15
**reacted [2]**
9/15 10/18
**reaction [2]**
22/2 34/22
**read [4]**   15/18
16/14 19/24
20/1
**reading [1]**
27/8
**reads [1]**
31/18
**ready [1]**   50/3
**real [2]**   24/14
30/3
**realize [2]**
22/25 70/15
**realized [2]**
7/5 8/7
**realizing [1]**
67/25
**really [9]**
5/16 30/10
31/19 40/2
52/4 56/11
62/19 69/9
77/2
**reason [7]**   4/5
26/9 32/22
48/12 55/15
59/1 59/2
**reasonably [2]**
80/11 80/14
**reasons [8]**
43/10 47/16
48/2 58/18
75/17 77/5
77/7 80/17
**recalls [1]**
4/15
**received [3]**
74/23 76/25
81/1
**receives [2]**
44/7 74/21

**recently [2]**
52/20 74/19
**recess [10]**
3/19 32/3
36/24 36/24
37/7 37/9
37/10 72/1
72/3 72/4
**recidivism [2]**
75/14 75/17
**recognize [1]**
74/10
**recognized [1]**
62/22
**recognizes [1]**
64/14
**recognizing [2]**
37/5 38/9
**recollection**
**[1]**   8/4
**recommend [2]**
59/6 81/22
**recommendation**
**[2]**   47/24
81/25
**recommendations**
**[2]**   82/3
82/10
**recommended [2]**
47/1 48/2
**recommends [2]**
47/11 72/22
**record [22]**
2/6 19/14 20/3
21/4 23/5 31/9
36/4 37/12
45/11 46/11
46/13 46/15
46/18 55/5
71/8 72/5 72/6
76/3 77/3
78/10 79/6
83/5
**recording [3]**
10/8 56/4
56/21
**red [9]**   10/12
22/2 23/11
25/2 25/5
25/25 35/1
56/14 56/19
**reduction [2]**
18/10 18/13
**reference [15]**
5/13 6/2 11/24
14/15 14/23
29/13 40/14
40/25 41/8

41/18 42/7
42/8 42/23
50/4 50/6
**referred [1]**
21/21
**referring [1]**
58/6
**refers [1]**
45/25
**reflect [6]**
13/11 19/3
23/5 36/25
76/3 81/23
**reflected [4]**
20/5 39/8
74/20 75/3
**reflective [1]**
64/2
**reflects [2]**
46/19 70/6
**refrain [1]**
79/9
**refusing [1]**
13/18
**regard [2]**
46/12 71/13
**regarding [4]**
37/19 38/13
40/16 41/23
**rejected [3]**
12/17 15/8
27/13
**relate [1]**
7/13
**related [2]**
42/9 80/12
**Relatedly [1]**
3/25
**relates [1]**
29/13
**relating [1]**
75/9
**relative [1]**
65/21
**relatively [4]**
9/19 19/9
55/25 61/20
**release [4]**
45/4 72/11
72/24 78/17
**relevant [14]**
3/20 4/1 18/19
37/22 38/19
40/3 40/7
42/12 42/24
72/14 75/5
76/22 78/11
80/12

**rely [3]**   29/15
32/12 67/13
**relying [1]**
40/4
**remain [3]**
41/10 42/4
62/14
**remained [3]**
41/5 41/13
41/16
**remaining [3]**
2/19 11/1 19/1
**remains [1]**
76/1
**remarkable [1]**
52/4
**remember [7]**
17/14 32/16
34/8 49/22
60/10 60/25
67/17
**remind [2]**
45/14 57/25
**removed [1]**
46/2
**repair [1]**
49/14
**repeatedly [1]**
75/19
**replay [1]**
22/24
**reply [1]**
23/19
**report [9]**   7/2
37/16 37/18
37/22 37/25
38/3 45/24
46/3 79/17
**reporter [4]**
1/22 1/23
55/24 83/3
**representation**
**[1]**   38/7
**republic [2]**
49/6 49/21
**republic's [1]**
49/8
**request [3]**
59/25 80/21
81/3
**requests [1]**
81/20
**require [3]**
12/17 18/5
82/11
**required [3]**
17/17 79/3
79/6

**requirement [1]**
32/2
**requires [2]**
31/12 35/15
**resemble [1]**
60/20
**reset [1]**
24/24
**reside [2]**
79/18 79/21
**resist [1]**
20/1
**resisted [1]**
74/1
**resisting [2]**
2/16 9/11
**resolve [2]**
13/8 38/10
**resolved [1]**
21/3
**respect [10]**
16/20 29/11
38/10 38/20
41/19 70/5
75/11 75/12
76/4 77/9
**respectfully**
**[1]**   4/12
**respective [2]**
32/5 72/9
**respond [1]**
22/18
**responds [1]**
26/2
**responsibility**
**[5]**   17/23
18/7 44/13
44/14 48/25
**rest [2]**   3/24
19/5
**restitution [8]**
59/4 72/11
72/24 78/1
78/1 78/4 78/6
78/8
**restoration [1]**
49/6
**restricted [8]**
2/19 2/22 41/5
41/11 41/14
41/16 42/5
42/21
**result [9]**
34/11 39/22
40/18 41/17
43/3 44/23
48/23 75/2
76/15

**R**

**resulted [1]**
71/19
**resulting [2]**
39/24 40/21
**results [5]**
41/2 44/10
62/15 73/9
75/4
**resume [1]**
9/23
**resumed [1]**
37/11
**retired [1]**
19/22
**retrospect [1]**
64/13
**return [1]**
74/13
**review [2]**
37/24 77/4
**reviewed [3]**
3/10 39/9
39/10
**reviewing [1]**
15/16
**revocation [1]**
74/14
**rhetoric [1]**
64/15
**rhetorically
[1]** 58/9
**right [42]**
8/15 8/22 9/5
9/7 9/8 10/2
10/9 16/20
20/8 23/5
23/11 24/1
24/2 25/2 25/6
25/6 25/20
28/23 29/7
29/15 32/16
33/8 34/14
35/11 35/22
50/24 50/25
53/3 53/17
54/11 56/9
56/15 56/17
57/4 57/11
57/19 62/6
63/14 67/4
67/5 80/16
80/24
**rights [2]**
58/16 65/19
**riot [10]**
48/22 48/23
49/24 50/15

17/24
**Sandoval [6]**
12/2 12/4
16/11 19/19
21/12 21/14
**Sandoval's [1]**
15/23
**satisfied [2]**
16/19 38/6
**satisfies [2]**
33/5 39/17
**saw [1]** 63/4
**saying [4]**
34/2 34/18
54/12 69/15
**scheduling [1]**
66/18
**scratching [1]**
21/15
**screen [2]**
21/18 24/2
**scrum [1]**
53/19
**scuffling [1]**
63/9
**Seagoville [1]**
81/25
**searched [1]**
55/4
**second [11]**
8/7 9/13 10/3
10/22 10/23
11/7 24/6 24/8
34/18 37/15
48/17
**Secondly [1]**
81/24
**seconds [11]**
8/19 8/23 9/5
10/21 23/8
23/14 25/16
54/21 54/22
54/23 54/24
**section [33]**
2/17 2/18 2/20
2/23 2/25 3/2
4/4 15/21
38/21 38/21
38/23 38/24
40/4 40/8 40/8
40/12 40/15
40/18 40/23
41/17 42/2
42/8 42/13
42/25 43/6
44/12 48/11
73/2 76/24
78/12 80/13

76/8 76/10
76/14 77/19
77/20 78/3
**rioter [2]**
39/13 39/14
**rioters [10]**
39/12 39/12
49/23 51/18
53/20 54/1
54/15 73/11
73/19 76/17
**riots [1]**
73/18
**risk [3]** 34/10
75/14 76/1
**Romero [6]** 8/3
8/10 8/12 9/10
10/16 11/4
**Room [1]** 1/24
**rope [1]** 35/6
**ropes [1]**
77/21
**rote [1]** 79/7
**rule [1]** 76/4
**ruled [4]**
14/16 20/9
20/20 27/9
**rulings [1]**
20/24
**run [2]** 47/7
59/17
**running [1]**
30/4
**runs [2]** 31/8
66/17

**S**

**Salvador [1]**
19/19
**same [36]** 9/1
9/20 10/25
14/13 17/24
18/1 20/4
20/14 21/17
23/24 25/8
27/9 27/11
27/17 27/24
28/6 32/19
34/1 40/19
43/8 43/11
43/11 43/11
43/17 47/25
48/12 51/5
55/25 62/9
62/10 67/3
67/3 68/14
71/18 71/23
77/19
**same as [1]**

80/15 80/23
**sections [1]**
44/1
**security [3]**
51/10 53/4
74/19
**seeing [1]**
10/3
**seeking [1]**
26/22
**seem [2]** 26/1
34/24
**seems [9]** 3/12
7/12 12/24
17/6 18/9 28/5
29/12 31/23
42/15
**sees [2]** 56/5
56/5
**self [1]** 36/6
**semantic [1]**
16/5
**Senate [3]**
51/21 51/25
55/9
**senile [1]**
68/2
**sensational [1]**
70/16
**sense [3]** 7/18
62/17 68/16
**sensitive [1]**
51/9
**sentence [35]**
2/15 3/16 3/22
21/15 29/16
32/6 37/8
38/14 46/25
47/11 47/17
47/25 48/12
48/13 58/19
59/2 59/15
60/2 61/6
63/17 63/18
71/15 72/2
72/8 72/19
72/20 73/1
74/4 75/12
76/16 76/18
76/20 78/12
80/16 80/24
**sentenced [6]**
59/25 77/11
77/17 77/23
78/16 79/19
**sentences [4]**
59/18 60/9
76/25 77/6

**sentencing [39]**
1/9 3/6 4/17
7/8 10/4 17/15
19/20 21/1
21/22 28/20
29/16 30/3
35/11 37/4
37/22 38/19
46/19 47/17
48/4 48/7 48/9
48/10 52/19
58/22 59/2
59/6 59/9
59/17 63/15
63/25 65/10
66/4 68/19
69/17 73/16
77/1 77/11
80/12 80/15
**sentencings [3]**
30/3 76/22
77/7
**sentiments [2]**
64/8 64/11
**separate [2]**
8/9 58/25
**separated [1]**
9/1
**sequence [4]**
21/17 21/18
23/19 24/5
**sequences [1]**
21/17
**serious [7]**
40/3 44/8
48/21 48/22
73/7 73/22
77/13
**seriously [1]**
35/14
**seriousness [2]**
73/5 74/2
**serve [1]**
78/17
**service [1]**
74/16
**session [1]**
73/9
**set [9]** 17/21
21/5 31/2
34/18 47/16
49/15 50/19
59/9 80/12
**several [4]**
10/21 51/23
73/20 79/3
**severe [1]**
61/20

**S**

**severity [1]**
77/9

**shall [2]**   43/9
79/15

**shared [2]**
64/9 64/17

**shield [4]**
20/11 20/13
21/11 21/13

**SHIPLEY [24]**
1/16 1/17 2/11
3/8 18/23 19/1
22/15 22/18
34/22 34/24
36/13 37/25
46/9 52/3
59/23 65/22
68/19 69/6
69/20 70/5
71/3 80/18
81/18 82/7

**Shipley's [4]**
36/2 38/6
69/17 71/13

**short [3]**   19/9
37/18 52/13

**shotgun [1]**
50/12

**shoulder [6]**
50/25 51/6
53/17 54/25
55/23 56/20

**shove [3]**
20/15 20/22
34/21

**shoving [2]**
6/17 11/6

**show [3]**   14/10
35/11 48/15

**show here [1]**
48/15

**showed [1]**
55/2

**showing [2]**
54/10 70/10

**side [5]**   10/9
24/1 30/9 51/8
62/6

**significant [5]**
3/13 4/1 7/12
60/5 74/4

**similar [5]**
63/8 68/14
75/25 76/6
77/11

**simple [2]**
12/10 28/12

**simply [4]**
26/12 26/17
26/22 63/15

**single [4]**
43/9 64/18
73/16 73/17

**situation [3]**
20/19 66/5
68/12

**six [8]**   2/15
3/3 3/4 29/3
29/4 43/5
78/16 78/16

**skip [2]**   25/10
57/24

**slide [3]**
48/15 48/17
51/5

**slightly [2]**
31/3 47/2

**slow [1]**   25/23

**small [1]**
25/23

**social [5]**
53/3 55/1 55/7
56/24 64/1

**somebody [2]**
20/16 21/13

**someone [12]**
5/7 36/6 36/7
36/12 52/7
55/5 62/9
67/12 67/20
69/10 80/2
80/3

**sometime [1]**
55/9

**somewhat [5]**
6/16 28/24
45/23 54/1
54/19

**somewhere [1]**
30/12

**son [1]**   68/20

**son's [1]**   68/4

**soon [1]**   62/21

**sorry [10]**
4/17 47/11
54/4 54/7 61/2
67/15 68/1
68/10 69/1
69/2

**sort [8]**   21/13
25/1 25/19
30/8 30/22
35/6 35/17
63/10

**sound [2]**

**sounds [1]**
32/11

**source [1]**
28/8

**space [2]**
26/12 26/18

**speaking [1]**
54/6

**special [4]**
15/22 45/6
78/19 78/24

**specific [2]**
15/8 42/3

**spectrum [5]**
20/6 27/12
60/3 60/4 60/7

**spent [2]**
37/20 73/23

**spot [1]**   52/24

**spray [1]**
21/24

**spread [1]**
31/4

**stairs [1]**
67/22

**stamp [2]**   8/14
53/5

**stamps [1]**
53/16

**standard [1]**
59/6

**start [8]**   4/10
11/11 11/16
22/3 22/24
24/1 25/13
50/24

**started [5]**
6/22 19/17
22/20 25/12
34/12

**starting [2]**
17/1 25/15

**starts [5]**
23/8 34/18
35/4 35/5 52/7

**state [6]**
45/11 49/8
49/10 64/2
64/3 79/8

**stated [2]**
42/9 74/20

**statement [5]**
21/2 21/22
28/16 30/3
58/5

**statements [3]**
29/25 30/4

**STATES [6]**   1/1
1/3 1/10 2/3
2/8 38/16

**statute [10]**
6/2 9/23 14/4
16/4 20/2 27/6
27/8 27/11
34/1 78/3

**statutes [1]**
65/19

**statutory [3]**
45/2 59/14
78/4

**step [3]**   25/25
60/15 64/24

**stepped [4]**
25/3 26/9
36/14 60/12

**stepping [1]**
9/16

**steps [3]**   11/5
25/23 67/18

**still [19]**
8/20 8/25 9/18
10/5 19/8
19/13 24/4
24/6 24/12
24/16 26/10
33/15 47/5
51/13 54/20
55/25 56/3
60/7 66/2

**stolen [1]**
49/21

**straight [1]**
37/8

**streamlines [1]**
20/25

**Street [2]**
1/14 70/17

**strengths [1]**
73/18

**stretch [1]**
27/11

**stroke [2]**
69/11 69/13

**strongly [1]**
36/10

**structure [1]**
59/9

**struggling [2]**
8/25 54/15

**stuck [1]**
33/24

**stuff [2]**
64/20 64/22

**subject [2]**

**submit [8]**
34/3 34/20
49/12 53/8
56/14 71/11
79/11 81/10

**submits [3]**
4/13 9/21
36/18

**submitted [3]**
3/11 7/24 55/2

**substance [2]**
79/9 79/10

**substantial [1]**
29/1

**substantially
[3]**   43/8
43/10 58/24

**substantive [1]**
41/21

**subverted [1]**
49/9

**successful [2]**
20/12 50/21

**sudden [1]**
67/14

**suffering [1]**
34/10

**suffers [1]**
74/7

**sufficient [2]**
4/3 81/13

**sufficiently
[1]**   76/16

**suggest [1]**
42/15

**suggesting [3]**
9/7 33/5 73/15

**summarize [1]**
72/8

**summarized [1]**
17/11

**summary [4]**
5/16 13/14
27/4 27/5

**super [1]**   61/9

**superseding [1]**
8/7

**supervised [4]**
45/4 72/11
72/23 78/17

**supervision [4]**
79/2 79/12
79/25 81/11

**support [1]**
74/21

**supports [3]**
4/19 27/2

**S**

supports... [1]
58/24

supposed [1]
66/19

Supreme [1]
38/16

sure [13]   6/8
6/15 7/24
11/15 22/24
24/24 33/8
43/18 52/3
52/20 54/9
77/16 82/12

surrender [2]
82/5 82/11

suspect [1]
60/2

sweatshirt [5]
10/13 22/2
35/1 56/19
57/20

swung [1]
61/14

symbolism [1]
59/13

synonymous [2]
27/7 27/10

**T**

table [1]   63/2

taken in [1]
50/16

talk [9]   7/23
32/4 38/2 48/4
49/19 52/3
52/18 67/18
70/17

talked [3]
10/5 49/19
69/8

talking [2]
12/5 36/25

talks [3]   7/9
48/11 49/16

task [1]   22/11

tear [1]   56/6

technical [3]
17/7 28/24
44/24

technically [2]
18/5 29/11

ten [1]   72/3

ten-minute [1]
72/3

tens [1]   63/7

term [7]   5/16
27/4 65/4 65/4

78/13 78/25
79/2

terms [3]
77/23 78/14
78/17

terrace [13]
7/7 7/9 7/10
45/16 45/17
51/4 51/22
52/16 52/18
55/10 56/1
57/1 61/23

test [4]   66/23
67/19 79/11
81/11

testing [2]
69/12 81/9

tests [2]
79/12 81/12

Texas [4]
64/19 65/11
74/7 81/25

that I [1]
45/19

the Court [1]
18/1

theoretically
[1]   13/2

theory [1]
33/19

thereafter [3]
39/11 79/12
81/12

therefore [9]
16/25 41/24
42/1 44/1 44/8
44/10 44/18
44/21 78/23

thinking [2]
30/11 66/4

third [2]
18/15 31/5

Thirteen [1]
54/22

Thomas [1]
64/21

those kind [1]
48/14

though [2]
58/25 79/7

thought [7]
14/12 17/21
20/25 30/14
30/17 43/15
61/22

thought that
[1]   30/17

thoughts [1]

64/18

thousands [4]
63/8 63/12
63/12 71/22

threats [1]
77/18

three [38]   8/9
8/13 9/3 10/6
12/4 12/8
15/18 17/10
19/8 21/16
21/17 23/20
24/9 29/6 30/3
34/5 40/23
41/6 42/1
42/11 43/3
43/21 44/5
44/13 44/17
44/19 45/1
45/4 45/5
49/14 50/20
51/21 54/21
58/25 72/11
78/15 78/18
78/18

three-level [3]
44/13 44/17
44/19

three-minute
[1]   34/5

threshold [2]
14/3 50/22

thus [1]   44/11

timeframe [3]
52/21 64/10
64/11

times [4]
12/19 37/5
73/6 76/7

Title [2]   59/5
59/18

today [11]   4/7
17/19 38/4
39/10 46/23
64/12 66/19
68/24 72/14
74/9 77/3

today's [1]
39/9

together [9]
7/16 30/4 35/7
43/9 43/14
44/3 62/24
63/11 75/24

told [1]   58/1

took [2]   5/4
52/1

top [6]   47/12

47/17 48/7
52/22 64/22
72/18

topics [1]
81/6

total [7]   10/6
44/9 44/11
44/19 65/2
72/10 72/22

tough [1]
70/17

toward [7]
25/4 52/1 53/7
54/14 55/11
56/7 77/15

towards [10]
10/18 10/19
24/18 35/2
35/4 53/10
53/21 54/2
56/21 57/15

traded [1]
28/18

traditional [1]
14/2

trained [1]
60/16

transaction [1]
43/12

transcript [2]
1/9 83/4

transfer [1]
71/21

transition [1]
76/11

trapped [1]
28/17

traveled [1]
65/11

treating [1]
62/13

trespass [3]
42/16 62/11
62/14

trial [3]
15/22 21/4
28/19

tried [2]
19/22 51/23

tries [2]   9/20
36/21

trigger [2]
4/4 14/23

triggered [1]
15/12

triggers [1]
43/2

true [2]   33/19

83/4

Trump [4]
10/13 50/2
50/5 50/9

try [2]   53/12
54/8

trying [9]
9/10 20/15
22/11 26/18
26/19 26/23
36/12 70/10
71/21

turn [6]   29/12
44/1 44/12
51/19 67/9
81/5

turned [1]
54/24

turning [2]
40/23 42/12

turns [3]   11/5
36/21 36/22

tussle [1]
53/2

TV [1]   70/25

two [47]   10/5
11/1 17/10
18/10 20/10
20/11 20/13
20/14 20/22
21/22 24/15
40/7 40/19
40/22 41/23
42/10 43/14
43/15 44/3
44/5 44/7 44/8
45/5 46/2 48/8
49/4 50/14
50/18 50/20
50/20 57/20
58/4 59/5
59/11 62/5
62/23 63/5
63/7 63/12
63/13 71/15
76/23 78/15
78/25 79/12
81/12 81/20

two-colored [1]
57/20

two-handed [2]
20/14 20/22

two-level [1]
18/10

two-year [2]
63/12 71/15

type [1]   14/3

typically [1]

**T**

**typically...**
[1]  65/10

**U**

**U.S [16]**  1/23
2/17 2/18 2/20
2/22 2/25 3/2
10/10 38/22
41/17 71/23
73/8 76/24
80/13 80/15
80/23
**U.S.C [1]**  5/17
**ultimate [1]**
3/16
**ultimately [2]**
41/2 73/23
**unable [2]**
80/20 81/2
**unacceptable**
[1]  76/14
**unavailable [1]**
80/25
**uncertain [1]**
52/22
**under [29]**  6/1
9/22 12/16
14/19 16/24
18/15 18/17
28/25 32/19
33/2 33/3
33/14 35/23
38/15 39/1
39/4 40/17
41/17 42/25
43/7 65/5
66/15 73/2
74/23 75/2
76/24 78/12
80/15 80/23
**understood [3]**
11/20 69/16
71/2
**undisputed [1]**
6/4
**unemployable**
[1]  74/21
**unemployed [2]**
64/19 74/19
**unidentified**
[1]  8/11
**unit [2]**  44/7
44/9
**UNITED [6]**  1/1
1/3 1/10 2/3
2/8 38/16
**unlawful [1]**

79/10
**unlawfully [2]**
53/9 79/9
**unless [2]**
59/20 67/20
**unlike [3]**
77/14 77/17
78/5
**unlikely [2]**
75/15 75/24
**unquestionably**
[1]  73/7
**unspecified [1]**
72/24
**unwarranted [1]**
76/19
**up [37]**  7/15
17/23 19/5
21/13 22/6
22/7 22/8
22/21 22/22
24/25 25/21
25/22 25/22
25/22 32/9
34/10 48/6
49/19 53/6
53/6 53/19
53/23 54/13
55/7 57/5
57/11 62/12
62/21 63/2
63/25 64/21
65/2 67/8 67/8
67/21 70/12
70/19
**updated [1]**
46/4
**upper [3]**  8/14
50/24 59/3
**USAO [1]**  1/14
**USAO-DC [1]**
1/14
**use [4]**  26/8
67/10 77/15
79/10
**used [4]**  28/3
31/3 32/20
73/13
**uses [3]**  33/2
33/3 57/19
**using [2]**
30/21 34/23

**V**

**value [1]**
66/14
**vandalism [1]**
73/14
**various [6]**

10/14 38/10
50/16 53/15
74/9 80/17
**vary [2]**  63/16
65/3
**verbally [1]**
65/25
**verbs [3]**  5/4
12/13 14/4
**verdict [3]**
15/22 19/23
19/24
**verdicts [1]**
19/24
**versus [1]**
68/5
**victim [12]**
8/3 8/5 16/24
16/24 17/5
39/24 40/20
42/9 43/11
43/19 43/21
43/23
**victim-related**
[1]  42/9
**victims [5]**
8/10 43/16
65/19 71/9
78/1
**victims' [1]**
65/18
**video [50]**  4/8
6/23 7/10 8/17
9/3 9/24 10/15
11/17 13/16
20/6 22/4 23/9
23/13 24/3
24/7 24/13
25/7 25/18
25/24 26/4
34/8 35/4 51/2
51/11 52/6
52/25 53/4
53/4 53/14
54/6 54/9
54/18 54/22
55/1 55/3 55/8
55/12 55/20
56/8 56/16
56/22 57/10
57/14 57/17
57/22 57/23
58/8 58/14
58/16 58/24
**videos [14]**
3/11 4/7 6/4
13/10 14/9
19/7 21/16

26/6 29/8
35/11 37/6
39/8 50/16
70/10
**view [40]**  5/6
5/15 6/7 6/19
7/17 8/20 9/2
10/23 11/19
13/9 14/13
16/23 17/1
17/16 27/2
28/6 35/19
38/18 38/24
38/25 39/2
39/13 39/16
39/19 40/1
41/5 41/10
41/24 42/2
43/12 47/21
48/19 49/1
58/23 63/4
73/25 74/2
75/6 77/22
80/1
**viewed [1]**
37/5
**views [1]**
35/18
**violate [4]**
4/24 12/19
13/2 27/11
**violated [2]**
5/22 16/12
**violation [15]**
2/17 2/18 2/20
2/22 2/24 3/2
5/2 5/17 12/9
14/22 20/1
27/14 38/22
41/6 60/18
**violations [1]**
27/6
**violence [3]**
49/12 73/13
73/16
**violent [4]**
76/7 76/8
76/10 76/14
**violently [3]**
74/1 75/22
77/15
**visit [1]**
79/23
**volitional [1]**
26/21
**voluntarily [2]**
82/5 82/11
**votes [3]**  49/9

50/1 76/11
**vulnerable [2]**
20/13 20/17

**W**

**waive [1]**
78/23
**waiving [1]**
47/14
**walk [7]**  4/7
6/22 7/22 19/1
32/3 37/2
37/14
**walking [2]**
67/14 67/14
**walks [1]**
51/25
**Wall [1]**  70/17
**walls [1]**  53/7
**wants [2]**
26/13 31/16
**warrant [2]**
46/1 58/12
**Washington [4]**
1/5 1/15 1/25
67/11
**watched [2]**
13/16 55/13
**watching [4]**
22/20 22/23
24/13 67/21
**way [13]**  18/14
28/14 31/17
31/18 34/1
36/5 58/11
60/21 62/7
62/12 67/3
67/3 67/11
**ways [1]**  27/11
**weapon [3]**
60/6 60/17
77/16
**wear [1]**  68/1
**week [2]**  21/14
30/4
**weeks [1]**  12/1
**weigh [3]**  74/3
75/8 76/18
**weird [1]**
33/18
**weren't [1]**
76/9
**west [4]**  7/9
45/17 51/4
51/22
**what 2A2.2 [1]**
4/23
**what I [1]**
21/25

**W**

**what's [2]**  36/3 51/3
**who's [4]**  52/8 56/11 69/2 70/23
**whole [5]**  9/3 49/15 52/11 52/11 70/14
**whose [2]**  9/9 10/16
**WILLIAM [3]**  1/16 1/17 2/10
**willing [1]**  23/17
**Wilson [2]**  2/4 81/8
**wing [3]**  51/22 51/25 55/9
**wish [1]**  70/14
**wished [1]**  48/24
**with him [1]**  11/6
**within [10]**  5/3 16/19 44/21 47/5 76/7 79/11 79/18 80/10 80/19 81/11
**without [15]**  4/25 5/4 6/2 12/20 13/3 28/14 47/14 62/10 75/1 79/21 80/5 80/5 80/7 80/21 81/4
**witnessing [1]**  49/8
**wondering [1]**  58/13
**word [9]**  10/13 17/2 30/21 32/20 33/24 34/1 57/8 67/5 67/10
**words [3]**  49/20 67/6 69/23
**work [1]**  67/3
**worked [2]**  19/23 74/19
**working [1]**  21/4
**works [1]**  17/15
**world [5]**

13/20 33/1 33/4 33/22 62/15
**worn [8]**  8/2 8/11 9/9 10/16 19/10 23/2 55/3 55/12
**worse [1]**  67/10
**worth [1]**  63/6
**would-be [1]**  76/17
**wound [1]**  70/19
**wrapped [1]**  7/15
**wrestled [1]**  21/11
**wrestling [1]**  20/11
**write [2]**  31/16 65/23
**writes [2]**  50/8 58/12
**writing [1]**  71/11
**written [4]**  12/18 20/24 21/2 45/25
**wrong [1]**  15/5
**wrote [3]**  49/7 52/22 70/15
**Wyatt [1]**  50/8

**Y**

**yards [1]**  56/3
**year [4]**  45/2 45/5 63/12 71/15
**years [11]**  45/4 62/5 63/5 63/7 63/13 67/1 67/3 68/8 69/13 71/15 72/11
**young [1]**  21/10

**Z**

**zero [1]**  44/20
**zone [2]**  63/17 65/3